**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

Mario Alexander GUEVARA,

    *Petitioner*,

v.

George Sterling, in his official capacity as [Acting] Director of the Atlanta Field Office, Immigration and Customs Enforcement *et al.*,

    *Respondents*.

Case No. 2:25-cv-00104-LGW-BWC

## DECLARATION OF SCARLET KIM

I, Scarlet Kim, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct to the best of my knowledge:

1. I am over the age of 18, am competent to give this declaration, and testify from my own personal knowledge regarding the facts in this declaration.

2. I am a Senior Staff Attorney with the American Civil Liberties Union and counsel in this action. I submit this declaration in support of Plaintiffs' Emergency Motion for a Temporary Restraining Order and/or Preliminary Injunction.

3. Attached as **Exhibit 1** is a true and correct copy of a Decision of the Board of Immigration Appeals ("BIA"), dated December 17, 2012, ordering that the proceedings before the BIA be administratively closed.

4. Attached as **Exhibit 2** is a true and correct copy of an Order for Bond by the Magistrate Court of DeKalb County, dated June 15, 2025.

5. Attached as **Exhibit 3** is a true and correct copy of the DeKalb County Office of Solicitor-General's Notice that No Accusation Will Be Filed, dated June 25, 2025.

6.      Attached as **Exhibit 4** are true and correct copies of the DHS Submission of Evidence for Mr. Guevara's immigration bond proceedings, dated June 30, 2025. The Submission of Evidence comprises the Gwinnett County Sherriff's Office warrants issued for Mr. Guevara's arrest based on three misdemeanor traffic charges, dated June 17, 2025, and a Gwinnett County Sheriff's Office report.

7.      Attached as **Exhibit 5** is a true and correct copy of the Order of the Immigration Judge, granting Mr. Guevara release under bond of $7,500, dated July 1, 2025.

8.      Attached as **Exhibit 6** is a true and correct copy of the Written Decision and Order of the Immigration Judge, dated July 11, 2025, memorializing the July 1, 2025 Order granting bond.

9.      Attached as **Exhibit 7** are true and correct copies of good moral character letters submitted by Mr. Guevara in support of his Motion for Bond, which were filed on June 26, 2025.

10.     Attached as **Exhibit 8** are true and correct copies of additional good character exhibits submitted by Mr. Guevara in support of his Motion for Bond, which were filed on June 30, 2025.

11.     Attached as **Exhibit 9** is a true and correct copy of the Government's Notice of Appeal from Bond Order, dated July 3, 2025.

12.     Attached as **Exhibit 10** is a true and correct copy of the Government's Emergency Motion for Discretionary Stay, dated July 3, 2025.

13.     Attached as **Exhibit 11** is a true and correct copy of the BIA's Stay Order, dated July 7, 2025.

14.     Attached as **Exhibit 12** is a true and correct copy of Mr. Guevara's Motion for

Summary Affirmance of the Immigration Court's Bond Order, Dismissal of the Government's Appeal and Dismissal of the Board's Stay Order, dated July 12, 2025.

15.     Attached as **Exhibit 13** is a true and correct copy of Mr. Guevara's Motion to Lift Stay, dated July 15, 2025.

16.     Attached as **Exhibit 14** is a true and correct copy of DHS's Opposition to Respondent's Motion to Lift the Stay Order, dated July 31, 2025.

17.     Attached as **Exhibit 15** is a true and correct copy of DHS's Brief on Appeal of the bond order, dated August 6, 2025.

18.     Attached as **Exhibit 16** is a true and correct copy of Mr. Guevara's Filing in Opposition to DHS Appeal of Immigration Court's Grant of Bond, dated August 6, 2025.

Executed this 20th day of August

_____

Scarlet Kim

# Exhibit 1

**U.S. Department of Justice**
Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

Falls Church, Virginia 22041

Files:  – Atlanta, GA

Date: **DEC 17 2012**

In re: MARIO ALEXANDER GUEVARA
MIRIAN ELENA SAENZ
KATHERINE ELENA GUEVARA

IN REMOVAL PROCEEDINGS

APPEAL AND MOTION

ON BEHALF OF RESPONDENTS: Byron W. Kirkpatrick, Esquire

ON BEHALF OF DHS: James A. Lazarus
Associate Legal Advisor

An appeal from the Immigration Judge's decision in this case is currently pending before the Board of Immigration Appeals ("Board"). The parties have now filed a joint motion to administratively close these proceedings based upon the Department of Homeland Security's exercise of prosecutorial discretion. The motion will be granted, and the proceedings administratively closed.

If either party to this case wishes to reinstate the proceedings, a written request to reinstate the proceedings may be made to the Board. The Board will take no further action in the case unless a request is received from one of the parties. The request must be submitted directly to the Clerk's Office, without fee, but with certification of service on the opposing party.

Accordingly, the following order will be entered.

ORDER: The proceedings before the Board of Immigration Appeals in this case are administratively closed.

FOR THE BOARD

# Exhibit 2

**ORDER FOR BOND**

IT IS HEREBY ORDERED that the above-named accused, **MARIO ALEXANDER GUEVARA**, be and is hereby granted bail to be made with sufficient surety as approved by the Sheriff of DEKALB COUNTY in the amount of **OTHER-JUDGE SETS-OTHER-JUDGE SETS** to assure the presence of said accused at arraignment, trial and final disposition in the  Superior Court  State Court  of  DEKALB COUNTY.

SPECIAL CONDITION OF BOND     ☑

Witness my hand and seal, this **6/15/2025 5:32:03 PM**

Judge : **Gerald Mason**
**Magistrate Court of DEKALB COUNTY**

## THE MAGISTRATE COURT OF DEKALB COUNTY

Warrant No#: **25W009379**

### DEFENDANT'S WAIVER

I Hereby waive and relinquish my right to a committal hearing in this criminal matter pending against me. I have been advised of the charges and allegations, of the warrant issuing date and number.
I have been neither threatened nor promised reward in exchange for this waiver. I am not under the influence of alcohol or drugs. I understand the rights I am giving up and the right I am preserving.

Defendant: **MARIO ALEXANDER GUEVARA**

I am satisfied that defendant's Waiver was given freely and voluntarily and bind over this case at the same bond [ or see bond below ] on the charge(s) as stated on the reverse side of this page.

New bond: **OTHER-JUDGE SETS**, See attached S/C form.

Judge :
**Magistrate Court of DEKALB COUNTY**

Prosecutor :

☐   Dismissal     _____  _____
                     Judge              Date

☐   Bound over   _____  _____
                     Judge              Date

EOIR — 223 of 339

# Exhibit 3


EOIR — 203 of 349



**Donna Coleman-Stribling**
Solicitor-General

**DEKALB COUNTY**
OFFICE OF SOLICITOR-GENERAL
556 North McDonough Street
Suite 500
Decatur, Georgia 30030-3556

Telephone: (404) 371-2201
Fax: (404) 371-7048

June 25, 2025

## NOTICE THAT NO ACCUSATION WILL BE FILED

**This shall serve as notice that no accusation will be filed in the criminal case listed below.**

**State of Georgia versus Mario Guevara; Case Number 25S003686**

- **Charges: Unlawful Assembly 16-11-33**
- **Warrant#(s): 25W009377**

- **Charges: Obstruction of an Officer 16-10-24(a)**
- **Warrant#(s): 25W009378**

- **Charges: Pedestrian Improperly Entering Roadway 40-6-91(b)**
- **Warrant#(s): 25W009379**

Mario Guevara was arrested while filming the protest at the intersection of Chamblee-Tucker Road and Northcrest Road. The police charged him with unlawful assembly, obstruction of a law enforcement officer, and pedestrian on or along the roadway.

After carefully reviewing the evidence, including video evidence surrounding his arrest, the State has determined that while there was probable cause to support the initial arrest, the evidence is insufficient to sustain a prosecution beyond a reasonable doubt.

Mr. Guevara was given multiple directives by different law enforcement agencies at different points in the interaction. Those agencies were also directing the assembled crowds. At the time of his arrest, the video evidence shows Mr. Guevara generally in compliance and does not demonstrate the intent to disregard law enforcement directives.

Given the lack of a clear criminal intent by Mr. Guevara to ignore any lawful commands, the case is dismissed as charged.

**The records in this case shall be restricted.**

Tamara L. Ross
Chief Assistant Solicitor General



Donna Coleman-Stribling
Solicitor-General

**DEKALB COUNTY**
OFFICE OF SOLICITOR-GENERAL
556 North McDonough Street
Suite 500
Decatur, Georgia 30030-3556

Telephone: (404) 371-2201
Fax: (404) 371-7048

**June 25, 2025**

**Mario Guevara**

████████████████

**Lilburn, GA 30047**

RE:    **State vs. Mario Guevara**
       Case # :    25S003686 - 04
       Charge(s):    Unlawful Assembly, Obstruction of an Officer and Pedestrian Improperly
Entering Roadway

Please be advised that the subject case has been dismissed by this office.  It will not be necessary
for anyone to appear in court on this case.

Tamara L. Ross
Chief Assistant Solicitor-General

cc: Zachary Gaeta

# Exhibit 4

# UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
## IMMIGRATION COURT
## LUMPKIN, GEORGIA

In the Matter of:

**GUEVARA, MARIO A**                                    File No. ▉▉▉▉▉▉▉

In BOND Proceedings

## U.S. DEPARTMENT OF HOMELAND SECURITY
### SUBMISSION OF EVIDENCE

The U.S. Department of Homeland Security, U.S. Immigration and Customs Enforcement

(DHS), by and through its undersigned counsel, files this Submission of Evidence and respectfully

requests that this Submission of Evidence be entered into the Court's Record of Proceedings.

### **Attached Documents**

| Tab | Item Description | Pages |
|-----|------------------|-------|
| A | **Gwinnett County Criminal Warrants** | **1-3** |
| B | **Gwinnett County Sheriff's Office Report** | **4-8** |

Respectfully submitted June 30, 2025,

_____
Kiera D. Potter
Assistant Chief Counsel
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security

# TAB A

EOIR — 330fc13342

GEORGIA, GWINNETT
STATE OF GEORGIA
v.
MARIO GUEVARA

Warrant No. : **25W-11362**

Case No. : **GS250003487**

DOB: 09/25/1977, Race:W, Sex: Male, Height:'", Weight:, Hair:BRO
(Brown), Eyes:BRO (Brown)
Custody: Yes Location: DEKALB COUNTY JAIL

## AFFIDAVIT

Personally appeared the undersigned prosecutor, **Angeleek Rodriguez** who, on oath, says that, to the best of the prosecutor's knowledge and belief, the above named accused, between 5/20/2025 6:00:00 PM and 5/20/2025 8:00:00 PM at 2105 Preston Lake Dr, Tucker, GA, 30084, GWINNETT COUNTY did commit the offense of **RECKLESS DRIVING ( Misdemeanor )** in violation of O.C.G.A . **40-6-390** and against **State of GEORGIA** and the laws of the State of GEORGIA . The facts of this affidavit for arrest are based on: **GUEVARA DROVE AT A HIGH RATED SPEED THROUGH AN APARTMENT COMPLEX WHERE INDIVIDUALS WERE OUT WALKING IN AN ATTEMPT TO CATCH UP TO UC VEHICLES TO RECORD THEM WHILE DEPUTIES WERE CONDUCTING AN INVESTIGATION.** Prosecutor makes this affidavit that a warrant may be issued for the accused person's arrest.

Sworn to and subscribed before me **6/17/2025 10:57:42 PM**



$\text{AD}$ 50/954

_____
Judge : **K Miles**
Magistrate Court of **GWINNETT COUNTY**

_____
Prosecutor : **Angeleek Rodriguez**
Badge : **SO1954 Agency : Gwinnett County Sheriff Office**

## STATE WARRANT FOR ARREST

To any Sheriff, Deputy Sheriff, Coroner, Constable or Marshal of this State -- Greetings:
For sufficient cause made known to me in the above affidavit, incorporated by reference herein, and other sworn testimony, you are hereby commanded to arrest the accused **MARIO GUEVARA** named in the above affidavit, charged by the prosecutor therein with the above offense(s) against the laws of this State at the time, place and manner named in the above affidavit, and bring the accused before me or another judicial officer of this State to be dealt with as the law directs. Herein fail not.

**6/17/2025 10:57:42 PM**



_____
Judge : **K Miles**
Magistrate Court of **GWINNETT COUNTY**

## ORDER FOR BOND

IT IS HEREBY ORDERED that the aforesaid accused, **MARIO GUEVARA**, be and is hereby granted bail to be made with sufficient surety as approved by the Sheriff of **GWINNETT COUNTY** in the amount of **$1,000.00** to assure the presence of said accused at arraignment, trial and final disposition in the Superior Court / State Court of **GWINNETT COUNTY**.

Witness my hand and seal, **6/17/2025 10:57:42 PM**



_____
Judge : **K Miles**
Magistrate Court of **GWINNETT COUNTY**

- ☐ FELONY
- ☑ MISDEMEANOR
- ☑ IN CUSTODY

- ☐ FAMILY VIOLENCE
- ☐ SPECIAL CONDITIONS OF BOND

- ☐ PROBATION
- ☐ PAROLE



EOIR — 43bfc&2342

## CRIMINAL ARREST WARRANT

**GEORGIA, GWINNETT**
**STATE OF GEORGIA**
v.
**MARIO GUEVARA**

Warrant No. : **25W-11363**

Case No. : **GS250003487**

DOB: 09/25/1977, Race:W, Sex: Male, Height:'", Weight:, Hair:BRO
(Brown), Eyes:BRO (Brown)
Custody: Yes Location: DEKALB COUNTY JAIL

### AFFIDAVIT

Personally appeared the undersigned prosecutor, Angeleek Rodriguez who, on oath, says that, to the best of the prosecutor's knowledge and belief, the above named accused, between **5/20/2025 6:00:00 PM and 5/20/2025 8:00:00 PM** at **2105 Preston Lake Dr, Tucker, GA, 30084, GWINNETT COUNTY** did commit the offense of **Unlawful Use Of A Telecommunication Device ( Misdemeanor )** in violation of O.C.G.A . **40-6 -241.2** and against **State of GEORGIA** and the laws of the State of GEORGIA . The facts of this affidavit for arrest are based on: **Guevara grabbed his telecommunication device while on facebook live while driving to show UC vehicles driving past him**. Prosecutor makes this affidavit that a warrant may be issued for the accused person's arrest.

Sworn to and subscribed before me 6/17/2025 10:57:42 PM

_(signature)_                            _(signature)_ SO/954

_____
Judge : **K Miles**
Magistrate Court of **GWINNETT COUNTY**

Prosecutor : **Angeleek Rodriguez**
Badge : **SO1954**  Agency : **Gwinnett County Sheriff Office**

### STATE WARRANT FOR ARREST

To any Sheriff, Deputy Sheriff, Coroner, Constable or Marshal of this State -- Greetings:
For sufficient cause made known to me in the above affidavit, incorporated by reference herein, and other sworn testimony, you are hereby commanded to arrest the accused **MARIO GUEVARA** named in the above affidavit, charged by the prosecutor therein with the above offense(s) against the laws of this State at the time, place and manner named in the above affidavit, and bring the accused before me or another judicial officer of this State to be dealt with as the law directs. Herein fail not.

**6/17/2025 10:57:42 PM**

_(signature)_

_____
Judge : **K Miles**
Magistrate Court of **GWINNETT COUNTY**

### ORDER FOR BOND

**IT IS HEREBY ORDERED** that the aforesaid accused, **MARIO GUEVARA**, be and is hereby granted bail to be made with sufficient surety as approved by the Sheriff of **GWINNETT** COUNTY in the amount of **$1,000.00** to assure the presence of said accused at arraignment, trial and final disposition in the Superior Court / State Court of **GWINNETT COUNTY**.

Witness my hand and seal, **6/17/2025 10:57:42 PM**

_(signature)_

_____
Judge : **K Miles**
Magistrate Court of **GWINNETT COUNTY**

☐ FELONY           ☐ FAMILY VIOLENCE          ☐ PROBATION
☑ MISDEMEANOR      ☐ SPECIAL CONDITIONS OF BOND     ☐ PAROLE
☑ IN CUSTODY




DHS 2

## CRIMINAL ARREST WARRANT

**GEORGIA, GWINNETT**
**STATE OF GEORGIA**
v.
**MARIO GUEVARA**

Warrant No. : **25W-11364**

Case No. : **GS250003487**

. . .
DOB: 09/25/1977, Race:W, Sex: Male, Height:"", Weight:, Hair:BRO
(Brown), Eyes:BRO (Brown)
Custody: Yes Location: DEKALB COUNTY JAIL

### AFFIDAVIT

Personally appeared the undersigned prosecutor, **Angeleek Rodriguez** who, on oath, says that, to the best of the prosecutor's knowledge and belief, the above named accused, between 5/13/2025 10:00:00 AM and 5/13/2025 11:00:00 AM at **singleton rd and pirkle rd sb, NORCROSS, GA, 30093**, GWINNETT COUNTY did commit the offense of **FAILURE TO OBEY SIGNS OR CONTROL DEVICES ( Misdemeanor )** in violation of O.C.G.A. **40-6-20** and against **State of GEORGIA** and the laws of the State of **GEORGIA** . The facts of this affidavit for arrest are based on: **Guevara swerved to the right lane in order to pass a vehicle, then failed to stop at a red light while following unmarked law enforcement vehicles while he was streaming on Facebook live.** Prosecutor makes this affidavit that a warrant may be issued for the accused person's arrest.

Sworn to and subscribed before me **6/17/2025 10:57:42 PM**

_____

Judge : **K Miles**

Magistrate Court of **GWINNETT COUNTY**

50/954

Prosecutor : **Angeleek Rodriguez**
Badge : **SO1954**  Agency : **Gwinnett County Sheriff Office**

### STATE WARRANT FOR ARREST

To any Sheriff, Deputy Sheriff, Coroner, Constable or Marshal of this State -- Greetings:
For sufficient cause made known to me in the above affidavit, incorporated by reference herein, and other sworn testimony, you are hereby commanded to arrest the accused **MARIO GUEVARA** named in the above affidavit, charged by the prosecutor therein with the above offense(s) against the laws of this State at the time, place and manner named in the above affidavit, and bring the accused before me or another judicial officer of this State to be dealt with as the law directs. Herein fail not.

**6/17/2025 10:57:42 PM**

_____

Judge : **K Miles**

Magistrate Court of **GWINNETT COUNTY**

### ORDER FOR BOND

**IT IS HEREBY ORDERED** that the aforesaid accused, **MARIO GUEVARA**, be and is hereby granted bail to be made with sufficient surety as approved by the Sheriff of **GWINNETT** COUNTY in the amount of **$1,000.00** to assure the presence of said accused at arraignment, trial and final disposition in the Superior Court / State Court of **GWINNETT COUNTY**.

Witness my hand and seal, **6/17/2025 10:57:42 PM**

_____

Judge : **K Miles**

Magistrate Court of **GWINNETT COUNTY**

| | | |
|---|---|---|
| ☐ FELONY | ☐ FAMILY VIOLENCE | ☐ PROBATION |
| ☑ MISDEMEANOR | ☐ SPECIAL CONDITIONS OF BOND | ☐ PAROLE |
| ☑ IN CUSTODY | | |

BOIR - 53&fc£2342





DHS 3

# TAB B

EOIR — 33dfc13342



# Gwinnett County Sheriff's Office

2900 University Parkway • Lawrenceville, GA 30043 • 770.619.6500
GwinnettCountySheriff.com | Twitter & Facebook @GwinnettSheriff

**Sheriff Keybo Taylor**                                                    **Chief Cleophas Atwater**

On February 19th, 2025 during an undercover narcotics investigation in Norcross, GA, a male identified as Mario Guevara arrived and began to film officers and suspects that were on scene. Lt. ▮▮▮ approached Mario and inquired as to what he was doing. Mario stated that he was press and was filming. Lt. ▮▮▮ advised that this was an active crime scene, and Mario should not come any closer. Mario inquired if this was an ICE operation and Lt. ▮▮▮ told him it was not. Lt. ▮▮▮ advised that the only law enforcement on scene was the Sheriff's Office, and it was a narcotics investigation. Lt. ▮▮▮ again told Mario not to come within the scene and broke contact with Mario. Mario continued filming from his location, filming plain clothes officers and their vehicles and the suspects of the investigation. The filming was posted as a "Facebook Live" post on Guevara's Facebook account. As he later drove past the scene, Mr. Guevera again inquired if the deputies were ICE and was again informed that they were not.

Following the completion of the operation, Mr. Guevera left the apartment complex. The following day, it was brought to our attention that he had posted a video of his interaction with Lt. ▮▮▮ to his Facebook account. Although Lt. ▮▮▮ was masked, his appearance was visible to the public, raising safety concerns due to the undercover nature of our unit's work.

On February 21, 2025, Major ▮▮▮ was notified by our Communications Unit that Mr. Guevera had requested an interview regarding the operation. Given the sensitive and undercover status of the Gang Unit, Major ▮▮▮ declined the interview. However, he provided the Communications Unit with a brief overview of the case to share with Mr. Guevera.

Additionally, Major ▮▮▮ requested that Communications explain the nature of our unit's investigations—which include Human Trafficking, Gangs, Narcotics, and Crimes Against Children—to help provide context for the operations that we conduct. He also asked them to speak with Mr. Guevera about removing the video featuring Lt. ▮▮▮ due to potential risks it may pose to ongoing and future investigations, as well as to the personal safety of involved personnel. After they spoke with Mr. Guevera, they informed Major ▮▮▮ that he agreed to remove the video from both of his social media platforms but was upset that we asked.

On March 3, 2025, we were conducting joint operations with the Drug Enforcement Administration (DEA) High Intensity Drug Trafficking Area (HIDTA) Unit. This

EOIR — 836fc43342

operation was in the City of Norcross and Inv ███ was conducting surveillance near a known Drug Trafficking Organization (DTO). This investigation involved Transnational Cartel Gang members trafficking large amounts of illegal narcotics throughout Gwinnet County and the City of Norcross. While on surveillance, a concerned citizen contacted the City of Norcross about his undercover (UC) vehicle being parked in front of their apartment. A short time later, a Norcross Officer made contact with Inv ███ and explained they had received a call about his vehicle being suspicious. Inv ███ advised the officer that he was a UC and showed him his badge with credentials. The officer explained the situation to the concerned citizen and left without incident.

Within five minutes, an individual Inv. ███ later identified as Mario Guevara arrived driving a white sedan, holding a pole with two cellphones attached to the pole. Guevara began walking around ███'s vehicle several times speaking in Spanish. During this time, Guevara put the cameras on ███'s county issued GA tag while speaking in Spanish. Inv ███ does not speak Spanish but could hear Guevara saying, "ICE" approximately two to three times while walking around his vehicle. After several minutes of this occurring, Guevara stood approximately fifteen feet from his vehicle directly in front of the front windshield. Due to Inv ███'s job, working as a UC, and fearing Guevara would obtain video of his face, Inv ███ pulled out of the apartment complex and positioned his self across the street. This caused a hinderance to the investigation and could have terminated the investigation. Inv ███ later located Guevara's Facebook platform and observed the video he took of his vehicle to have over 200,000 views and hundreds of comments.

Due to Inv ███'s vehicle tag being broadcast to hundreds of thousands of people. he had to request and obtain a new county issued tag and in the process of requesting a new county issued vehicle due to the amount of views Guevara's Facebook page identifying his vehicle as ICE and/or law enforcement.

On April 2, 2025, Gwinnett County Sheriff's Office conducted an undercover operation in the Lilburn area. During the operation, Mario Guevara arrived on scene and began to film officers (both uniformed and plain clothes officers). Mario filmed undercover vehicles and posted it once more on his Facebook, notifying viewers that the vehicles were undercover vehicles. Mario filmed the vehicles and license plates of the vehicles, making sure to let everyone know which vehicles belonged to law enforcement.

EOIR – 936f0f3342

Shortly after that incident, Lt. ███ contacted Mario via telephone and notified him that operation was not an ICE operation and that it was the Sheriff's Office who conducted the operation. Lt. ███ asked Mario if he would be willing to remove the post from his Facebook for officer safety reasons. Lt. ███ informed Mario that he was filming undercover officers' vehicles which would jeopardize the safety of the officers. Mario stated that he would go back and review the video to see if he had in fact done that and would consider it. Mario never removed the video from his Facebook, which ultimately garners many thousands of views.

On May 15, 2025, while conducting an undercover operation at ████████████, Norcross, GA 30093, Inv ███ was advised by fellow Deputies that Mario Guevara was outside the residence on scene recording the undercover Deputies and DEA Agents. They also advised Guevara was recording the UC vehicles as they were coming and going. A Spanish speaking DEA Agent went and spoke to Guevara. The Agent informed Inv ███ that Guevara asked him if we were ICE or cooperating with ICE. The Agent informed Guevara we were not ICE agents, and no ICE agents were on scene. Guevara remained on the scene for a while, live-streaming agents and undercover vehicles during this operation. Putting operational security at risk and possibly jeopardizing future operations by disclosing vehicles and possibly tag numbers. Even though most agents wore face coverings it is possible some sensitive information could have been obtained during his live streaming. I was able to confirm Guevara had been live streaming the interaction on his Facebook and later uploaded it as a saved video.

On May 17, 2025, while reviewing content on social media (Facebook), I observed a post from the page "Mario Guevara News." The video was a previously recorded live stream in which Mario Guevara stated he was following federal agents. I was able to confirm the identity of Guevara based on his distinct voice and previous encounters. During the live stream, Guevara stated that he was traveling on Singleton Road. As he approached the intersection of Singleton Road and Pirkle Road, the traffic signal turned red. Guevara moved into the right-hand lane, briefly stopped to allow another vehicle to cross, and then proceeded through the red light, crossing Pirkle Road in an apparent attempt to catch up to the individuals he believed to be federal agents.

The video clearly shows that the traffic signal was red at the time Guevara entered the intersection, which constitutes a violation of a traffic control device and demonstrates reckless and unsafe driving behavior. This incident further supports ongoing concerns

EOIR — 1970c6f1342

regarding Mr. Guevara's pattern of behavior involving surveillance of law enforcement personnel and disregard for traffic laws while attempting to do so.

On May 20, 2025, the Gwinnett County Sheriff's Office TRACE Unit was conducting an undercover Human Trafficking operation at 2105 ████████ Drive. During the operation, deputies observed a gray pickup truck with large yellow lettering approaching the apartment building. The driver was quickly identified as Mario Guevara, due to multiple prior encounters with both the TRACE and Gang Units during previous undercover operations. Recognizing the potential threat to operational security, deputies began exiting the area and returning to their vehicles. Mr. Guevara was known to broadcast live on Facebook, frequently capturing and sharing images of undercover deputies, vehicles, and license plates. At that time, deputies confirmed that Mr. Guevara was actively live streaming via Facebook.

As Guevera live streamed, he began speaking to a woman outside the apartment complex, discussing what they believed was happening. During this conversation, Guevara noticed an undercover vehicle departing a parking space and instructed the woman to move her small child, stating that he was going to follow the vehicle. Guevara then pursued the undercover vehicle through the apartment complex while continuing to livestream. The video captured his vehicle revving loudly, disregarding stop signs, and speeding past pedestrians, including a woman pushing a stroller—creating a significant safety hazard to residents in the area. Upon reaching the exit of the complex, Guevara was positioned behind approximately three other vehicles. On the live feed, he claimed that all three were undercover units. He zoomed in on the license plate of the vehicle directly in front of him, briefly turned the camera to show his own face, then flipped it back to continue recording. He then grabbed and aimed his phone at another vehicle he believed to be an undercover unit, stating, "There goes the other one." Guevara exited the apartment complex and continued driving down the roadway, manipulating his phone throughout the process—alternating the camera between himself and the surrounding vehicles who he believed to be undercover. He concluded the livestream shortly afte. Mr. Guevera was not cited that day due not having a marked unit available. Mario Guevara's behavior demonstrates a consistent pattern of pursuing and filming law enforcement activities regardless of the consequences. This conduct contradicts societal norms and is marked by a repeated disregard for the law, including reckless and unlawful driving. Due to this, a decision was made to take out the listed warrants against Mr. Guevara.

EOIR - 1380o6f1342

On June 17, 2025, I went before the on-duty magistrate judge who authorized me warrants for Mr. Guevera for Distracted Driver, Failure to Obey Traffic Control Device and Reckless driving.

EOIR — 1390o6f1342

**GUEVARA, MARIO A**

███████████

## CERTIFICATE OF SERVICE

On June 30, 2025, I, Kiera D. Potter, served a copy of this **U.S. Department of Homeland Security Submission of Evidence** on:

<div align="center">

**Diaz & Gaeta Law**
**Diaz, Giovanni Jose**
**2400 Herodian Way SE**
**Suite 275**
**Smyrna, GA  30080**

</div>

☐    by first-class mail, postage pre-paid, to [address of party served].

☐    by first-class mail, postage pre-paid to [address of party served], by placing into my office's receptacle designated for official "out-going" first class mail.

☐    by personally delivering a true copy thereof to the person set forth above.

☐    by electronic service, with prior consent, at the following e-mail address: [email address of party served].

☐    by eService pursuant to the Terms and Conditions agreed to between the parties.

☒    through the EOIR Courts and Appeals System (ECAS), which will automatically send service notifications to both parties that a new document has been filed.

_____

Kiera D. Potter
Assistant Chief Counsel

# Exhibit 5



**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**STEWART IMMIGRATION COURT**

Respondent Name:

    GUEVARA, MARIO A

To:

    Diaz, Giovanni Jose
    2400 Herodian Way SE
    Suite 275
    Smyrna, GA 30080

A-Number:

Riders:
In Custody Redetermination Proceedings

Date:
07/01/2025

## ORDER OF THE IMMIGRATION JUDGE

The respondent requested a custody redetermination pursuant to 8 C.F.R. § 1236. After full consideration of the evidence presented, the respondent's request for a change in custody status is hereby ordered:

☐  Denied, because

☑  Granted. It is ordered that Respondent be:
    ☐  released from custody on his own recognizance.
    ☑  released from custody under bond of $ 7,500.00
    ☐  other:

☐  Other:

Immigration Judge: Ward, James 07/01/2025

Appeal:    Department of Homeland Security:  ☐  waived  ☑  reserved
           Respondent:                       ☑  waived  ☐  reserved

Appeal Due: 07/31/2025

## Certificate of Service

This document was served:

Via: [ M ] Mail | [ P ] Personal Service | [ E ] Electronic Service | [ U ] Address Unavailable
To: [ ] Noncitizen | [ ] Noncitizen c/o custodial officer | [ E ] Noncitizen's atty/rep. | [ E ] DHS
Respondent Name : GUEVARA, MARIO A | A-Number :
Riders:
Date: 07/01/2025 By: Williams, Tammy, Court Staff

# Exhibit 6

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**UNITED STATES IMMIGRATION COURT**
**LUMPKIN, GEORGIA**

| | | |
|---|---|---|
| **IN THE MATTER OF:** | ) | **In Bond Proceedings** |
| | ) | |
| **GUEVARA, MARIO A.** | ) | **File No.** ████████ |
| | ) | |
| **Respondent** | ) | |
| ─────────────────────────── | ) | |

**APPLICATION**:    Bond Redetermination

## APPEARANCES

**ON BEHALF OF THE RESPONDENT:**
Giovanni J. Diaz, Esq.
Diaz & Gaeta Law, LLC
2400 Herodian Way SE
Suite 275
Smyrna, GA 30080

**ON BEHALF OF THE GOVERNMENT:**
Kiera D. Potter, Esq.
Assistant Chief Counsel
U.S. Department of Homeland Security
146 CCA Road
Lumpkin, Georgia 31815

## WRITTEN DECISION AND ORDER OF THE IMMIGRATION JUDGE

### I. PROCEDURAL HISTORY[1]

On June 30, 2025, Respondent filed a motion for bond redetermination. *See* Exhibit 1. Following a bond hearing on July 1, 2025, the Court issued an order granting the request for change in custody status. *See* Order of the Immigration Judge (July 1, 2025). The Court found that Respondent was not a danger to the community nor a significant flight risk. Respondent was granted a bond in the amount of $7,500.00. *Id*. The Department reserved appeal. The Department has appealed this Court's decision to the Board of Immigrations Appeals ("Board" or "BIA").

In light of the foregoing, the Court will issue the following memorandum decision granting Respondent's request for a bond.

### II. DISCUSSION
#### A. STATEMENT OF LAW

---

[1] The Court notes that while Respondent concedes removability, "[on] June 21, 2012, the Immigration Judge granted Respondent's request for voluntary departure, but on December 17, 2012, the BIA administratively closed Respondent proceedings. Please see Exhibit D, Copy of the IJ's Order Granting Voluntary Departure and Copy of the BIA Order Granting Administrative Closure." *See* Exhibit 1. At the time of Respondent's custody hearing on July 1, 2025, his previous proceedings had not been recalendared, nor a new Notice to Appear filed with the Court.

████████

1

Section 236(c)(1) of the INA provides that the Attorney General shall take into custody any noncitizen who: (1) is inadmissible by reason of having committed any offense covered in INA § 212(a)(2); (2) is removable by reason of having committed any offense covered in INA §§ 237(a)(2)(A)(ii), (A)(iii), (B), (C), or (D); (3) is removable under INA § 237(a)(2)(A)(i) on the basis of an offense for which the noncitizen has been sentence[d] to a term of imprisonment of at least one year; or (4) is inadmissible under INA § 212(a)(3)(B) or removable under INA § 237(a)(4)(B).

Respondent is subject to the provisions of section 236(a) of the Act, which provide that the Attorney General may, in his discretion, release a detained noncitizen pending a final decision on removability. *See Matter of Joseph*, 22 I&N Dec. 799 (BIA 1999). To qualify for release, the noncitizen must establish that he or she is not a threat to the community or a flight risk. *See Matter of Drysdale*, 20 I&N Dec. 815–17 (BIA 1994); *see also Matter of Patel* 15 I&N Dec. 666 (BIA 1976). In making a determination regarding these issues, the court should consider the following nonexclusive factors: local family ties; length of residence in the community; prior arrests; convictions; record of appearances at hearings; employment history; membership in community organizations; manner of entry and length of time in the United States; immoral acts or participation in subversive activities; property or business ties; fixed address; availability and likelihood of relief; and, financial ability to post bond. *See Matter of Andrade*, 19 I&N Dec. 488, 489 (BIA 1987); *see also Matter of Khalifah*, 21 I&N Dec. 107 (BIA 1995); *see also Matter of Ellis*, 20 I&N Dec. 641 (BIA 1993); *see also Matter of P-C-M-*, 20 I&N Dec. 432, 434–35 (BIA 1991); *see also Matter of Shaw*, 17 I&N Dec. 177 (BIA 1979); *see also Matter of San Martin*, 15 I&N Dec. 167 (BIA 1974). In addition, a court may consider a respondent's character as one of the factors in determining the necessity for or the amount of the bond. *See Matter of Andrade*, 19 I&N Dec. at 489. In assessing these factors, the Immigration Judge's determination may be based on "any information that is available to the Immigration Judge or that is presented to him or her by the [noncitizen] or [DHS]." *See* 8 C.F.R. § 1003.19(d).

Before any release on bond may be considered, a noncitizen must demonstrate that he or she does not pose a danger to property or persons. *See Matter of Urena*, 25 I&N Dec. 140, 141 (BIA 2009). The Board has held, "[o]nly if [a noncitizen] demonstrates that she does not pose a danger to the community should an immigration judge continue to a determination regarding the extent of flight risk posed by the [noncitizen]." *Id*. Additionally, if an immigration judge determines that a noncitizen is a flight risk, she or she has the authority to decline setting a bond amount. *See Matter of D-J-*, 23 I&N Dec. at 584 (finding that the authority to remove noncitizens is meaningless without the authority to detain those who pose a danger or who are a flight risk during the process of determining whether they should be removed). Courts have consistently recognized that the Attorney General has extensive discretion when determining whether or not to release a noncitizen on bond. *See Id.* at 576. In the instant matter, the Court will release Respondent from custody.

The Court has jurisdiction to re-determine Respondent's custody status. In making a determination regarding custody status, the Immigration Judge may consider the following nonexclusive factors: (1) whether the noncitizen has a fixed address in the United States; (2) the noncitizen's length of residence in the United States; (3) the noncitizen's family ties in the United States, and whether they may entitle the noncitizen to reside permanently in the United States in

2

the future; (4) the noncitizen's employment history; (5) the noncitizen's record of appearance in court; (6) the noncitizen's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the noncitizen's history of immigration violations; (8) any attempts by the noncitizen to flee prosecution or otherwise escape from authorities; and (9) the noncitizen's manner of entry to the United States. *Matter of Guerra*, 24 I&N Dec. at 40 (citing *Matter of Saelee*, 2 I&N Dec. 1258 (BIA 2000)); *Matter of Drysdale*, 20 I&N Dec. 815 (BIA 1994); *Matter of Andrade*, 19 I&N Dec. 488 (BIA 1987).

In addition, the Immigration Judge may consider a noncitizen's character and potential eligibility for relief as factors in determining the necessity for or the amount of the bond. *See Matter of Andrade*, 19 I&N Dec. at 489-90. The Immigration Court can find that a noncitizen has a disincentive to appear for her removal proceedings if her likelihood of obtaining relief from removal is low. *Id.* at 491. In assessing these factors, the Immigration Judge may base his determination on "any information that is available to the Immigration Judge or that is presented to him or her by the [noncitizen] or [DHS]." *See* 8 C.F.R. § 1003.19(d).

On July 1, 2025, Respondent was found by this Court not to be a danger to the community nor a significant flight risk. The Court determined that any risk of flight could be ameliorated by a significant bond. Therefore, the Court granted Respondent's bond redetermination request and ordered Respondent released from custody under a bond of $7,500.00. *See* Order of the Immigration Judge (July 1, 2025).

### B. FINDINGS OF THE COURT

#### 1. Respondent is Not a Danger to the Community

The Court finds that Respondent is not a danger to the community. In determining whether a noncitizen presents a danger to the community at large and thus should not be released on bond pending removal proceedings, an Immigration Judge should consider both direct and circumstantial evidence of dangerousness. *Matter of Fatahi*, 26 I&N Dec. 791, 795 (BIA 2016). "An immigration judge has broad discretion in deciding the factors that he or she may consider in custody redetermination." *See Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006). After considering all of the evidence in the record, including Respondent's testimony during his custody hearing, the Court finds that Respondent does not pose a danger to the community.

As an initial matter, the Court notes it is allowed to consider all criminal history, including charges without a conviction. *Matter of Siniauskas*, 27 I&N Dec. 207 (BIA 2018) ("In deciding whether to set a bond, an Immigration Judge should consider the nature and circumstances of the alien's criminal activity, including any arrests and convictions, to determine if the alien is a danger to the community, but family and community ties generally do not mitigate an alien's dangerousness.").

Respondent has pending charges from Gwinnett County, Georgia. *See* Exhibit 4. Respondent was charged on June 17, 2025, with reckless driving, unlawful use of a telecommunication device, and failure to obey signs or control devices that allegedly occurred on May 20, 2025. *Id.* at Tab A.[2] While the Court is concerned with Respondent's conduct as alleged

---

[2] Respondent was charged in Dekalb County, Georgia, for the offense of obstruction of justice; however, that charge

3

by the Department and as stated in Exhibit 4,[3] the Court must defer to the prosecution authorities, and subsequent criminal court, who would charge Respondent for any violations of the law he committed. The Court finds that law enforcement, prosecution authorities and criminal courts are best suited and equipped to investigate alleged violations of law, to make appropriate charging decisions and to litigate criminal liability for an individual's potential criminal conduct. Respondent's crimes, while serious, are misdemeanors, and are the sole criminal charges pending in his twenty years in the United States. *See* Exhibits 1 and 2.

Likewise, the Court takes into account Respondent's alleged ownership of a firearm, which the Department claims he owns and is not allowed to own.[4] While the Department did not offer evidence into the electronic record, they did question Respondent regarding this firearm. The Court notes that the only firm evidence established by the Department's questioning of Respondent is that there is a gun in Respondent's home that he shares with three United States citizens (USC), his brother is in the military, and Respondent fired the weapon at a firing range. The Court hopes that, should Respondent be breaking the law, he would be charged with the offense of illegally possessing a firearm. However, Respondent is not charged with that offense; thus, the Court will not consider it as a criminal offense. The Court does take into account that the gun is in Respondent's home and that in his twenty years within the United States he has never been charged with a crime involving a firearm.[5]

The Court also notes that Respondent is a journalist and at the time of his alleged crimes he was acting as a journalist.[6] *See* Exhibit 3, Tab C-1. The Virginia Defenders for Freedom, Justice, and Equality wrote that "[Respondent] has long dedicated himself to reporting on the abuses faced by members of his community in Georgia and has advocated for migrant communities across the United States." *See* Exhibit 3, Tab K-1. Likewise, the President of the Atlanta Chapter of the National Association of Hispanic Journalists (NAHJ) stated Respondent is a "necessity" to his community. *See* Exhibit 2, Tab K. A longtime friend of Respondent and his family stated that Respondent "always demonstrated responsibility, diligence, and integrity. He takes pride in his work and approaches every task with seriousness and a strong work ethic." *See* Exhibit 3, Tab K-1. An Atlanta, Georgia attorney who has known Respondent for twenty years stated that

---

has been dropped because the prosecutor stated there was no clear criminal intent in Respondent's actions. *See* Exhibit 2, p.201.

[3] The Court finds the allegations regarding Respondent's interference in law enforcement operations to be especially troubling; however, he is not charged with obstruction of law enforcement. *See generally* Exhibit 4. Thus, the Court gives this alleged conduct less weight. Specifically, the prosecution authority, who is in the best position to investigate and determine appropriate criminal charges, decided Respondent did not possess the requisite intent to commit a crime.

[4] The Department did not reference a potential criminal statute that Respondent would have been violating but the Court did mention that a violation of 18 USC §922 might be implicated. However, elements of that offense were not discussed nor evidence provided that would subject Respondent to criminal prosecution for this offense.

[5] Should Respondent be charged with a firearm offense, the Court notes it would consider this to be a material change in circumstances such that bond could be reconsidered.

[6] The Court notes that Respondent seems to be a legitimate journalist and not a random individual who only wants to disrupt and disrespect law enforcement. Respondent has received recognition as a journalist. *See* Exhibit 3.

4

Respondent is "a compassionate advocate for the independence of observational journalism…. [and] a true professional. *See* Exhibit 2, Tab K. Another practicing attorney wrote:

> I have personally known [Respondent] for several years and willingly agree to be the bond sponsor and be responsible for him. I am aware that he was arrested and firmly believe that he will be cleared of all charges, for I know him to be a responsible journalist and friend who, like me and many other officials of the court, strongly believe in the First Amendment protecting our press and our speech.

*Id*. Respondent has also assisted law enforcement when able. *See* Exhibit 3, Tab C-1 (article titled "Reporter's tip leads to arrest in Gwinnett security guard shooting"); (picture with the caption "Gwinnett County Sheriff giving Mario an award of recognition for his work in the community on December 21, 2024").[7]

While there are claims that Respondent's arrest is an "intimidation tactic" meant to silence the press, the Court is not in the position today to investigate and decide if Respondent's actions are disruptive and annoying, but no line of legality was crossed and his actions were not obstructive and illegal. *See* Exhibit 3, Tab K-1. The Court must leave that decision to any charging authorities. What the Court does know at this time is that if Respondent was acting as a journalist, he is protected by freedom of speech[8] as detailed in the Constitution and longstanding, precedential case law. *See e.g. Bantam Books, Inc. v. Sullivan,* 372 U.S. 58 (1963); *Nat'l Rifle Ass'n of Am. v. Vullo,* 602 U.S. 175 (2024).

The Court does not take Respondent's alleged criminal activity lightly. *See* Exhibit 4. However, all of his alleged crimes are pending charges and Respondent has no other criminal

---

[7] *See also* Exhibit 3, Tab C-1 (picture with the caption "Ride along with Officer ███ from Gwinnett PD on November 27, 2024, to document traffic stops, specifically looking out for speeders and drunk drivers since Thanksgiving was the following day"); (pictures with the caption "At the Texas/Mexico border, with a Texas Sheriff, advising the community to not cross on that side of the border because "they will die" due to the wildlife in that area. October 22, 2024"); (picture with the caption "Press Conference with the FBI"); (picture with caption "ride along with Gwinnett PD") (picture with the caption "Working with the Norcross and Gwinnett Police Departments at an event to give out school supplies to families in need for school on August 1, 2022"); (picture with caption "Ride along with Norcross PD on May 5, 2022, first time after the pandemic"); (picture with caption "Working with the Gwinnett County Sheriff's Office; Giving out food to families in need for Thanksgiving on November 22, 2021"); (picture with caption "Ride along with Sandy Springs Police a couple of years ago"); (picture with caption "Working with Gwinnett PD; covering them giving out backpacks to families in need on July 27, 2021"); (picture with caption "Covering a Blue Lives Matter event held by Gwinnett PD for the Hispanic community on September 11, 2019"); (picture with caption "In Nogales, Arizona at the Arizona/Mexico border with border patrol officers documenting on the dangers that immigrants face while crossing the border without papers"); (picture with caption "Mario was invited as a speaker to represent the Hispanic community at the Gwinnett PD's 200-year anniversary celebration on November 10, 2018"); (picture with caption "In North Carolina, getting ready to cover on the hurricane that was expected with Wrightsville Beach Police on September 13, 2018"); (picture with caption "Discussing the implications of law HB1105 with Lilburn PD to educate the Hispanic community on July 2, 2024"); and (picture with caption "With Lilburn PD discussing the upcoming laws in GA and making recommendations to the community to stay safe during the Christmas and New Year holidays").

[8] The First Amendment to the U.S. Constitution provides that the government must not "abridge the freedom of speech, or of the press." The Court notes that reporting on ICE raids in the community, as Respondent has done, is a national concern and many other journalists across the nation are also reporting on this issue.

history in his twenty years of residing within the United States. *See* Exhibit 1. Respondent in fact has a history of cooperation with law enforcement agencies. *See* Exhibit 2, p.143; Exhibit 3, Tab C-1. In fact, a law enforcement officer, in his personal capacity, believes Respondent to be an asset to the community. *See* Exhibit 2, Tab K ("I am employed by a metro Atlanta police department. In my experience, Mario has been a valuable asset in engaging with the Hispanic community and helping to build stronger relationships between law enforcement and Hispanic residents."). Further, Respondent has a history of following the laws of the United States, as he legally entered the U.S. with a B1 visa, he has employment authorization and a social security number so that he can legally work in the United States, and he has a history of paying his taxes. *See* Exhibit 2, Tabs B and C. Thus, while the Court does not condone Respondent's alleged conduct, nor the allegation of Respondent owning a firearm if true, the Court does not find Respondent poses a danger to the community were he to be released.

## 2. Respondent's Flight Risk can be Ameliorated by a Significant Bond.

The Court does find Respondent to be a flight risk. *See Matter of Drysdale*, 20 I&N Dec. at 815–17. Respondent has negative factors including his pending criminal charges. *See* Exhibit 4, Tab A. However, the Court finds the positive equities outweigh the negative factors in this specific claim. Respondent's son has filed a Form I-130 petition for alien relative, and this application is pending with the Department. *See* Exhibit 2, p.179. After approval, Respondent will apply for adjustment of status under the Act. Thus, his relief is less speculative than usual for respondents.

Respondent has also resided in the United States since his admittance in 2004, and his immediate family are located within the U.S. *See* Exhibit 2, p.14; Exhibit 2, Tab C; and Exhibit 2, Tab F. Respondent also has community support for his release from detention. *See* Exhibit 3, Tab F-1.

> [Respondent] is a devoted husband and father who consistently puts the well-being of his family above all else. He is a pillar in their lives-present, hardworking, and deeply caring. Over the years, we have shared numerous family moments, and through them, I've seen the genuine kindness, humility, and reliability that define Mario's personality.

*Id.* A former Georgia State Representative called Respondent "a compassionate and active member of the community." *See* Exhibit 2, Tab K. An Atlanta Georgia Attorney stated Respondent "is deeply rooted in his family life and his community and has every reason to comply with all court obligations." *Id.* A friend of Respondent's who is handicapped and blind stated that Respondent visits her, takes her to his house, helps her move around, feeds her, and carries her in his arms if necessary. *Id.* Respondent also has a multitude of other family members, friends, community members, church leaders, and fellow church members who attest to Respondent's character, focus on his family and community, and giving character. *See generally* Exhibit 2, Tab K (pgs. 218-279 are character references).

Further, Respondent's son Oscar recently filed an I-130 petition on Respondent's behalf (though Respondent has an approved I-130 through his United States citizen mother and the Court is unaware why the approved petition cannot be used). *See* Exhibit 2, Tabs E and H. Respondent's son Oscar also has serious medical conditions, including a brain tumor that was resected. *See*

Exhibit 2, Tab G. Oscar will require lifelong care. *See* Exhibit 1; Exhibit 2, Tab G. Per Respondent's brother-in-law, as well as many others in the record, Oscar depends on Respondent to attend work and medical appointments. *See* Exhibit 2, Tab K. Per the letters attesting to Respondent's character in the record, Respondent takes his responsibilities as husband and father very seriously, and his brother, a military veteran of Afghanistan, states how much Respondent's family misses him. *Id*.

The risk of flight does exist in this case, and the Court is not ignoring this fact. However, the Court finds that Respondent has a plethora of reasons to remain with his family and comply with any future immigration directives and proceedings. Further still, a practicing Georgia State Attorney who offered to be Respondent's sponsor stated that he "understand[s] the importance of attending court and will do the utmost to ensure that [Respondent] attends all future immigration court hearings. Most importantly, [Respondent] understands and agrees that it is in his best interest to present himself at whatever tribunal and clear his name of any and all alleged wrongdoing." *See* Exhibit 2, Tab K. Ultimately, Respondent's positive equities overshadow his negative factors. Thus, the Court finds Respondent eligible for a reasonable bond of $7.500. *See* Order of the Immigration Judge (July 1, 2025).

### C. Conclusion

The Court considered all the evidence in the record. The Court does take Respondent's pending charges into consideration, but the Court also takes into account that Respondent has not been criminally convicted of any crime in his twenty years in the United States, his family resides within the United States, he has vast community support, and his alleged criminal conduct occurred while Respondent was working as a journalist (which is not a new vocation of Respondent's). Taking all direct and circumstantial evidence into consideration, the Court finds that the Respondent has successfully born his burden of establishing that he would not pose a danger to the community if released, nor does he pose such a significant flight risk that no bond would be appropriate.

Accordingly, the Court entered the following orders:

### ORDERS:

**IT IS HEREBY ORDERED** Respondent's request for bond redetermination be **GRANTED**.

**IT IS HEREBY FURTHER ORDERED** Respondent be released from custody under a bond of **$7,500.00**.

July 11, 2025
Date

*James T. Ward*
Honorable James T. Ward
United States Immigration Judge

7

**Order of the Immigration Judge**

Immigration Judge: Ward, James  07/11/2025

**Certificate of Service**

This document was served:
Via: [ M ] Mail | [ P ] Personal Service | [ E ] Electronic Service
To: [  ] Noncitizen | [  ] Noncitizen c/o custodial officer | [ E ] Noncitizen atty/rep. | [ E ] DHS
Respondent Name : GUEVARA, MARIO A | ███████████
Riders:

Date: 07/11/2025  By:  Green, Tyeshia , Court Staff

# Exhibit 7

June 25, 2025

To whom it may concern,

    I, ▮▮▮▮▮▮▮▮▮▮▮▮ certify that the following information in this letter is true and accurate to my knowledge. I am the brother-in-law of Mario Alexander Guevara, and I have known him for about 30 plus years. I am a resident of ▮▮▮▮▮▮▮▮▮▮ and I have been a dedicated citizen for 35 plus years of the United States.

    In all the years that I have known Mario Guevara; I have witnessed how dedicated and hardworking he is. He is a great provider to his family and has never failed to do so. Mario is a very respected man for the kind of work that he has done. He has always been a compassionate person, offering a helping hand to his community. His desire to help those who are overlooked has had an impact on my life by encouraging me to always treat others with kindness. Due to this, I feel as though it has been of an injustice to him for being locked up for simply reporting news to the community. His family has suffered greatly from his absence, especially since he is the primary provider for his family. My nephew, a brain surgery survivor, depends on Mario daily to get around for work and hospital visits. Mario belongs with his family, his friends, and the community that highly values him.

    I am asking that you please allow Mario to remain in the United States. We need him back to be reunited with his lovely wife, my sister, and my niece and nephews. Mario deserves to stay in the United States because he continually has contributed to society in a positive way.

    If you have any questions or concerns about this matter, please feel free to contact me.

Thank you,



█████████

███████████

████████

June 20, 2025

To the Honorable Immigration Judge:

My name is ████████████ and I am writing this letter in support of Mario Guevara, whom I have known both personally and professionally for over 15 years. As a former State Representative for the State of Georgia, I proudly served my community for 22 years, and I have always valued integrity, dedication, and public service—qualities that Mario has consistently embodied since the first day I met him.

I came to know Mario in 2008, when he began his work as a journalist with Mundo Hispánico, one of the most trusted sources of news and information for Georgia's Latino community. From the outset, Mario distinguished himself as a courageous reporter and a fierce advocate for the rights of immigrants and underserved populations. His journalism has played a critical role in elevating community voices and exposing issues that might otherwise have remained hidden from public view.

Beyond his professional contributions, Mario is a compassionate and active member of the community. He has continuously worked to build bridges between communities, empower families through information, and shed light on stories that matter. I have always seen him as someone who upholds the values of truth, justice, and service—the very ideals that make this country stronger.

Mario Guevara is not only an asset to our community; he is an embodiment of its resilience and hope. I respectfully ask the Court to take his character, long-standing contributions, and deep community ties into consideration as you review his case.

Sincerely,

████████████



June 18, 2025

To Whom It May Concern,

My name is [redacted] and I serve as President of the Atlanta Chapter of the National Association of Hispanic Journalists (NAHJ). I submit this letter on behalf of my colleague and friend, Mario Guevara, with the hope that it will aid in preserving not just his legal standing in this country, but the dignity and presence of a man whose life's work has been dedicated to uplifting others.

From my first interaction with him, it was clear Mario possessed a rare quality: the ability to make people feel truly seen. Not just listened to. Not just observed. Seen. That instinct—that empathy—is also what makes him a phenomenal journalist.

For years, Mario has been a fixture in our city's Spanish-speaking community. But calling him a "fixture" doesn't do him justice. He is, in every sense, a necessity. He has covered stories that others overlook, amplified voices too often ignored, and offered his community not only information, but a sense of belonging.

I've also had the privilege of knowing Mario outside the newsroom. He is a devoted husband and a proud father. I've watched his daughter grow up—

EOIR — 23A of 349

Updated All Amonds 87/22/2628, 00:00:05 PM AM Eastern Daylight Time Page 2 City FBG

from a small child who looked up to her father in the literal sense, to a young woman now standing up for him, passionately fighting for his freedom with the same integrity he's modeled for her all her life.

Even in the most humiliating and uncertain moments of his detention, Mario has carried himself with quiet dignity. His conduct is not only a reflection of his character—it is a testament to his strength. He deserves the chance to continue living his life, contributing to his community, and raising his family here—freely.

As President of NAHJ Atlanta and as a longtime journalist myself, I stand with Mario Guevara. His absence would be a loss not only to his family, but to the very fabric of Atlanta's Latino community—and to the profession of journalism itself.

Sincerely,



EOIR – 235 of 349

June 20, 2025.

Your Honorable Immigration Judge,

     My name is ▮▮▮▮▮▮▮▮ I am writting this letter on behalf of my brother Mario Guevara. Mario, who is a well known journalist was detained while covering a a immigration protest that took place in the city of Doraville on June 14, 2025.

     I am writting this letter as a citizen of the U.S and a U.S Army veteran who served in Afghnistan. I will forever cherish this great neation that has given my family and I the opportunity of a lifetime which is to live here. I say this to emphasize that Mario also shares the same feeling as mysekf for this great nation. He is also someone who is very much loved in the community and has a crime free record ever since he arrived in our country.

     As a family we are asking for him to receive a bond and be able to answer for his charges. I know Mario very well and there is no risk of letting him out of custody. I am asking as somneone that has put my life on the line for this country for him to come home. Mario is very much missed in our family and we ask for him to come to us.

Sincerely,

▮▮▮▮▮▮▮▮




– MAIN
– FACSIMILE



**ROHAN**
L A W   P C
A Professional Corporation

IN MEMORIAM:
LAURENCE BYRON ROHAN, JR. (1918-1980)

REPLY TO:

WWW.ROHANLAWPC.COM

June 20, 2025

**RE: Letter of Support for Mario Guevara**

To Whom it May Concern:

I have known Mario Guevara for 20 years. We met while he was a reporter for the spanish language newspaper Mundo Hispanico here in Atlanta, Georgia. Since that time, I have conducted dozens of interviews with him about newsworthy cases. We also discussed current events and our families. One summer, his daughter even came and worked for me in my office to earn money for her college tuition.

During this time, I have known Mario to be a compassionate advocate for the independence of observational journalism. He has always been a true professional. He has been so committed to the obligations he has to objectively report the truth, that he has even earned himself some detractors. Not everyone loves Mario, but that is because he "calls balls and strikes" like he is supposed to. He doesn't have an agenda. He doesn't support a cause. He doesn't allow biases to enter into his reporting. He has cultivated strong relationships in the community both with activists and law enforcement, and both love him and bristle at him when the reporting does not go their way.

Mario has dedicated his carrer to journalism for the purpose of providing for his family and in particular his special needs son. He works tirelessly to report the news accurately while serving as a dedicated father and husband. He loves his work. He loves this country. He excels at his calling. There is no legitimate reason, economically, politically, socially, to keep him in custody any longer. He is not a danger to the community. He is not a danger to flee. He has a constitutional right to bond and should be afforded such. Thank you for your consideration.

With all possible sincerity,





Principal Member
Immigration Law

June 19th, 2025

Honorable Immigration Judge
Executive Office of Immigration Review

### Re: Letter of Support for Mario Alexander Guevara

Dear Honorable Judge,.

I am writing this letter in support of Mario Alexander Guevara, whom I have known personally for over fifteen years. I respectfully ask the Court to consider his strong moral character, deep family ties, and unwavering commitment to his community as you review his case and consider setting a reasonable bond.

Mario is a devoted husband and father of three children who rely on him for emotional and financial support. His absence has created a significant hardship for his family, who are suffering greatly without his presence. He is a man of strong faith, deeply involved in his religious community, and is known among friends and neighbors as a kind, dependable, and principled individual.

To the best of my knowledge, Mario has never had any issues with the law. He has consistently conducted himself in a lawful and responsible manner and has never posed a danger to the community. I also do not believe he is a flight risk; Mario is deeply rooted in his family life and his community and has every reason to comply with all court obligations.

I urge you to consider granting Mr. Guevara a reasonable bond so that he may return home to his family during these difficult times. His continued detention is not only unnecessary but is also causing significant emotional and financial strain on those who depend on him most.

Thank you for your time and consideration.

Respectfully,

Sincerely,

Subscribed + sworn
before me this 19th
day of June, 2025,
by
who personally appeared
before me.
X
Esteban Galvez

The Moreno Law Firm, LLC

I am writing this letter to express my support for Mr. Mario Guevara and to respectfully ask for your consideration in allowing him to remain in the United States.

I have had the privilege of knowing Mr. Guevara through our church community and can personally attest to his character, integrity, and strong moral values. He is a respectful, hardworking, and caring individual who is committed to making a positive contribution to those around him.

Throughout the time I have known him, Mr. Guevara has demonstrated a genuine desire to build a better life for himself and to be a productive member of society. He treats others with kindness and respect and is deeply valued by those who know him.

It is my sincere belief that Mr. Guevara is an individual who deserves the opportunity to remain in the United States, where he can continue to contribute positively to the community and live a productive, hopeful life.

Thank you very much for your attention and consideration of this matter. Should you require any additional information or clarification, I am more than happy to provide it.

Sincerely,

Notary Public Signature

STATE OF GA
COUNTY OF Gwinnett

The foregoing instrument was acknowledged before me this 24th day of June 20 35 .
by

Notary Public's Signature          Gage Rhodes
My Commission Expires February 01, 2028          Notary Name

GAGE RHODES
Notary Public, Georgia
Walton County
My Commission Expires
February 01, 2028

EOIR – 280 of 349

June 23, 2025

To whom it may concern,

I, _____ certify that the information provided in this letter is true and accurate to the best of my knowledge.

I have known Mario Guevara for approximately two years and have maintained a professional working relationship with him during that time. I am a resident of Barrow County, Georgia, and a legal citizen of the United States.

I am employed by a metro Atlanta police department. In my experience, Mario has been a valuable asset in engaging with the Hispanic community and helping to build stronger relationships between law enforcement and Hispanic residents.

Please note that the views expressed in this statement are my own and do not necessarily reflect the official position of my employer.

If you have any questions or require additional information, please feel free to contact me.

Sincerely,

June 19, 2025

To Whom It May Concern;

I, ██████████ certify that the following information in this letter is true and accurate. I am a resident of Flowery Branch GA and I am a citizen of the United States.

I have known Mario Guevara for about 15 years since he became a member of our church which is locate in Flowery Branch.

Mario Guevara is a member of our church in good standing and participates in all activities and it has been a Sunday school teacher for our youth for many years. He is a good husband, father and friend and a good example to our kids.

Mario also helps our community in every way possible (he has receive many recognitions from our community members) and I can say that he has helped our nation since his help transcend the limits of our city.

I am asking that you please allow Mario to remain in this country.

If you have any questions or concerns about this matter, please free to contact me at ██████████

Thank you

██████████████████████████

State of Georgia
County of Hall

Subscribed and sworn to (or affirmed) before me on this 19 day of Jun 2025 by ██████████ who is personally known to me.

Notary Public signature

My commission expires: 12/4/2028

# *Radio Visión Cristiana*

June 18, 2025

To whom it may concern,

This letter is to verify that I have known to Mr. Mario Alexander Guevara For over 10 years. I am ███████████ presently Superintendent of the Council of Pentecostal Churches of God M.I. Eastern Region as well as the President of Radio Vision Cristiana Internacional (Christian Vision Radio International), one of the largest stations in the Hispanic community, reaching and impacting millions in the United States, Latin America and many other countries.

It is the station's purpose to teach and preach the Word of God to people across the world. These teachings are not only of Scripture, but also teachings of life experiences from individuals whose lives are being changed by their encounter with God, and can share their particular testimonies for the glory of God.

Our independent communicator, Mr. Mario Alexander Guevara, has become a social and spiritual welfare tool for the community in which he has been serving.

As a Christian media, we pray that the competent authorities will facilitate and favor our brother Mario Alexander Guevara, recognizing him as a person worthy of continuing to serve his community with honorable work such as healthy communication of informing and reuniting with his family and Church.

In the service of the kingdom of God and communities of all people, If you want to contact me, feel free to do so, at ███████████

Receive our advance Thank you



June 18, 2025

To Whom It May Concern,

I am ███████████ certifies the following in the letter is true and accurate to my knowledge. I am a friend of Mario Alexander Guevara and I have known him for about 14 years. I am a resident of ████████████████████████ I am a legal Resident of the United States.

I know Mario as a hard working person who helps the community at large. I love him as my own son because he has helped me so much. I am a handicapped and blind person and when he visits me or takes me to his house, he helps me move around; he feeds me and even carries me in his arms if necessary.
I can reassure you that he is a great person with a good and kind heart. I wish this world will have more people like him.

I am asking you to please allow Mario to remain in the United States, he is a good Citizen and if given the opportunity can do great things in this country.

If you have any questions or concerns regarding this matter, please do not hesitate to contact me.

Thank you,

████████████████████

State of Georgia
Hall County

Subscribed and sworn to before me on this __19__ day of __June__ 2025 by ███████████ who is personally known to me or has produced __Non-Drivers__ as identification. __Id__

Notary Public Signature _____

Seal                My Commission Expires ___August 1st, 2026___

**Gricelda M Campos Semler**
Notary Public
Hall County, Georgia
My Commission Expires August 1, 2026

June 18, 2025

To whom it may concern,

I, ██████████ certify that the following information in this letter is true and accurate to my knowledge. I am a friend of Mario Alexander Guevara, and I have known him for about 14 years. I am a resident of ██████████████████████████ and I am a permanent resident of the United States.

Mario and I attend the same church where I am the worship leader. He has been a great blessing to my worship ministry. He was kind enough to help produce my music video free of charge. Whenever I need help with my ministry, he is the first one to jump in and assist.

Mario is a true friend to all. He is a selfless person, and his genuineness is a true virtue. He works hard every day to provide for his family and works to make a positive difference in our community.

I am asking that you please allow Mario to remain in the United States.

If you have any questions or concerns about this matter, please feel free to contact me.

State of GA
County of Hall

Notary Public Signature

My commission expires: _____

EOIR – 235 of 349

June 18, 2025

To whom it may concern,

I, █████████████, certify that the following information in this letter is true and accurate to my knowledge. I am sister in Christ of Mr. Mario Alexander Guevara, and I have known him for about 10 years. I am a resident of Gainesville GA and I am a US citizen.

Mr. Guevara is a kind and hard-working person who if given the opportunity can do great things in this country, he is known for his generosity, very respectful, willing to always help others and think of others before him.

I am asking that you please allow Mr. Guevara to remain in the United States, he does no harm to anyone, but instead he contributes this country, and doesn't complaint even during rough times.

If you have any questions or concerns about this matter, please feel free to contact me

Thank you,

█████████████

Gainesville GA

Subscribed and sworn to (or affirmed) before me on this __18_ day of _June_, 2025, by █████████ ██████████ who is personally known to me or has produced a state of Georgia Driver Licence as identification.

Notary Public Signature

*Ana Moreira*

My commission expires: ___07/23/2025_____

ANA G MOREIRA
Notary Public, Georgia
Hall County
My Commission Expires
07/23/2025

June 18, 2025

To Whom It May Concern,

I am ████████████████████ certifies the following in the letter is true and accurate to my knowledge.

I am a friend of Mario Alexander Guevara and I have known him for about 5 years.

I am a resident of ████████████████████████. I am a Citizen of the United States.

I know Mario as a hard working person who helps the community at large, he is a great father and husband who works hard every day to give his family the best.

He attends every church's service and has been a Sunday School Teacher for Teenagers.

I am asking you to please allow Mario to remain in the United States, he is a good Citizen and if given the opportunity can do great things in this country.

If you have any questions or concerns regarding this matter, please do not hesitate to contact me.

Thank you



State of Georgia
Hall County

JESUS ME JIA
NOTARY
EXPIRES
GEORGIA
DECEMBER 4, 2026
PUBLIC
HALL COUNTY

EOTR — 249 of 349

Telephone:
Email:

June 18, 2025

RE: Bond Hearing for Mr. Mario Guevara

Dear Honorable Judge:

I have personally known Mr. Guevara for several years and willingly agree to be the bond sponsor and be responsible for him.

I am aware that he was arrested and firmly believe that he will be cleared of all charges, for I know him to be a responsible journalist and friend who, like me and many other officials of the court, strongly believe in the First Amendment protecting our press and our speech.

He is a respected and hard-working man with a wife and three children all who live, study and work in Lilburn, Georgia.

As a practicing attorney, I understand the importance of attending court and will do the utmost to ensure that he attends all future immigration court hearings. Most importantly, he understands and agrees that it is in his best interest to present himself at whatever tribunal and clear his name of any and all alleged wrongdoing.

I respectfully petition the court to grant Mr. Guevara a bond. Please release him so he can work to support himself and raise his family.



Sin

CERTIFICATE OF ACKNOWLEDGMENT OF NOTARY PUBLIC

STATE OF GEORGIA
COUNTY OF NEWTON

This document was acknowledged before me on June 18, 2025 by
[Notary Seal, if any]:

(Signature of Notarial Officer)
Notary Public for the State of Georgia
My commission expires: _March_ 20, 2029



June 20, 2025

To whom it may concern,

I, ███████████ certify that the information in this letter is true and genuine to my knowledge. I have known Mario Alexander Guevara for about 15 years now. We met him and his family first when they started attending my church. His daughter and son are some of my closest friends, therefore I have been around Mario and his whole family for a long time. Mario has always been a respectful man. He's very funny, kind, supportive of his friends, and giving. I have been able to see his growth in his passion for Journalism over the years, from working for certain television networks to finally having his own business in reporting news. Mario is very close to his family. I joined a Thanksgiving party with his family when my family was out of town. They welcomed me joyfully as we all met at Mario's mother's house and had a delicious feast! Mario has always welcomed me into his home so I can spend time with ███████████ (his daughter and son). I am a witness of how he loves and cares for them strongly. Every time I went to their home, I was able to see love and respect. He always celebrates his children so big! I remember attending ██████ s sweet 16, college graduation, birthday parties, as well as ██████ s celebrations and He has always outdone himself to give them the best! Of course, he does the same with his wife and younger son ██████. Mario and his family attended my wedding, baby shower, and other special events in my personal life. Mario was so very kind to offer me a free pregnancy photoshoot. Mario, my husband, and I all gathered at a park in Flowery Branch where he took amazing photos of my husband and I. I am so thankful for that since I wasn't planning to spend on pregnancy photos and I didn't even ask him, it was something that came from his heart and he told me "Don't worry about it, this is my gift to you guys".

Mario Guevara is a smart entrepreneur. He is very well respected among the Hispanic community, my church, and around his colleagues. Everyone deserves a chance at the American Dream. Mario humbly deserves it. He has wasted no time in creating an outlet to express Journalism in such a fresh and unique taste. This is the type of creativity, boldness, talent that we need in the United States. Mario is quick to work, to create, to build, to teach, to love others like Christ loves them. So please, I humbly request for my brother in Christ, Mario to stay united with his family here in the United States. He has built so much for himself and his family. It would be tragic for everything to be ripped away from

EOIR — 249 of 249

him. His wife and three children need him. Especially ▮▮▮▮ I am also witness to how he cares for ▮▮▮ My dear buddy ▮▮▮ had brain surgery and to be honest it's been hard for all of us. Mario was there at the hospital documenting his son going through this tough time, he was there to cheer him on, he was there to hug him when he was crying with fear. He risked his life a couple times to be next to his son. These are the types of fathers we need here as well!

I am asking you please consider my true and honest words and see Mario through my eyes. Just as he has done many kind things for my family, I do this for him. If you have any questions about this matter, please feel free to contact me.

Thank you!



State of Ga, County of Hall

Marie Williams

6-20-25

MARIE WILLIAMS
NOTARY
EXPIRES
FEBRUARY 24, 2026
PUBLIC
JACKSON COUNTY, GEORGIA

June 18, 2025

To whom it may concern,

I, ███████████ , certify that the following information in this letter is true and accurate to my knowledge. I am a pastor friend of, Mario Alexander Guevara, and I have known him for more than 20 years. I am a resident of ███████████████████████████████ and I am a Citizen of the United States.

Mario is a kind and hard-working person who if given the opportunity can do great things in this country.

I am asking that you please allow Mario to remain in the United States.

If you have any questions or concerns about this matter, please feel free to contact me.

Thank you



State of Georgia

County of Gwinnett

Subscribed and sworn to before me on this 18 day of June 2025, by ███████████ who has produced driver license as identification.

Notary Public Signature



KATHERINE COREAS GUZMAN
NOTARY PUBLIC
GWINNETT COUNTY
STATE OF GEORGIA
COMM. NO: W-00668334
My Comm. Expires Aug. 28, 2028

June 19, 2025

To whom it may concern,

I, ███████████ certify that the following information in this letter is true and accurate to the best of my knowledge. I am a friend and fellow church member of Mario Alexander Guevara, and I have known him for approximately one year. I am a resident of ███████████ ███████████ and I am a Citizen of the United States.

Mario is a kind, respectful, and deeply compassionate individual. As a journalist, he has shown great courage and integrity in serving the community, especially among Latino immigrants. Outside of his profession, I have witnessed his sincere desire to help others, always ready to lend a hand, offer support, and contribute positively wherever he is needed.

He is a loving father, a loyal friend, and a faithful member of our church community. His character, commitment, and service to others reflect the values this country stands for. I strongly believe that if given the opportunity to stay in the United States, Mario will continue to be an asset not only to his family but to the broader community as well.

I respectfully ask that you allow Mario to remain in the United States, where he can continue to build a future, support his U.S. citizen son, and live in peace with dignity and purpose.

If you have any questions or need further information, please feel free to contact me.

Sincerely



State of Georgia
County of Gwinnett

Subscribed and sworn to (or affirmed) before me on this 19 day of June, 2025, by ███████████ who is personally known to me or has produced a Georgia driver's license as identification.

Notary Public Signature
[Seal]
My commission expires: June 4th 2028

JULISSA POSAS
MY COMMISSION EXPIRES
NOTARY
PUBLIC
JUNE 04, 2028
GWINNETT COUNTY, GEORGIA

IGLESIA CASA DE
BENDICIÓN
ATLANTA

June 20, 2025

To the attention of U.S. Immigration and Customs Enforcement (ICE)

**Subject: Pastoral Petition on behalf of Mr. Mario Guevara**

Dear Officers,

As the senior pastor of Casa de Bendición Inc. and president of Mañón-Rossi Ministries, I wish to respectfully present a pastoral appeal on behalf of Mr. Mario Guevara, who has for many years been a faithful collaborator of our congregation and of our ministry initiatives.

Mario has generously and unconditionally supported the musical ministry of my wife and copastor, ▇▇▇▇▇▇▇ providing recording, editing, and promotional services with dedication and without any expectation of compensation. His kindness, selflessness, and constant willingness to serve others have been a true blessing to us and to many other families in the Christian community.

As a fellow board member of AMCCA, I have had the opportunity to work closely with him and witness firsthand his human quality, respect for the law, love for God, and deep commitment to truth. His testimony has been consistent both in private and public settings. He has never promoted violence, civil disobedience, nor has he exhibited dishonorable behavior.

We understand that his immigration status is currently in the process of regularization, and we appeal that this process is not hindered by an incident which, to our knowledge, arose in connection with his professional work as a journalist.

I humbly ask that you grant him the opportunity to continue serving, contributing to, and building up this community as he has done faithfully to this day. May his legal case be considered alongside his human record.

With faith that this petition will be received with compassion and justice,

Sincerely,

DAWE MIDDLETON
COMMISSION EXPIRES
JUNE
24
2027
COBB COUNTY, GA
NOTARY PUBLIC

*Yraum Coone Middlth, Notry*

GEORGIA NOTORIAL CERTIFICATE

Acknowledgment for an individual acting in his own right: State of Georgia County of _Cobb_

This instrument was acknowledged before me this _20ᵗʰ_ day of _June_ (month), _2025_ (year),

by_____ (name of signer).

_____ Personally Known

__✕__ Produced Identification Type and # of ID_____

(Seal)      _Laurie Crone Middlton_ (Signature Notary)

_Laurie Crowe Middleton_ (Name of Notary Typed, Stamped or Printed)

**Notary** Public, State of Georgia



**AMCCA**
Asociación de Músicos y Compositores
**Cristianos de Atlanta**

## Asociación de Músicos y Cantantes Cristianos de Atlanta (AMCCA)

June 19, 2025

To the attention of the Detention and Deportation Department
U.S. Immigration and Customs Enforcement (ICE)

To Whom It May Concern,

We, the Association of Musicians and Singers of the City of Atlanta (AMCCA), respectfully submit this letter on behalf of journalist Mario Guevara, a member of our Christian community, whose contributions to our mission and the local community have been significant and commendable.

Mr. Guevara has provided invaluable voluntary services with his professional video equipment to support and document our events without any financial compensation. Through his public influence and civic engagement, he has consistently advocated for our association in the broader community, promoting our initiatives and helping secure exemptions and permissions for our traditional Christmas and children's presentations. His conduct has always been marked by respect, dedication, and responsibility.

We are unaware of the specific details that led to his current situation involving ICE; however, we are confident in affirming that Mr. Guevara has consistently demonstrated Christian values, civic responsibility, and an exemplary work ethic. He is not violent, rebellious, or negligent. On the contrary, he is a joyful, hardworking individual who serves others selflessly.

Considering the above, we humbly request that ICE consider his positive community impact when evaluating his case. We respectfully ask that his immigration process not be jeopardized and that he be released from detention. His life and service have been an asset to the state of Georgia and the broader faith-based community.

Respectfully,

LAURIE CROWE MIDDLETON
MY COMMISSION EXPIRES
JUNE 24 2027
COBB COUNTY, GA
NOTARY PUBLIC

Laurie Crowe Middleton, Notary

GEORGIA NOTORIAL CERTIFICATE

Acknowledgment for an individual acting in his own right: State of Georgia County of ___Cobb___

This instrument was acknowledged before me this ___20th___ day of ___June___ (month), ___2025___ (year),

by_____ (name of signer).

_____ Personally Known

__X__ Produced Identification Type and # of ID _____

(Seal)    _Laura Crone Middle___ (Signature Notary)

_Laurie Crave Middleton_ (Name of Notary Typed, Stamped or Printed)

Notary Public, State of Georgia

June 18, 2025

To Whom It May Concern

I am ████████████████████ certifies the following in the letter is true and accurate to my knowledge. I am a friend of Mario Alexander Guevara and I have known him for about 12 years. I am a resident of ██████████████████ ████████. I am a Citizen of the United States.

I know Mario as a hard working person who helps the community at large, he is part of the Compassion Ministry in our Church in which he supports it financially, he also plans activities and collects funds every month to help those in need.

When I moved to Georgia back in 2013, he tried to help me find a job, he also helped my mom by buying her a new door for her apartment. She is handicapped and blind.

I am asking you to please allow Mario to remain in the United States, he is a good Citizen and if given the opportunity can do great things in this country.

If you have any questions or concerns regarding this matter, please do not hesitate to contact me.

Thank you.

State of Georgia
Hall County

Subscribed and sworn to before me on this ___18___ day of ____Ju____ 2025 by ████████████ who is personally known to me, or has produced __Dri..lic__ as identification.

Notary Public Signature

My Commission Expires ___12/4/20___

JESUSITA SOMEJIA
NOTARY
EXPIRES
GEORGIA
DECEMBER 4, 2026
PUBLIC
HALL COUNTY

June 19, 2025

To whom it may concern,

I, ███████████████████, I'm a resident of Lawrenceville GA, and a
permanent resident of the United States, wish to extend my recommendation in favor of Mario
Alexander Guevara. I have known Mario for almost 4 years, he has helped me in several ways,
from giving me opportunities to work to gifting me photography equipment so I can start
working with clients.

I have personally witness Mario's good heart and willingness to help anybody, even
when he needs to get out of his way to do it. I have seen how devoted he is to his family,
community and work.

I respectfully ask that Mario Guevara be allowed to remain in the United States, where he
already has his working permit and a process to get his residency.

If you have any questions or concerns about this matter, please feel free to contact me.

Thank you,



State of Georgia
County of Gwinnett

Subscribed and sworn to (or affirmed) before me on this 19 day of ____, 2025, by ███████
███████ who is personally known to me.

Notary Public Signature

My commission expires: 12/4/26

June 19, 2025

To whom it may concern,

I, ▮▮▮▮▮▮▮▮▮▮▮▮ I'm a resident of Lawrenceville GA, and a permanent resident of the United States, wish to extend my recommendation in favor of Mario Alexander Guevara. We have known each other for almost 4 years, and since the first night we met, he has been nothing but kind to me and my family. Mario has been of great support during the passing of my wife, both emotionally and financially.

During the time that my wife was sick, Mario always kept an eye on her, bringing her everything and anything she needed, paying from his own pocket for anything that could make her feel better. My wife really appreciated Mario while she was alive and he was one of the closest people to my family and me the last few weeks before her passing. After her passing, Mario offered to pay for flowers and printed pictures for the service, and even offered his help with anything else we needed.

Mario has personally paid for our groceries when we needed them, helped me with several home improvement projects in which he has provided everything I needed, and overall keeping an eye on me and my family during these hard times of grieving. He has done this and more without us asking for it, he has done it out of the kindness, generosity, and compassion of his heart, something that everyone around us can testify of.

Mario has been nothing but generous and kind to my family and myself, if he sees anyone in need, he doesn't think twice to get out of his way to help them out. I can personally testify that he is a hard-working man, an amazing father and husband, and a respected member of our community.

I respectfully ask that Mario Guevara be allowed to remain in the United States, where he already has his working permit and a process to get his residency.

If you have any questions or concerns about this matter, please feel free to contact me.

Thank you,

State of Georgia
County of Gwinnett

Subscribed and sworn to (or affirmed) before me on this 19 day of ⟋⟋⟋, 2025, by ▮▮▮▮▮ who is personally known to me.

Notary Public Signature

My commission expires: 12/4/26

JESUSITA S MEJIA
NOTARY
EXPIRES
GEORGIA
DECEMBER 4, 2026
PUBLIC
HALL COUNTY

June 18, 2025

To Whom It May Concern:

My name is ██████████ and together with my husband, Pastor ████████████ I have the privilege of pastoring the Iglesia de Dios Pentecostal M.I. for many years. It is with great respect and sincerity that I write this letter in support of Mr. Mario Guevara, who has been a faithful and exemplary member of our congregation for over 15 years.

Throughout all these years, Mr. Guevara has proven to be a man of great heart, integrity, respect, and deep commitment to his faith. His servant's heart and constant willingness to help in church activities reflect his love for God and for others. He is always ready to lend a hand, never seeking recognition, and always demonstrating humility and dedication.
Mario Guevara is well-loved by our congregation—not only because of his kindness but also due to his sense of responsibility, upright character, and exemplary conduct. He is a hardworking, honest, and law-abiding man whose life reflects strong Christian values.

I am asking that you please allow Mario to remain in the United States.

If you have any questions or concerns about this matter, please feel free to contact me.

Thank you,



State of GEORGIA
County of HALL

Subscribed and sworn to (or affirmed) before me on this 18th day of June, 2025, by ████
████████, who is personally known to me

Notary Public Signature

My commission expires: _____

June 18, 2025

To whom it may concern,

     I, ████████ certify that the following information in this letter is true and accurate to my knowledge. I am a fellow church member and close friend of Mario Alexander Guevaraand his family; I have known him for about 14 years. I am aresident of ████████ ████████ and I am a Citizen of the United States.

     In the years I have known Mario I know he is kind, always willing to help anyone and a hard-working person who, if given the opportunity, can do great things in this country. He is an active member of our church, and he is always working onmultiple church projects including our church maintenance. Heis active in many ministries of the church including a Sunday school teacher for the youth. He is loved and respected by his family and all church members.

     It is an honor to have Mario as my friend and have someone I can always count on. He is an inspiration to many. I am asking that you please allow Mario to remain in the United States.

     If you have any questions or concerns about this matter, please feel free to contact me.

Thank you,



State of Georgia
County of Hall

Subscribed and sworn to (or affirmed) before me on this 18 day of June 2025, by ████████ who is personally known to me or has produced Driver's License as identification.

Notary Public Signature

My commission expires: 12

JESUSITA S MEJIA
NOTARY
EXPIRES
GEORGIA
DECEMBER 4 2026
PUBLIC
HALL COUNTY

# LETTER

Date: 06/18/25

From:

To whom it may concern,

My name is _____ I became a United State citizen in 2019. My US
passport # _____ and I am writing this letter to offer my recommendation of
Mario Alexander Guevara, I have known this individual for 10 years,
During this time that I have known him, he has been a great exemplary person for
our community.

Please do not hesitate to get in touch if you should require any further information.

Sincerely,



Date: 6/18/25



CamScanner

June 18, 2025

To whom it may concern,

I, ███████ certify that the following information in this letter is true and accurate to my knowledge. I have been a close friend of Mario Alexander Guevara and his beautiful family; I have known him for about 14 years. I am a resident of ████████████████████████████ and I am a Citizen of the United States.

In these many years I have known Mario, I have seen him as a loving father, husband and a faithful man to his beliefs. He is a person who is always willing to help anyone in need and works hard to do his best in anything he does. He has always helped the community and has always tried to do his part. He is dedicated, kind to others and a hard-working person who, if given the opportunity, can do great things in this country because of the person he is. I am happy to call him a friend.

I am asking that you please allow Mario to remain in the United States.

If you have any questions or concerns about this matter, please feel free to contact me.

Thank you,



State of Georgia
County of Hall

Subscribed and sworn to (or affirmed) before me on this 18 day of June 2025, by ████████ who is personally known to me or has produced Driver's License as identification.

Notary Public Signature

My commission expires: 12/4/26

EOIR – 263 of 249



### IGLESIA DE DIOS PENTECOSTAL M. I.
### ARCA DE JEHOVA

Flowery Branch GA, June 18, 2025

To Whom It May Concern,

I, Pastor ▮▮▮▮▮▮ am honored to write this letter of highest recommendation for Mr. Mario Alexander Guevara, whom I have had the privilege of knowing personally for approximately 14 years. Throughout this time, Mario has been an exemplary member of our church, serving with humility, consistency, and a heart full of compassion.

He has faithfully served as a youth teacher, contributed to various cleaning, gardening, and church reconstruction projects, and has been a faithful financial supporter of our congregation over the years. Currently, he is actively involved in our Compassion Ministry, where he helps those in need with genuine dedication. In truth, this ministry of compassion has been an extension of his personal lifestyle, for he has helped hundreds of needy individuals, including the elderly and children, both within and outside the United States, always without seeking recognition or reward, simply for the joy of helping others.

I have personally heard him express his deep love for this country, and although he is not an American citizen, he has said he would be willing to offer his life for the United States.

From a family perspective, I have also witnessed his heart as a devoted husband and father. Mario is a tireless worker, always committed to providing for his family. I recall the heartfelt pain he experienced when his son, ▮▮▮▮▮▮ was diagnosed with a severe brain tumor. Thanks be to God, the tumor was successfully removed, but the surgery left lasting side effects, such as speech and mobility challenges. Since then, ▮▮▮▮ has also experienced recurring seizures and can no longer drive, which has required Mario to personally transport him, even after exhausting workdays.

Because of all these reasons—and many more that words cannot fully capture—I, Pastor ▮▮▮▮▮▮▮ testify to the character, perseverance, faith, compassion, and unwavering love for his family and fellow human beings that define Mario Alexander Guevara. I pray that God continues to bless, protect, and strengthen him every step of the way.

I respectfully request Mario be allowed to remain in the United States. He has working permits to work in this country and is already in the process of obtaining his residency.

Sincerely,

Pastor ▮▮▮▮▮▮
Church of God Pentecostal,
International Movement, Atlantic South Region – USA

▮▮▮▮▮▮▮

SIGNATURE OF ORGANIZATION REPRESENT

*Notary seal: JESUSITA S MEJIA / NOTARY / EXPIRES / GEORGIA / DECEMBER 4 2026 / PUBLIC / HALL COUNTY*

June 18, 2025

To whom it may concern,

I, ███████████ certify that the following information in this letter is true and accurate to my knowledge. I am a close friend of Mario Alexander Guevara's daughter and I have known him for about 15 years. I am a resident of ████████████████████████████ and I am a Citizen of the United States.

Mario is a bright light to my family and I. He has a genuine and loving heart. He brings joy, laughter, and love to our lives. Mario has supported my family in numerous hardships and never asks for anything in return. Over the past 15 years I have seen how selfless he is and how he is always willing to help people in need; people outside and inside his community. He's helped people with disabilities, people who are struggling financially, and his testimony has brought many people to God's arms. He has personally supported my career as an educator by donating material and supplies to my classroom for my 1st grade students. He did this out of the kindness of his heart. I have seen how affected my friend and her family are with his absence. He is the head of the household and his family and friends need him home.

I am asking that you please allow Mario to remain in the United States.

If you have any questions or concerns about this matter, please feel free to contact me.

Thank you,



State of Georgia
County of Hall

Subscribed and sworn to (or affirmed) before me on this 18 day of June 2025, by ███████ ███████████, who is personally known to me.

Notary Public Signature

My commission expires: 12/4/26

JESUSITA S MEJIA
NOTARY
EXPIRES
GEORGIA
DECEMBER 4, 2026
PUBLIC
HALL COUNTY

EOIR — 265 of 319



USCIS A ████████

**To Whom It May Concern,**

I, ████████████████████ hereby certify that the information in this letter is true and accurate to the best of my knowledge.

I have known Mario Alexander Guevara for 15 years through our fellowship at IDPMi Arca de Jehova in Flowery Branch. Although I briefly attended another church, upon returning I witnessed Mr. Guevara's continued and active involvement. He has proven to be a dedicated and vital member of our congregation. Mr. Guevara is a devoted husband to Mrs ████ and a loving father to their children: ████████████

In addition to his role in the church, Mr. Guevara is a respected figure in our community. As a well-known news reporter in the Latino community through his outlet, MG NEWS, he has selflessly prioritized the needs of others. Over the years, I have seen him serve as both a voice and a helping hand for those in need. He is a responsible, compassionate, and dependable individual who consistently demonstrates support, trustworthiness, and integrity.

Mr. Guevara has also shown great respect for the law, consistently supporting and abiding by it throughout his time in our community. He leads by example, encouraging others to do the same through his actions, both in his personal life and professional work. His integrity and commitment to lawful conduct reflect the values he upholds, and he continually works to build a stronger, more united community rooted in mutual respect and civic responsibility.

Mr. Guevara is a kind, dedicated, and hard-working individual with a deep passion for serving others. He consistently exemplifies compassion in both word and action, and his commitment to uplifting those around him is truly inspiring. Given the opportunity, I have no doubt that he will continue to achieve great things for our community and for this country.

If you have any questions or concerns about this matter, please feel free to contact me at the address above.

June 18th 25



Sincerely,

254

June 18, 2025

To whom it may concern,

I, ▮▮▮▮▮▮▮▮▮▮▮ certify that the following information in this letter is true and accurate to my knowledge. I am a close and childhood friend of ▮▮▮ Mario Alexander Guevara's son and I have known him for about 15 years. I am a resident of flowery branch GA and I am a citizen of the United States.

For as long as I can remember, Mario has Served and helped not only his family and friends, but many people in the community that needed help. Mario has been one of my role models, showing me the importance of family, community, and putting others before yourself. I've seen how he's supported his son ▮▮▮ dreams. Mario could've bought himself a nicer car, went on a luxurious vacation, but instead he invested money on his son's vision of being a music producer by building him a music studio. Unfortunately ▮▮▮ had to have brain surgery and it became difficult for him to continue to peruse that dream. Unable to drive and with his dreams shattered my friend was going through a tough time. Mario, determined to uplift his son's spirits, helped ▮▮▮ Chanel that fire into a new challenge. Driving ▮▮▮ wherever he needed to go, helping monetarily, and teaching his son new skills, I saw my friend ▮▮▮ not only come back but come back even stronger. There are many factors that played a part in this but undoubtedly, Mario was crucial in the recovery of my friend. Mario isn't just another member of society, but one determined to help the ones around him.

I am asking that you please allow Mario to remain in the United States.

If you have any questions or concerns about this matter, please feel free to contact me.

Thank you.



State of GEORGIA
County of HALL

Subscribed and sworn to (or affirmed) before me on this 18th day of June, 2025, by ▮▮▮▮▮▮▮ ▮▮▮▮▮ who is personally known to me

Notary Public Signature

My commission expires: 12/4/26

June 18, 2025

To whom it may concern,

I, ███████ certify that the information contained in this letter is true and accurate to the best of my knowledge. I am a close friend and brother in the faith of Mario Alexander Guevara, and I have known him for approximately nine (9) years. I am a resident of ███████ ███████, and I am a United States citizen.

During these years, I have had the opportunity to work alongside Mario in our church, serving the community and helping those in need. I have witnessed his commitment, integrity, and genuine desire to do good. Mario is a kind, hardworking, respectful person with a heart willing to serve.

I firmly believe that, if given the opportunity, Mario can continue to be a valuable asset to his family, his church, and this nation.

Through this letter, I respectfully ask that Mario be allowed to remain in the United States and be given the opportunity to continue his process with dignity, hope, and faith.

If you have any questions or concerns regarding this matter, please feel free to contact me.

Thank you for your time and consideration.

Sincerely,

███████

State of Georgia
County of Gwinnett

Subscribed and sworn to (or affirmed) before me on this 18 day of June, 2025, by ███████ who is personally known to me or has presented Drivers license as identification.

Notary Public Signature

June 18, 2025

To Whom It May Concern,

████████████ certifies the following in the letter is true and accurate to my knowledge.

I am a friend of Mario Alexander Guevara and I have known him for about 5 years.

I am a resident of ████████████████████████ I am a Citizen of the United States.

I know Mario as a hard working person who helps the community at large, he is a great father and husband who works hard every day to give his family the best.

He attends every church's service and has been a Sunday School Teacher for Teenagers.

I am asking you to please allow Mario to remain in the United States, he is a good Citizen and if given the opportunity can do great things in this country.

If you have any questions or concerns regarding this matter, please do not hesitate to contact me.

Thank you,

████████████████████████

State of Georgia
Hall County

EOIR – 269 of 349

June 18, 2025

To whom it may concern,

I, ▮▮▮▮▮▮▮ certify that the following information is true and accurate. I am a US Citizen residing at ▮▮▮▮▮▮▮▮▮▮▮▮ Phone ▮▮▮▮▮

I am writing this affidavit to attest of character of Mario Alexander Guevara, who I have known for 7 years through our church congregation.

We have bonded with his family over our youth and Sunday school activities and celebrated the milestones his children have accomplished these past years.

I testify to his good moral character as a father, husband and member of our community. He has been a key piece to helping many families in need during health emergencies by using his media platforms.

To me, he has been a very hardworking, kind, disciplined human who follows the law and was able to successfully support his family.

Please consider extending him an opportunity to stay in this country and continue to contribute to his local community.

Sincerely,



State of GA
County of Hall

Subscribed and sworn to before me on this 18 day of June, 2025, by ▮▮▮▮▮▮▮ who is personally known to me or has produced GA ID as identification.

Notary Public Signature         RUSANNY DURAN
                                NOTARY PUBLIC
                                GWINNETT COUNTY, GEORGIA
                                MY COMMISSION EXPIRES

My commission expires: 06/11/2029

June 18. 2025

To whom it may concern,

     I, ███████████████ certify that the following information in this letter is true and accurate to my knowledge. I have known Mario A.Guevara for around 10 years and we attend the same church. I am a resident of Duluth GA, and I am a Permanent Resident United States.

     Mario is a generous and hard-working person, who if given the opportunity will do great things in this country.

     I am asking that you please allow Mario to remain in the United States.

     If you have any questions or concerns about this matter, please feel free to contact me.

Thank you,

████████████████████████

Subscribed and sworn to (or affirmed) before me on this 18 day of ____, 2025, by ████ who is personally known to me.

Notary Public Signature

JESUSITA S MEJIA
NOTARY
EXPIRES
GEORGIA
DECEMBER 4 2026
PUBLIC
HALL COUNTY

My Commission expires: _____

EOIR — 299 of 349

To whom it may concern,

I,                              A citizen of the United States, CEO and owner at Pupuseria Mi Pulgarcito Asure that the following detail are true to the best of my knowledge. I have known Mario Alexander Guvara and a family friend for the past 8 years. He has been a friend that has become more than that. He is a mentor for our business, family and recent to show me how to be a professional photographer. He is a inspiration to me, family, business, customers and staff at the restaurant.

I met Mario through my wife when she would help when he would post that somebody needed help in our community(food,eviction,ext). He is a voice to a lot of people in need, he doesn't discriminate, through his job as a reporter he speak and communicate to everybody. That being through any law enforcement agency that asked him to forward any news to the community and vice vs from the community to law enforcement. He always works side by side with different agency and always shows great respect to all our officer and services member in our different cities of the state of Georgia. Loosing Mario in our community is a great lost for everybody from our citizen to our law enforcement agency.

Mario has family, friends, business and law enforcement agency that need him. In all he is not a threat and never demonstrated any threat. I                           nd my family ask that you grant him permission to stay with his family, friends that he has maid over the long period of time in the USA, business he supports, church, law enforcement he supports to communicate to the community's. Mario keeps us united with our community, language barrier and let us know that the police are her to protect and serve. His family depend on Mario for daily activities. His absence will be a great impact for the future of his wife and children.

EOIR – 260 of 349

June 18, 2025
To whom it may concern,

I, ███████████████ certify that the following information in this letter is true andaccurate to my knowledge.

I am a friend of Mario Alexander Guevara, and I have known him for about 14 years. I am a resident of ████████████████████████ and I am a permanent resident of the United States.

Together, we serve in our church's compassion ministry where we find people who are going through hardships and lend them help. He has shown to be someone who has great compassion towards others.

Mario is a kind and hard-working person who if given the opportunity can do great things in this country.

I am asking that you please allow Mario to remain in the United States.
If you have any questions or concerns about this matter, please feel free to contact me.

Thank you,



State of Georgia
County of Hall

EOIR – 262 of 349

To whom it may concern,

I, [REDACTED] A resident of the United States, CEO and owner at Pupuseria Mi Pulgarcito #1 have known Mario Alexander Guevara for a few years. He and his wife have been good friend and Mario has been a great support to our family business. He has always motivated us to not give up even when it got hard for us, Keeps us positive. When he walks in his way of being is noticed he is always happy joking and smiling. Through his job as a journalist, he has impacted many lives. His impact in the community helping people out when their going through a hard time that's being a single mother, elderly that has no support or victims of crimes he is always speaking for them through his channel and supporting the best way he can. Mario is not a threat to this country. If anybody loves this country and the American dream is Mario. Mario is a loving father, husband, church member and a figure to our community. His absent doesn't just hurt his family directly(wife,son,daughter). It impacts the whole community that follow him to get the news and resources that they get through his job as a reporter when things get hard of where to go for help. I ask that the courts/legal system we have come to trust on our journey to this great country and vison of the American dream grant Mario permission to stay in this United States of America with his friend, family and continue doing what he loves for work being a reporter, father, friend and the support/voice he has become to our community. With the year he has been in The USA he is part of our country and deserves to stay and live with us in this country.



EOIR – 285 of 349

June 19, 2025

To Whom It May Concern;

I, ████████████████, certify that the following information in this letter is true and accurate. I am a resident of Gainesville GA and I am a citizen of the United States.

I have known Mario Guevara for about 10 years since he is an important news reporter in our community.

Mario I attend to the same church, he is a good husband, father and friend, also Mario helps our community in every way possible.

I am asking that you please allow Mario to remain in this country.

If you have any questions or concerns about this matter, please free to contact me at ████████

Thank you

████████████████████████████████████

State of Georgia
County of Hall

Subscribed and sworn to (or affirmed) before me on this 19 day of
_____ 2025 by ████████████████ who is personally known to me.

Notary Public signature _____

My commission expires: _____

JESUSITA S MEJIA
NOTARY
EXPIRES
GEORGIA
PUBLIC
HALL COUNTY



June 18, 2025

Re: Mario Guevara

**To Whom It May Concern:**

My full name is ⬛⬛⬛⬛ and I am a U.S Citizen. I am writing this letter to express my sincere support for Mr. Mario Guevara, whom I have had the pleasure of knowing personally for the past nineteen (19) years. Over this time, I have come to know Mario not only as a close friend but also as a highly respected professional and a devoted father.

Mario has consistently demonstrated a strong work ethic, professionalism, and a deep sense of responsibility in everything he does. In his professional capacity, I have witnessed his dedication and integrity firsthand. Through his work, particularly in journalism and reporting, he has made meaningful contributions to our community by keeping the public informed and engaged. His commitment to the truth and to ethical reporting has earned him the respect of his peers and the trust of his audience.

Beyond his professional achievements, Mario is an exceptional father and role model. He has always strived to provide the best for his family, working hard to ensure his children grow up with strong values, a solid education, and a clear example of perseverance and dedication. It is evident to all who know him that his family is his top priority, and he has gone above and beyond to be a positive influence in their lives.

Mario Guevara is the kind of person any community would be proud to have—hardworking, respectful, responsible, and committed to the well-being of others. I wholeheartedly support his continued presence in this country and believe that he has exemplified what it means to live here with purpose, dignity, and integrity.

Please do not hesitate to contact me if further information is needed.

Sincerely,

June 19, 2025

To whom it may concern,

I, ███████████████, certify that the following information in this letter is true and accurate to my knowledge. I am a dear friend of Mario Alexander Guevara, and I have known him for about 10 years. I am a resident of Lawrenceville, Georgia and I am a permanent resident of the United States.

Mario is a kind and hard-working person who has done great things in his community as a journalist. His commitment to presenting unbiased facts makes him an invaluable resource for the community. If given the opportunity he can continue to do great things in his community as this country.

I am asking that you please allow Mario to remain in the United States.

If you have any questions or concerns about this matter, please feel free to contact me.

Thank you,

State of Georgia
County of Gwinnett

Subscribed and sworn to (or affirmed) before me on this 19th day of June, 2025, by ███████████████ [Name of Affiant], who is personally known to me or has produced GA Drivers License [Type of Identification] as identification.

Signature *Inna Tunchik*

Seal

My commission expires: 3/28/26

June 18, 2025

To whom it may concern,

I, ████████████ certify that the following information is true and accurate. I am a US Citizen residing at ████████████████ ████████ Phone ████████

I am writing this affidavit in support of Mario Alexander Guevara, who I have known for 7 years through our church congregation and occasional soccer activities.

I testify to his respectful moral character as a father and member of our community. He has always strived to land a helping hand when needed through his career as a reporter and he has been key piece to help many families in need during health emergencies.

To me, he has been a very hardworking, kind, disciplined human who follows the law and was able to successfully support his family.

Please consider extending him an opportunity to stay in this amazing country and continue to contribute to his local community.

Sincerely,

████████████████████

State of GA
County of Hall

Subscribed and sworn to before me on this 18 day of June , 2025, by ████████████ who is personally known to me or has produced GA ID as identification.

Notary Public Signature

ROSANNY ██████
NOTARY ██████
GWINNETT COUNTY, GEORGIA
MY COMM. EXPIRES

My commission expires: 06|11|2029

EOIR — 269 of 349

June 18, 2025

To whom it may concern,

I, ████████████████████ certify that the following information in this letter is true and accurate to my knowledge.

I am a friend of Mario Alexander Guevara, and I have known him for about 14 years. I am a resident of ██████████████████████████████ and I am a citizen of the United States.

I came to know Mario when his family began attending our church about 14 years ago. I became close friends with his daughter, ████████████ I have seen him be an amazing father to his children and a loving husband to his wife. He has not only been a blessing to his own family, but to numerous others including my own. He genuinely cares about others and is a mentor to follow. When his daughter and I were younger, he would give us advice on continuing our education and never giving up on our dreams. He celebrated when both ████████ and I graduated college.

He is a genuinely caring person, and is deeply invested in the successes of others. I am asking that you please allow Mario to remain in the United States. If you have any questions or concerns about this matter, please feel free to contact me. Thank you.



State of Georgia
County of Hall



June 18, 2025

Re: Mario Guevara

To Whom It May Concern:

To Whom It May Concern:

I'm ████████████ a US Citizen, and I am writing to support Mr. Mario Guevara, whom I have had the pleasure of knowing for over fifteen (21) years. I was first introduced to Mario through my husband, and over the years, I have come to know him both personally and professionally.

Mario is an exceptional individual, kind, respectful, and deeply committed to his family and community. He is the moral and financial backbone of his household, and his wife and children depend on him in every way. As a close friend to the family, I have witnessed his unwavering support, dedication, and the positive influence he has in their lives.

Professionally, Mario has consistently demonstrated integrity and responsibility. Through his work and various platforms, he has helped countless people in the community, sometimes in significant ways and sometimes through simple yet meaningful acts of kindness, such as lending a hand to someone in need without hesitation. His willingness to serve others reflects the genuinely compassionate and generous person that he is.

Mario Guevara is not only an asset to his family but also to the community at large. I wholeheartedly support him and respectfully ask that you consider the immense value he brings to those around him.

If you require any additional information, please do not hesitate to contact me.

Sincerely,

June 18, 2025

Re: Mario Guevara

To Whom It May Concern:

To Whom It May Concern:

I'm ███████████ a US Citizen, and I am writing to support Mr. Mario Guevara, whom I have had the pleasure of knowing for over fifteen (21) years. I am a journalist myself and have collaborated on numerous assignments over the years. Our families have also shared several family activities.

Mario is an exceptional individual—kind, respectful, and deeply committed to his family and community. He is the moral and financial backbone of his household, and his wife and children depend on him in every way. As a close friend to the family, I have witnessed his unwavering support, dedication, and the positive influence he has in their lives.

Professionally, Mario has consistently demonstrated integrity and responsibility. Through his work and various platforms, he has helped countless people in the community, sometimes in significant ways and sometimes through simple yet meaningful acts of kindness, such as lending a hand to someone in need without hesitation. His willingness to serve others reflects the genuinely compassionate and generous person that he is.

Mario Guevara is not only an asset to his family but also to the community at large. I wholeheartedly support him and respectfully ask that you consider the immense value he brings to those around him.

If you require any additional information, please do not hesitate to contact me.

Sincerely,

June 19, 2025

To whom it may concern,

I, ███████████ certify that the following information in this letter is true and accurate to my knowledge.

I am a friend of Mario Alexander Guevara, and I have known him for about 15 year.

I am a resident of Buford, GA and I am a citizen of the United States.
Mario is a pillar of our community and has helped countless people in need who if given the opportunity can continue do great things in this country.

I am asking that you please allow Mario to remain in the United States.
If you have any questions or concerns about this matter, please feel free to contact me.

Thank you,



State of Georgia
County of Gwinnett

[Notary seal: JUANITA S. MEJIA NOTARY EXPIRES GEORGIA DECEMBER 4, 2026 PUBLIC HALL COUNTY]

June 18, 2025

To Whom It May Concern,

I, ▮▮▮▮▮▮▮ certify that the following information in this letter is true and accurate to my knowledge. I know Mario Alexander Guevara through our relationship with our sister church in Flowery Branch, GA, and I have known him for several years. I am a resident of ▮▮▮▮▮▮▮▮▮▮▮ and I am a citizen of the United States.

Mario is a kind and hard-working person who if given the opportunity can do great things in this country. He has been a role model not only in the church community but also in the community in which he resides.

I respectfully request Mario be allowed to remain in the United States. He has working permits to work in this country and is already in the process of obtaining his residency.

If you have any questions or concerns about this matter, please feel free to contact me.

Thank you,

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

State of Georgia
County of Muscogee

Subscribed and sworn to (or affirmed) before me on this 18 day of June, 2025, by ▮▮▮▮▮▮▮ who is personally known to me.

Notary Public Signature

JASHAVECK M LORENZO
MY COMMISSION EXPIRES
APRIL
03
2026
MUSCOGEE COUNTY, GA
NOTARY PUBLIC

My commission expires: April 03, 2026

June 18, 2025

To whom it may concern,

I, ▮▮▮▮▮▮▮▮▮▮ certify that the following information in this letter is true and accurate to my knowledge. I was Mario Guevara's English Teacher when he was small. I have known him for about 38 years. I am a citizen of the United States.

Mario is a generous and hard working person, who if given the opportunity will do great things in this country. Mario is a God fearing man.

I am asking that you please allow Mario to remain in the United States.

If you have any questions or concerns about this matter, please feel free to contact me.

Thank you,

▮▮▮▮▮▮▮▮▮▮

State of Georgia
County of Hall

Subscribed and sworn to (or affirmed) before me on this _18_ day of ___June___ ,2025, by ▮▮▮▮▮▮▮▮ who is personally known to me.

Notary Public Signature

12/4/26
My commission expires:

EOIR — 289 of 349

June 18, 2025

To whom it may concern,

    I, ▮▮▮▮▮▮▮▮▮ certify that the following information in this letter is true and accurate to my knowledge. I was Mario Guevara's Bible Study Teacher when he was small. I have known him for about 38 years. I am a citizen of the United States.

    Mario is a generous and hard working person, who if given the opportunity will do great things in this country. Mario is a God fearing man.

    I am asking that you please allow Mario to remain in the United States.

    If you have any questions or concerns about this matter, please feel free to contact me.

Thank you,



State of Georgia
County of Hall

Subscribed and sworn to (or affirmed) before me on this 18 day of June ,2025, by ▮▮▮▮▮▮▮▮ who is personally known to me.

Notary Public Signature

My commission expires: 12 | 4 | 26

June 19, 2025

**To whom it may concern,**

I, █████████ certify that the following information in this letter is true and accurate to the best of my knowledge. I am a friend and fellow church member of Mario Alexander Guevara, and I have known him for approximately one year. I am a resident of ██████████ ████████████████ and I am a Citizen of the United States.

Mario is a kind, respectful, and deeply compassionate individual. As a journalist, he has shown great courage and integrity in serving the community, especially among Latino immigrants. Outside of his profession, I have witnessed his sincere desire to help others, always ready to lend a hand, offer support, and contribute positively wherever he is needed.

He is a loving father, a loyal friend, and a faithful member of our church community. His character, commitment, and service to others reflect the values this country stands for. I strongly believe that if given the opportunity to stay in the United States, Mario will continue to be an asset not only to his family but to the broader community as well.

I respectfully ask that you allow Mario to remain in the United States, where he can continue to build a future, support his U.S. citizen son, and live in peace with dignity and purpose.

If you have any questions or need further information, please feel free to contact me.

Sincerely

█████████████████████



# Virginia Defenders for Freedom, Justice & Equality

PO Box ████████████████████████████████████████

Web: DefendersFJE.blogspot.com  ·  VirginiaDefender.org  ·  www.sacredgroundproject.net

To whom it may concern:

The Virginia Defenders for Freedom, Justice and Equality appeal for the immediate release from ICE detention of our fellow journalist and community advocate, Mario Guevara. He is a close family friend of one of our members and we attest to him being a kind and loving person who is dedicated to his community.

On Saturday, June 14th, Mario was arrested by the Dekalb County Sheriff's office while reporting from a "No Kings" protest in Atlanta and was detained on the bogus charges of unlawful assembly and obstruction of officers. He was wearing a press vest and identified himself to police as a journalist.

Mario has long dedicated himself to reporting on the abuses faced by members of his community in Georgia and has advocated for migrant communities across the United States.

His detention is an intimidation tactic being used to force the press into silence. We will not be intimidated and we demand that Mario's civil rights are protected and that the first Amendment's freedom of the press be adhered to.

Mario is a father and husband and should be at home with family. We call on members of the press to stand in solidarity with a fellow reporter and call for Mario Guevara's immediate release.

Sincerely,
The Virginia Defenders for Freedom, Justice and Equality

*With the endorsement of:*
Free Them All Virginia
Justice Forward Virginia
The Richmond Democratic Socialists of America
Virginia Student Power Network
The Virginia Muslim Civic League
The Virginia Coalition for Human Rights
Richmond Local of the International Brotherhood of Electrical Workers members: ████████

EOIR – 323c6f3642

EOIR — 334c6f3642



June 23, 2025

Re: Mario Guevara

**To Whom It May Concern:**

I am writing this letter to express my wholehearted support for Mr. Mario Guevara. I have had the privilege of knowing Mario and his family for more than fifteen (15) years, during which I have witnessed the strength of his character, values, and unwavering dedication to his loved ones.

Mario is a devoted husband and father who consistently puts the well-being of his family above all else. He is a pillar in their lives—present, hardworking, and deeply caring. Over the years, we have shared numerous family moments, and through them, I've seen the genuine kindness, humility, and reliability that define Mario's personality.

Beyond his role within his family, Mario is also an active and respected member of his church. His involvement in faith-based activities reflects his strong moral compass and commitment to positive community engagement.

In his professional life, Mario has always demonstrated responsibility, diligence, and integrity. He takes pride in his work and approaches every task with seriousness and a strong work ethic.

Mario is not only a dear friend but a person whose presence enriches our community. I truly hope he is given the chance to remain with his family and continue being a source of strength and stability, both at home and in society.

Please do not hesitate to contact me if you need any additional information or clarification.

Sincerely,



# Exhibit 8



Gwinnett County Sheriff giving Mario an award of recognition for his work in the community on December 21, 2024.

EOIR — 186c6f3642



Ride along with Officer ███ from Gwinnett PD on November 27, 2024, to document traffic stops, specifically looking out for speeders and drunk drivers since Thanksgiving was the following day.

EOIR — 167c6f3642





At the Texas/Mexico border, with a Texas Sheriff, advising the community to not cross on that side of the border because "they will die" due to the wildlife in that area. October 22,2024.

EOIR — 108o6f3642



Ride along with Gwinnett PD

EOIR — 1900063642



Working with the Norcross and Gwinnett Police Departments at an
event to give out school supplies to families in need for school on
August 1, 2022.

EOIR — 2016f3842



Ride along with Norcross PD on May 5, 2022, first time after the pandemic.

EOIR — 312c6f3642



Working with the Gwinnett County Sheriff's Office; Giving out food
to families in need for Thanksgiving on November 22, 2021.

EOIR — 223o6f3642



Ride along with Sandy Springs Police a couple of years ago.

EOIR — 334c6f3642



Working with Gwinnett PD; covering them giving out backpacks to
families in need on July 27, 2021.



Covering a Blue Lives Matter event held by Gwinnett PD for the
Hispanic community on September 11, 2019.

EOIR — 35c06f3642



In Nogales, Arizona at the Arizona/Mexico border with border patrol officers documenting on the dangers that immigrants face while crossing the border without papers.

EOIR — 267c6f3642



Mario was invited as a speaker to represent the Hispanic
community at the Gwinnett PD's 200-year anniversary celebration
on November 10, 2018

EOIR — 2780c6f3842



In North Carolina, getting ready to cover on the hurricane that was
expected with Wrightsville Beach Police on September 13, 2018.

EOIR — 2890of3842



Discussing the implications of law HB1105 with Lilburn PD to educate the Hispanic community on July 2, 2024.

EOIR — 390c6f3642



With Lilburn PD discussing the upcoming laws in GA and making
recommendations to the community to stay safe during the
Christmas and New Year holidays

EOIR — 3D1o6f3642

# Exhibit 9

**U.S. Department of Justice**
Executive Office for Immigration Review
*Board of Immigration Appeals*

OMB# 1125-0002

**Notice of Appeal from a Decision of an Immigration Judge**

# GENERAL INSTRUCTIONS
## (Please read carefully before completing and filing Form EOIR-26)

## A. When to Appeal:

- Use this form (Form EOIR-**26**) only to appeal a decision by an **Immigration Judge**. If you wish to appeal a decision of the U.S. Citizenship and Immigration Services (USCIS), you must use a different form (Form EOIR-**29**).

- Do not use this form (Form EOIR-26) to appeal the following Immigration Judge determinations:

  | | |
  |---|---|
  | Reasonable fear | 8 C.F.R. § 1208.31(g)(1) |
  | Credible fear | 8 C.F.R. § 1208.30(g)(2)(iv)(A) |
  | Claimed status review | 8 C.F.R. § 1235.3(b)(5)(iv) |

  The Board does not have the authority to review such determinations. For additional information regarding the Board's review authority, please see the Board of Immigration Appeals Practice Manual, which is available on the EOIR website at www.justice.gov/eoir.

- You must send the Notice of Appeal so that it is **received** by the Board within thirty (30) calendar days after the Immigration Judge's oral decision, or within thirty (30) calendar days after the date the Immigration Judge's written decision was mailed (if no oral decision was rendered).

- Simply mailing your Notice of Appeal in thirty (30) days or less is not enough. Your Notice of Appeal must **arrive** at the Board in thirty (30) days or less. If your Notice of Appeal arrives late, your appeal will be dismissed.

## B. Where to Appeal:

| *Mail or deliver in person to this address:* | Board of Immigration Appeals Clerk's Office |
|---|---|
| | ▮▮▮▮▮▮▮▮▮▮▮ |

## C. How to Appeal:

- Read all of these instructions. **Note:** If you are the person in proceedings, you are the "Respondent" or Applicant." You are also the "Appellant" if you are filing an appeal of a decision by an Immigration Judge.

- Fill out all three pages of the Notice of Appeal completely, answering items # 1 - 12 **in English only**.

- List in item # 1 the name(s) and Alien Number(s) ("A" numbers) of **all** Respondents/Applicants who are appealing the decision of the Immigration Judge.

- Sign item # 9.

- List the mailing address of the Respondent(s)/Applicant(s) in item # 10.

- Translate all documents that you attach to the Notice of Appeal into English. All translations must include the translator's statement stating that the translator is competent and that the translation is true and accurate.

- Write your name(s) and "A" Number(s) on all documents attached to the Notice of Appeal.

- Mail or give a copy of the completed Notice of Appeal and any attached documents to the opposing party. Complete

Form EOIR-26
Revised Sept. 2019

and sign the "Proof of Service" to show you did this (item # 12). **Note:** If you are the Respondent or Applicant, the "Opposing Party" is the Assistant Chief Counsel of the U.S. Immigration and Customs Enforcement (ICE) of the Department of Homeland Security (DHS).

- Your appeal may be rejected or dismissed if you fail to properly complete the "Proof of Service" (item # 12).

## D. Paying for the Appeal:

Attach a check or money order to the Notice of Appeal for exactly one hundred and ten dollars (U.S. $110) made payable to "United States Department of Justice." All checks or money orders must be drawn on a bank located in the United States and must be payable in U.S. currency. If there are not sufficient funds in your account, your appeal may be dismissed.

- Write the name(s) and "A" Number(s) of all Respondent(s)/Applicant(s) on the check or money order.

- Notice to Those Making Payment by Check. If you send us a check, the Board will convert it into an electronic funds transfer (EFT). This means we will copy your check and use the account information on it to electronically debit your account for the amount of the check. The debit from your account usually occurs within 24 hours of the deposit and your bank will show it on your regular account statement. You will not receive your original check back. We will destroy your original check, but will keep a copy of it. If the Board cannot process the EFT for technical reasons, you authorize us to process the copy in place of your original check. If you check is returned as unpayable, the appeal will be dismissed as improperly filed. If you cannot pay for the appeal, complete a Fee Waiver Request (Form EOIR-26A) and attach it to the Notice of Appeal. The Board will review your request and decide whether to allow the appeal without payment of the fee.

- Your appeal may be rejected or dismissed if you fail to submit a fee or a properly completed Fee Waiver Request (Form EOIR-26A).

## E. Lawyer or Representative Allowed:

- You may be represented by an attorney or representative who is authorized to appear before the EOIR. If you are represented by an attorney or authorized representative, he or she **must** file, **with** the Notice of Appeal, a Notice of Entry of Appearance as Attorney or Representative Before the Board of Immigration Appeals (Form EOIR-27).

## F. Specify Reasons for the Appeal:

- Give specific details why you disagree with the Immigration Judge's decision.

- Most appeals are reviewed by a single Board Member. If you assert that your appeal warrants review by a three-Board Member panel, you may identify the specific factual or legal basis for your contention.

  Cases will be reviewed by a three-member panel only if the case presents one of these circumstances:
  - The need to settle inconsistencies among the rulings of different Immigration Judges;
  - The need to establish a precedent construing the meaning of laws, regulations, or procedures;
  - The need to review a decision by an Immigration Judge that is not in conformity with the law or with applicable precedents;
  - The need to resolve a case or controversy of major national import;
  - The need to review a clearly erroneous factual determination by an Immigration Judge; or
  - The need to reverse the decision of an Immigration Judge other than a reversal under 8 C.F.R. § 1003.1(e)(5) (i.e., permitting a single Board Member to reverse a decision that has been affected by changes in statutes, regulations or caselaw.)

- Specify the finding(s) of fact, the conclusion(s) of law, or both, that you are challenging. If a question of law is presented, cite supporting legal authority. If the dispute is over the findings of fact, identify the specific facts you are challenging.

Form EOIR-26
Revised Sept. 2019

EOIR – 2 of 8

- Where the appeal concerns discretionary relief, state whether the alleged error relates to statutory grounds of eligibility or to the exercise of discretion. Identify the specific factual and legal findings you are challenging.

- If you do not give specific reasons, with details, in item # 6, or in attachments to your Notice of Appeal, the Board may dismiss your appeal on that basis alone.

## G. Briefs:

- Indicate in item # 8 whether you intend to file an additional written brief or statement at a later date. The Board will send you a briefing schedule and, when appropriate, a transcript of the testimony.

- Even if you intend to file an additional brief or statement at a later date, you still must give detailed reasons for your appeal on the Notice of Appeal in item # 6 and attachments.

## H. Oral Argument:

- If you ask for oral argument in item # 7, the Board will notify you if your request is granted.

- Even if you ask for oral argument, you still must give detailed reasons for your appeal on the Notice of Appeal in item # 6 and attachments.

- The Board ordinarily will not grant a request for oral argument unless you also file a brief.

- If you request oral argument, you should also state in item # 6 why you believe your case warrants review by a three-member panel.

## I. Change of Address:

- If you move after sending your Notice of Appeal to the Board, you must give your new address **to the Board** within five (5) working days after you move. Use an alien's Change of Address Form (Form EOIR-33/BIA).

- Attorneys or representatives must also let the Board know if they change addresses or phone numbers, using Form EOIR-27. An attorney's or representative's change of address notification is only effective for the case in which it is submitted.

## J. Further Information:

- For further guidance please see the Board of Immigration Appeals *Practice Manual,* which is available on the EOIR website at www.justice.gov/eoir.

## K. Paperwork Reduction Act:

- Under the Paperwork Reduction Act, a person is not required to respond to a collection of information unless it displays a valid OMB control number. We try to create forms and instructions that are accurate, can be easily understood, and which impose the least possible burden on you to provide us with information. The estimated average time to complete this form is thirty (30) minutes. If you have comments regarding the accuracy of this estimate, or suggestions for making this form simpler, you can write to the Executive Office for Immigration Review, Office of the General Counsel, 5107 Leesburg Pike, Suite 2600, Falls Church, Virginia 22041.

EOIR – 3 of 8

Form EOIR-26
Revised Sept. 2019

### L. Privacy Act Notice:

- The information on this form is authorized by 8 C.F.R. §§ 1003.3, 1003.38 in order to appeal a decision of an Immigration Judge to the Board of Immigration Appeals. The information you provide is required to appeal the decision and failure to provide the requested information may result in denial of your request. EOIR may share this information with others in accordance with approved routine uses described in EOIR systems of records notice (SORN) Department of Justice/EOIR-001, Records and Management Information System, 69 FR 26178 (May 11, 2004) and 82 FR 24147 (May 25, 2017).

- If paying by check, EOIR is authorized by 5 U.S.C. § 552a(e)(3) to solicit and collect the information from your check, and to share this information with others in accordance with the approved routine uses described in system of records notice (SORN) Treasury/FMS.017, Collections Record-Treasury/Financial Management Services, 70 FR 34522;34532-33 (June 14, 2005)

---

### Departure From the United States:

If you leave the United States after an Immigration Judge's decision in removal or deportation proceedings, but before you appeal the decision to the Board, you may have waived your right to appeal. If you leave the United States after filing an appeal with the Board, but before the Board decides your appeal, your appeal may be withdrawn and the Immigration Judge's decision put into effect as if you had never filed an appeal.

---

### Summary Dismissal of Appeal:

The Board may summarily dismiss any appeal or portion of any appeal in which: (1) The appellant fails to specify the reasons for the appeal (see Part F); (2) The only reason specified by the appellant for his/her appeal involves a finding of fact or conclusion of law that was conceded by him/her at a prior proceeding; (3) The appeal is from an order that granted the appellant the relief that had been requested; (4) The appeal is filed for an improper purpose, such as unnecessary delay, or lacks an arguable basis in fact or law, unless the Board determines that it is supported by a good faith argument for extension, modification, or reversal of existing law; (5) The appellant indicates on Form EOIR-26 that he/she will file a separate brief or statement in support of the appeal and, thereafter, does not file such brief or statement, or reasonably explain his/her failure to do so, within the time set for filing (see Part G); (6) The appeal does not fall within the Board's jurisdiction or jurisdiction lies with the Immigration Judge rather than the Board; (7) The appeal is untimely or barred by an affirmative waiver of the right to appeal that is clear on the record; or (8) The appeal fails to meet essential statutory or regulatory requirements or is expressly excluded by statute or regulation.

---

### WARNING! You must:

- Sign the Notice of Appeal (item # 9).
- Include the fee or Fee Waiver Request (Form EOIR-26A).
- Complete and sign the Proof of Service.
- Make sure your appeal is **received** at the Board on or before the filing due date.

EOIR – 4 of 8

Form EOIR-26
Revised Sept. 2019

U.S. Department of Justice
Executive Office for Immigration Review
*Board of Immigration Appeals*

OMB# 1125-0002

**Notice of Appeal from a Decision of an
Immigration Judge**

*Staple Check or Money Order Here. Include Name(s) and "A" Number(s) on the face of the check or money order.*

**1.**

List Name(s) and "A" Number(s) of all Respondent(s)/Applicant(s):

Mario Guevara, A█████████.

For Official Use Only

⚠ **WARNING:** Names and "A" Numbers of **everyone** appealing the Immigration Judge's decision must be written in item #1. The names and "A" numbers listed will be the only ones considered to be the subjects of the appeal.

**2.** I am    ☐ the Respondent/Applicant    ☐ DHS-ICE *(Mark only one box.)*

**3.** I am    ☑ DETAINED    ☐ NOT DETAINED *(Mark only one box.)*

**4.** My last hearing was at  Stewart Immigration Court, Lumpkin, GA.                           *(Location, City, State)*

**5.** **What decision are you appealing?**

*Mark only one box below. If you want to appeal more than one decision, you must use more than one Notice of Appeal (Form EOIR-26).*

☐ I am filing an appeal from the Immigration Judge's decision *in merits proceedings* (example: removal, deportation, exclusion, asylum, etc.) dated_____.

☑ I am filing an appeal from the Immigration Judge's decision *in bond proceedings* dated
July 1, 2025_____. (For DHS use only: Did DHS invoke the automatic stay provision before the Immigration Court?  ☐ Yes.  ☑ No.)

☐ I am filing an appeal from the Immigration Judge's decision *denying a motion to reopen or a motion to reconsider* dated_____.

*(Please attach a copy of the Immigration Judge's decision that you are appealing.)*

EOIR – 5 of 8

Form EOIR-26
Revised Sept. 2019

**6.** **State in detail the reason(s) for this appeal. Please refer to the General Instructions at item F for further guidance. You are not limited to the space provided below; use more sheets of paper if necessary. Write your name(s) and "A" number(s) on every sheet.**

Please see attatched.

*(Attach additional sheets if necessary)*

**!** **WARNING:** You must clearly explain the specific facts and law on which you base your appeal of the Immigration Judge's decision. The Board may summarily dismiss your appeal if it cannot tell from this Notice of Appeal, or any statements attached to this Notice of Appeal, why you are appealing.

**7.** Do you desire oral argument before the Board of Immigration Appeals? ☐ Yes ☑ No

**8.** Do you intend to file a separate written brief or statement after filing this Notice of Appeal? ☑ Yes ☐ No

**!** **WARNING:** If you mark "Yes" in item #7, you should also include in your statement above why you believe your case warrants review by a three-member panel. The Board ordinarily will not grant a request for oral argument unless you also file a brief.

If you mark "Yes" in item #8, you will be expected to file a written brief or statement after you receive a briefing schedule from the Board. The Board may summarily dismiss your appeal if you do not file a brief or statement within the time set in the briefing schedule..

**9.**

| Sign Here ➤ | X **CHRIS L MEREDITH** | Digitally signed by CHRIS L MEREDITH Date: 2025.07.03 15:59:50 -04'00' |
|---|---|---|

Signature of Person Appealing
*(or attorney or representative)*

Date

Form EOIR-26
Revised Sept. 2019

EOIR – 6 of 8

**Page 2 of 3**

**10.**

| Mailing Address of Respondent(s)/Applicant(s) |
|---|

Mario Guevara

(Name)

███████████

(Street Address)

(Apartment or Room Number)

███████████

(City, State, Zip Code)

█

(Telephone Number)

**11.**

| Mailing Address of Attorney or Representative for the Respondent(s)/Applicant(s) |
|---|

Giovanni Diaz

(Name)

███████████

(Street Address)

██████

(Suite or Room Number)

███████

(City, State, Zip Code)

(Telephone Number)

**NOTE:** You must notify the Board within five (5) working days if you move to a new address or change your telephone number. You must use the Change of Address Form/Board of Immigration Appeals (Form EOIR-33/BIA).

**NOTE:** If an attorney or representative signs this appeal for you, he or she must file *with this appeal*, a Notice of Entry of Appearance as Attorney or Representative Before the Board of Immigration Appeals (Form EOIR-27).

**12.**

## PROOF OF SERVICE (You Must Complete This)

I  Christopher Meredith                               mailed or delivered a copy of this Notice of Appeal

(Name)

on  July 3, 2025                    to  Mario Guevara

(Date)                                        (Opposing Party)

at  ███████████████

(Number and Street, City, State, Zip Code)

| SIGN HERE ➤ | X CHRIS L MEREDITH | Digitally signed by CHRIS L MEREDITH Date: 2025.07.03 16:00:15 -04'00' |
|---|---|---|

Signature

**NOTE:** If you are the Respondent or Applicant, the "Opposing Party" is the Assistant Chief Counsel of DHS - ICE.

**WARNING:** If you do not complete this section properly, your appeal will be rejected or dismissed.

**WARNING:** If you do not attach the fee or a completed Fee Waiver Request (Form EOIR-26A) to this appeal, your appeal may be rejected or dismissed.

## HAVE YOU?

☐ Read all of the General Instructions
☐ Provided all of the requested information
☐ Completed this form in English
☐ Provided a certified English translation for all non-English attachments
☐ Signed the form

☐ Served a copy of this form and all attachments on the opposing party
☐ Completed and signed the Proof of Service
☐ Attached the required fee or Fee Waiver Request
☐ If represented by attorney or representative, attach a completed and signed EOIR-27

Mario Guevara, A███████████

The Immigration Judge erred by setting at $7,500 bond in this case when the respondent failed to carry his burden of establishing he is not a danger to the community. In bond proceedings, aliens have the burden of establishing that they do not pose a danger to the community, are not a threat to national security, and do not pose a flight risk. Matter of Guerra, 24 I&N Dec. 37, 38 (BIA 2006). When assessing an alien's potential danger, the Immigration Judge should consider the nature and circumstances of the alien's criminal activity, including arrest and convictions, to determine if the alien is a danger to the community. Matter of Siniauskas, 27 I&N Dec. 207, 208 (BIA 2018); Guerra, 24 I&N Dec. at 40 (stating that factors relevant to danger include how extensive, recent, and serious the alien's criminal activity is). Dangerous aliens are properly detained without bond. Matter of Urena, 25 I&N Dec. 140, 141 (BIA 2009).

The respondent's recent and serious arrest history demonstrates he is a danger. Between February and May 2025, the respondent confronted local Georgia law enforcement officers and federal agents on five separate occasions while they worked on undercover narcotics, gang, and human trafficking investigations. Each time, the respondent recorded or live streamed the encounter and compromised operational security and the integrity of those investigations by posting videos of undercover agents, their vehicles, and tag numbers. Local law enforcement reviewed the respondent's public posts and learned that the videos were viewed by hundreds of thousands of people. These incidents resulted in arrest warrants being issued for reckless driving, unlawful use of a telecommunication device, and failure to obey signs or controls, which remain pending.

Additionally, the respondent attended a large-scale protest that included the occupation of public roads where the respondent defied orders by law enforcement to move to the sidewalk and out of traffic. The respondent disregarded these orders so that he could live stream the events to his social media. This incident resulted in arrest warrants being issued for unlawful assembly, obstruction of a law enforcement officer, and pedestrian on a roadway.

Finally, the respondent testified that he unlawfully possesses a firearm at his home. This is of particular concern when considered in light of his recent and repeated practice of confronting law enforcement officers during ongoing investigations

# Exhibit 10

Ryan Matsuno                                                    DETAINED
Chief Counsel
Emily C. Reece
Deputy Chief Counsel
Christopher Meredith
Assistant Chief Counsel
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
BOARD OF IMMIGRATION APPEALS
FALLS CHURCH, VIRGINIA

| | |
|---|---|
| In the Matter of: ) | |
| ) | |
| Mario A. Guevara ) | File No.: A |
| ) | |
| Respondent ) | |
| ) | |
| In Bond Proceedings ) | |

U.S. DEPARTMENT OF HOMELAND SECURITY'S
EMERGENCY MOTION FOR DISCRETIONARY STAY

Pursuant to 8 C.F.R. § 1003.19(i)(1), the U.S. Department of Homeland Security (DHS) moves the Board of Immigration Appeals (Board) to issue, on an emergency basis, a discretionary stay of the decision of the Immigration Judge issued on July 1, 2025, granting the respondent's release on $7,500 bond. A Notice of Appeal (EOIR-26) has been filed in conjunction with the instant motion.

## PROCEDURAL HISTORY

The respondent is a native and citizen of El Salvador who last entered the United States as a B1 visitor on or about March 29, 2004, to depart by June 28, 2004. The respondent failed to depart and was placed into removal proceedings with the issuance of a Notice to Appear issued on or about June 23, 2008. ███████████████████████

███████████████████████████████████████████

███████████████████ The BIA granted a joint motion to administratively close the removal proceedings on or about December 17, 2012.

The respondent came into ICE custody on or about June 18, 2025, subsequent to a criminal arrest by the Doraville, Georgia, Police Department on or about June 14, 2025. The respondent was charged with willful obstruction of a law enforcement officer and unlawful assembly. Exh. 2 at 205-213. These charges were subsequently dismissed for lack of sufficient evidence by the DeKalb County, Georgia, Solicitor-General on or about June 25, 2025. *Id.* at 202.

On or about June 17, 2025, the Magistrate Court of Gwinnett County, Georgia, issued criminal arrest warrants for the respondent for reckless driving and unlawful use of a telecommunication device alleged to have occurred on May 20, 2025, and failure to obey signs or

control devices alleged to have occurred on May 13, 2025. Exh. 4 at 4-6. These charges remain pending. The Gwinnett County Sheriff's Office report for these charges indicates that the respondent compromised the operational security of undercover officers conducting narcotics and human trafficking investigations on five occasions in 2025. *Id.* at 8-12. The report notes that the respondent livestreamed both uniformed and plain clothes officers engaged in surveillance and took videos of the license plates as well as the makes and models of undercover police vehicles. *Id.* In one livestreamed broadcast, the respondent filmed himself following what he believed to be federal agents in his vehicle. *Id.* The livestream showed the respondent driving through a red light to continue pursuing the individuals he believed to be federal agents. *Id.*

On June 20, 2025, the respondent filed a motion for custody redetermination. On July 1, 2025, the Immigration Judge held a custody redetermination hearing. During the bond hearing, the respondent admitted to possessing a handgun in his home despite lacking the lawful ability to possess a firearm. Ultimately, the Immigration Judge granted the respondent release on a $7,500 bond. The Department now seeks an emergency stay of that custody order.

## ARGUMENT

### The Immigration Judge Erred by Finding That the Respondent is not a Danger to the Community based on Recent and Serious Criminal History.

In bond proceedings, aliens have the burden of establishing that they do not pose a danger to the community, are not a threat to national security, and do not pose a flight risk. *Matter of Guerra*, 24 I&N Dec. 37, 38 (BIA 2006). When assessing an alien's potential danger, the Immigration Judge should consider the nature and circumstances of the alien's criminal activity, including arrest and convictions, to determine if the alien is a danger to the community. *Matter of Siniauskas*, 27 I&N Dec. 207, 208 (BIA 2018); *Guerra*, 24 I&N Dec. at 40 (stating that factors relevant to danger include how extensive, recent, and serious the alien's criminal activity is).

Dangerous aliens are properly detained without bond. *Matter of Urena*, 25 I&N Dec. 140, 141 (BIA 2009).

Here, the respondent did not meet his burden to establish he does not pose a danger to the community based on his recent and serious arrest history. Exh. 2; Exh. 4. First, on June 14, 2025, the respondent participated in a large-scale protest with a group who moved onto an active roadway. Exh. 2 at 203, 205. Local law enforcement observed the respondent as part of that group and on two separate occasions, instructed the respondent to move to the sidewalk or he would be arrested. *Id*. The respondent initially complied but reentered the roadway twice to live stream the event on his phone. *Id*. at 208, 211. The respondent's repeated disregard for the officer's warnings eventually resulted in his arrest for unlawful assembly, obstruction of a law enforcement officer, and pedestrian on a roadway. *Id*. at 204.

The respondent's conduct shows a clear disregard for the laws of Georgia and a disrespect for law enforcement who was trying to protect the safety of the protestors and the bystanders on the road unintentionally swept up by the actions of the protestors. Through his actions, the respondent demonstrated that he valued the content of his live stream more than the safety of those driving, the protestors on the ground, or law enforcement officials carrying out their lawful duties.

Although the respondent argued that these charges were dismissed, they are not the only incident where the respondent has shown a disregard for the safety of law enforcement. On five separate occasions, from February to May 2025, the respondent confronted local Georgia law enforcement officials and federal agents during undercover narcotics, gang, and human trafficking investigations. Exh. 4 at 8-11. Each time, the respondent filmed undercover officers, their vehicles, and the suspects of the investigation and posted videos of the interactions to his Facebook account. *Id*. Specifically, following a February 19, 2025, encounter, the respondent compromised the

integrity of an undercover narcotics investigation by posting a video on his Facebook account showing the identity of an officer. *Id*. at 8.

On March 3, 2025, the respondent intercepted a joint narcotics investigation involving Transnational Cartel Gang members. *Id*. at 8. The respondent recorded an undercover vehicle with an officer behind the wheel, which resulted in the officer having to move to a less ideal position to continue his investigation to avoid further disturbances. *Id*. The respondent again posted a video of the encounter on his Facebook page that showed the vehicle's tag number. *Id*. Local law enforcement subsequently saw the video was viewed over 200,000 times, so law enforcement was forced to request a new tag and vehicle. *Id*.

On April 2, 2025, the respondent arrived at another undercover investigation and filmed uniformed, plain clothed, and undercover officers. *Id*. at 9. Again, the respondent posted this video to his Facebook page and identified the vehicles in the video as belonging to law enforcement. *Id*.

On May 15, 2025, the respondent arrived at the scene of an undercover narcotics investigation and recorded undercover officers and agents. *Id*. at 10. The respondent live streamed the event from his Facebook page and in the process, exposed undercover officers and vehicles. *Id*. Making matters worse, the respondent then saved and posted the live stream as a video on his Facebook page. *Id*.

On May 17, 2025, local law enforcement reviewed a video of a prior live stream of the respondent on his Facebook page. *Id*. In that video, the respondent ran a red light and sped to catch up to a vehicle he believed contained federal agents. *Id*.

Finally, on May 20, 2025, the respondent arrived at an undercover human trafficking investigation and was identified by local law enforcement due to his prior interactions. *Id*. at 11. Fearing the respondent would again compromise the integrity of their investigation, law

enforcement left the area while the respondent live streamed to his Facebook page. *Id*. As officers left the area, the respondent decided to follow one undercover vehicle in his car while live streaming from his phone. *Id*. Law enforcement observed the respondent revving his vehicle, running stop signs, and speeding past pedestrians—including a woman pushing a stroller. *Id*. Again, the respondent posted video of undercover officers, their vehicles, and license plate numbers to his Facebook page instructing his followers that they belonged to law enforcement. *Id*. Following this incident, on June 17, 2025, arrest warrants were issued for reckless driving, unlawful use of a telecommunication device, and failure to obey signs or controls. *Id*. at 4-6. These charges are currently pending.

The respondent's reckless conduct repeatedly compromised the operational security of numerous ongoing criminal investigations. He compromised the safety of undercover officers by posting their identities and vehicle tag numbers to his social media that received hundreds of thousands of views. *Id*. at 9. His actions also jeopardized future operations by posting videos of undercover vehicle tag numbers that received similar views. The respondent also put the safety of bystanders and pedestrians at significant risk by recklessly chasing law enforcement officers in his car while taking video. *Id*. at 11. Therefore, based on this conduct alone, the Immigration Judge erred by finding the respondent is not a danger to the community.

In addition to the respondent's criminal history, his unapologetic admission to unlawfully possessing a firearm further demonstrates his dangerousness to the community. While testifying, the respondent stated that he was gifted a firearm and keeps it in his home. When confronted with the unlawful nature of this admission, the respondent stated that it is his constitutional right to protect his family. Federal law, however, prohibits aliens illegally or unlawfully in the United States to possess any firearm. 18 U.S.C. §§ 922(g)(5), (g)(9). The respondent's unlawful

possession of a firearm is of particular concern when considered in light of his recent and repeated practice of confronting law enforcement officers during ongoing investigations.

Considering the nature and circumstances of the respondent's criminal history, it was error for the Immigration Judge to find that the respondent had carried his burden of demonstrating he is not a danger to the community. *Siniauskas*, 27 I&N Dec. at 208. The respondent's conduct is extensive, recent, and serious. *Guerra*, 24 I&N Dec. at 40 (stating that factors relevant to danger include how extensive, recent, and serious the alien's criminal activity is). Given that the respondent is a danger, he should be properly detained without bond. *Urena*, 25 I&N Dec. 140, 141. Therefore, it was error for the Immigration Judge to set a $7,500 bond this case.

For the foregoing reasons, DHS respectfully requests that the Board immediately issue a discretionary stay of the Immigration Judge's custody order dated July 1, 2025 pursuant to 8 C.F.R. § 1003.19(i)(1).


Respectfully submitted,

CHRIS L MEREDITH    Digitally signed by CHRIS L MEREDITH
Date: 2025.07.03 15:54:14 -04'00'

_____
Dated

_____
Christopher Meredith
Assistant Chief Counsel

# Exhibit 11

**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

Diaz, Giovanni Jose
Diaz& Gaeta Law

DHS/ICE Office of Chief Counsel - ATL

**Name: GUEVARA, MARIO ALEXANDER    A**

**Date of this Notice:    7/7/2025**

Enclosed is a copy of the Board's stay decision.

Sincerely,

John Seiler
Acting Chief Clerk

Enclosure

Userteam:  Paralegal

**NOT FOR PUBLICATION**

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

---

MATTER OF:

Mario Alexander GUEVARA, A███████████

Respondent

---

<div style="border:1px solid black;">

**FILED**

Jul 07, 2025

</div>

ON BEHALF OF RESPONDENT: Giovanni Jose Diaz, Esquire

ON BEHALF OF DHS: Christopher Meredith, Assistant Chief Counsel

IN REMOVAL PROCEEDINGS
On Motion for Stay of Removal before the Board of Immigration Appeals

Before: Mann, Appellate Immigration Judge

MANN, Appellate Immigration Judge

STAY ORDER

The Department of Homeland Security (DHS) has filed a motion for an emergency stay of the Immigration Judge's bond order, issued on July 1, 2025, ordering the respondent released from custody upon posting a bond of $7,500. After consideration of DHS' motion, the Board has concluded that an emergency stay of the bond order is warranted pending full review of the bond appeal.

ORDER: The motion for stay of execution of the bond order is granted.

# Exhibit 12

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

██████████████

Giovanni J. Diaz
Diaz & Gaeta Law, LLC
████████████████████
███████████████

## UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
## BOARD OF IMMIGRATION APPEALS
## FALLS CHURCH, VIRGINIA

| | | |
|---|---|---|
| IN THE MATTER OF: | * | **IN BOND PROCEEDINGS** |
| | * | |
| **MARIO ALEXANDER GUEVARA** | * | **A#** ████████ |
| | * | |
| | * | **DETAINED** |
| | * | **Custody Hearing** |
| **(Respondent)** | * | |
| _____ | * | |

## RESPONDENT'S MOTION FOR SUMMARY AFFIRMANCE OF THE IMMIGRATION COURT'S BOND ORDER, DISMISSAL OF THE GOVERNMENT'S APPEAL AND DISMISSAL OF THE BOARD'S STAY ORDER

**RESPONDENT'S MOTION FOR SUMMARY AFFIRMANCE OF THE IMMIGRATION COURT'S BOND ORDER, DISMISSAL OF THE GOVERNMENT'S APPEAL AND DISMISSAL OF THE BOARD'S STAY ORDER**

COMES NOW Respondent, Mario Alexander Guevara, through his attorney, Giovanni Diaz, and submits the foregoing Motion for Summary Affirmance of the Immigration Court's Bond Order and Dismissal of the Government's Bond Appeal and the Board's Stay Order. This motion is proper as it is filed pursuant to the BIA Practice Manual Chapter 5.9(l).

I.      Jurisdiction

This Board has jurisdiction over this motion as it falls within the Board's jurisdiction over appeals of bond determinations made by Immigration Courts. See: *8 C.F.R. §§ 1003.1(b)(7), 1003.19(f), 1003.38, 1236.1(d)(3)(i).*

II.     This Board Should Summarily Affirm the Bond Order of the Immigration Court Below and Dismiss the Government's Appeal

This Board should summarily affirm the order of the Immigration Court below, dated July 1, 2025, setting a bond of $7500 in this case and dismiss the government's appeal. The insufficiency of the government's argument is apparent on its face from the EOIR 26 form filed on July 3, 2025. While perhaps in literal terms the government's filing identifies an alleged error of law in the Immigration Court's finding that Mr. Guevara carried his burden to show he is not a danger to the community, the government advances no actual argument on this point. Instead, the government notice repeats the information it presented below, to which Mr. Guevara, through counsel, responded and the Court fully reviewed. The government's filing is silent as to how the Court's reasoning and consideration was flawed. Further, and of note, the government's notice

says nothing about any actual harm to the public or detriment to law enforcement's ability to do their job, caused by Mr. Guevara's alleged activity.

In a written decision issued on July 11, 2025, the Immigration Court dealt fully and carefully with all the issues raised in the government's Notice of Appeal. (Exhibit A: *Written Decision and Order of the Immigration Judge, dated July 11, 2025*). After thorough review and consideration of all the evidence and argument the Court determined Mr. Guevara is not a danger to the community. This even though the Court believed, which as noted below is no longer true, that Mr. Guevara had outstanding warrants in Gwinnett County, Georgia. *Id., p. 3*). As to the government's

Next, this Board should summarily affirm the order of the Immigration Court below because the government's argument about Mr. Guevara's conduct at a protest meets the description of section 4 of the Board's enumeration of the grounds for summary dismissal of appeals. The government's argument "lacks any basis in fact or law" and is therefore presumably "filed for improper purposes." The government writes that Mr. Guevara "defied" and "disregarded" law enforcement orders at a "large scale protest." What the government puts in a notice of appeal is of course not evidence and therefore provides no factual basis for its characterization of Mr. Guevara's behavior. The factual record before the Immigration Court on this point was rather that case in Dekalb County, Georgia involving charges for Unlawful Assembly (O.C.G.A. 16-11-33), Obstruction of an Officer (O.C.G.A. 16-20-24(a)) and Pedestrian Improperly Entering Roadway (O.C.G.A. 40-6-91(b)), had already dismissed on June 26, 2025, well before the bond hearing on July 1, 2025. The Chief Assistant Solicitor General of Dekalb County, Georgia wrote the following in her "Notice That No Accusation Will be Filed":

> ***Mr. Guevara was given multiple directives by different law enforcement
> agencies at different points in the interaction. Those agencies were also***

*directing the assembled crowds. At the time of his arrest, the video
evidence shows Mr. Guevara generally in compliance and does not
demonstrate the intent to disregard law enforcement directives.*

(See: *List of Supporting Exhibits (s) Group "A" For: Respondent's Motion for Bond,
Exhibit J*).

Further, the government filing describes the warrants for Mr. Guevara in Gwinnett
County involving reckless driving, failure to obey signs and unlawful use of a
communications device to be still "pending." This was false at the time of the government's
filing. Upon request of the Gwinnett County prosecutor and order of the Gwinnett County
Magistrate Judge, the warrants in those cases were recalled on July 1, 2025. As a factual
matter they were not, on July 3, "pending." (Exhibit B: *Order Recalling
Warrant(s)(Citations) and Accompanying Documents, dated July 1, 2025*).

For the government now, on this record, to argue that Mr. Guevara is subject to a pending
warrant in Gwinnett County, Georgia, or was defying law enforcement orders in Dekalb County,
Georgia lacks a factual or legal basis and arguably demonstrates disregard and disrespect for the
determinations Offices of the Prosecutor, Solicitor General and local courts in those jurisdictions
which are theirs, and theirs alone, to make. Here, the federal government of the United States
through its legal representative, has made assertions in direct contradiction of the record. In so
doing, counsel for the government may well be in violation of Georgia Rule of Professional
Conduct Rule 3.3(a)(1) that says that a lawyer "may not knowingly: 1) make a false statement of
material fact or law to the tribunal." Georgia Rule of Professional Conduct 3.3 (a)(1) available
at: https://www.gabar.org/handbook/?rule=rule72.[1] On its face the rule applies to statements

---

[1] Comment 3 to the Rule is also relevant here: "However, an assertion purporting to be on the lawyer's own knowledge, as in an affidavit by the lawyer or in a statement in open court, may properly be made only when the lawyer knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry."

made by lawyers, like the one offered in the Notice of Appeal, and is not limited to legal
argument, evidence or the testimony of clients. This rule on Candor Toward the Tribunal
establishes duties on counsel that continue "to the conclusion of the proceeding." *Id.* at (b). The
rule also requires counsel to take "reasonable remedial measures" when they come to know the
falsity of a statement offered. *Id.* at (a)(4). Presuming the government knows what it is doing
when it files notices with this Board, it is reasonable to presume that given all of this, the
government's filing, or at the very least this portion of it, is made for improper purposes either of
delay or to sully Mr, Guevara's reputation. It bears noting that Mr. Guevara's initial bond filing
was replete with evidence of his collaboration with and support of both local and federal law
enforcement both in Georgia and beyond. (See: *List of Supporting Exhibits(s) Group "B" for
Respondent's Motion for Bond, Exhibit C-1.*)

      This Board should also summarily affirm the Immigration Court's bond order below and
dismiss the government appeal because the government's two- and one-half line mention of a
firearm at Mr. Guevara's home in their EOIR 26 filing is wholly unpersuasive. If Mr. Guevara
had ever been investigated, cited, arrested or punished for a firearms violation, plainly the
government would have made that known to the Immigration Court or this Board. They have
not. Also, whether a person "unlawfully" possesses a firearm in their home is a question of law
to be determined by a judge or jury. Legal conclusions are determinations of courts, not the stuff
of lay person testimony. In its July 11, 2025, written decision the Immigration Court rightfully
concludes that "the only firm evidence established by the Department's questioning of
Respondent is that there is a gun in Respondent's home that he shares with three United States
citizens (USC), his brother is in the military, and Respondent fired the weapon at a firing range."
(Exh. A., p. 4). Therefore, this Board ought not credit this portion of the government filing.

Finally, the government's Notice of Appeal ought to be rejected because it is incomplete and incorrect. Question number 2, designed to indicate the identity of the party filing the notice, is blank and question number 3 describes the Department of Homeland Security as "Detained."

III.    This Board's Stay Order Should Be Dismissed As It Was Improvidently Granted and Cannot Survive the Dismissal of the Government's Appeal

The Stay Order issued by this Board on July 7, 2025, must be dismissed because the government's motion for a stay was never served on the Respondent and thus the order was improvidently granted. The Board of Immigration Appeals Practice Manual requires that motions be served on the opposing party. See: *BIA Practice Manual Chapter 5.2(c).* Service of a motion upon an opposing party is no trifling matter, but rather at the heart of the adversarial system of justice that requires all parties have an opportunity to be heard. See: U.S. Constitution Amendment V, XIV, and, generally, *Matthews v. Edridge* 424 U.S. 319 (1976) and *Reno v. Flores* 507 U.S. 292 (1993). The government's EOIR 26 Notice of Appeal form indicates, at question 5, that the government does *not intend* to invoke the *automatic* stay provisions. That is consistent with BIA Practice Manual Chapter 7.2(4)(B) which would have required the government to file form EOIR 43 within one day of the Immigration Court's bond order, which the government did not do. Therefore, the Notice of Appeal provides no notice to Mr. Guevara of the government's intent to file a motion for stay. **It is Mr. Guevara's position that the government also did not serve him or his counsel with a separate motion for a stay of the bond order in this matter.** If the Board is in receipt of a motion to stay the bond order that is accompanied by a certificate of service in which the government represents it served the motion on counsel for Mr. Guevara it is Respondent's position that such representation is incorrect. The law firm representing Respondent has inquired with the Board of Immigration Appeals and with

the Office of Chief Counsel in Atlanta to request evidence that Respondent was served with a copy of the government's motion for a stay of the Immigration Court's bond order in this case. At the time of this filing, Respondent has not been provided with such evidence.

Finally, as the underlying appeal must be dismissed, so too must the Stay Order staying the effect of the Immigration Court's bond order of July 1, 2025, be dismissed.

IV.    <u>CONCLUSION</u>

THEREFORE, based on the foregoing argument and the attached evidence, Mr. Guevara, by and through undersigned counsel of record Mr. Giovanni Diaz, Esq., respectfully moves this Board of Immigration Appeals to Summarily Affirm the Immigration Court's bond order of July 1, 2025 granting Mr. Guevara bond in the amount of $7500.00, dismiss the government's bond appeal and dismiss its stay order of July 7th, 2025 and further to direct the Department of Homeland Security, by and through its legal counsel, to act in all ways in accordance with the Board's order.

Respectfully submitted,

____/s/ Giovanni Diaz____
Giovanni Diaz, Esq.
Diaz & Gaeta Law, LLC
████████████ ████████

████████████
Phone:████████
Fax████████

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**BOARD OF IMMIGRATION APPEALS**
**FALLS CHURCH, VIRGINIA**

| | | |
|---|---|---|
| **IN THE MATTER OF:** | * | **IN BOND PROCEEDINGS** |
| | * | |
| **MARIO ALEXANDER GUEVARA** | * | **A#** ███████ |
| | * | |
| | * | **DETAINED** |
| | * | **Custody Hearing** |
| | * | |
| **(Respondent)** | * | |
| _____ | * | |

**RESPONDENT'S MOTION FOR SUMMARY AFFIRMANCE OF THE IMMIGRATION COURT'S BOND ORDER,  DISMISSAL OF THE GOVERNMENT'S APPEAL AND DISMISSAL OF THE BOARD'S STAY ORDER**

**ORDER**

Upon receipt of Respondent's Motion, Respondent's Motion is HEREBY:

_____GRANTED                    _____DENIED.

_____ GRANTED IN PART _____

_____ DENIED IN PART_____

DONE AND ORDERED this _____day of _____, 2025, at FALLS CHURCH, VIRGINIA.

_____
Appellate Immigration Judge
FALLS CHURCH, Virginia

## CERTIFICATE OF SERVICE

RE:   **MARIO ALEXANDER GUEVARA**
      **A#** ████████████

      I DO HEREBY CERTIFY that on July 12, 2025, I caused to be served a copy of the foregoing Respondent's Motion For Summary Affirmance of the Immigration Court's Bond Order, Dismissal of the Government's Appeal and Dismissal of the Board's stay Order along with supporting documents:

___X_____       This document was electronically filed through ECAS and both parties are participating in ECAS. Therefore, no separate service was completed.

_____       by placing a true copy thereof in a sealed envelope, with postage thereon fully prepaid and causing the same to be mailed by first class mail to the person at the address set forth below.

_____       by causing to be personally delivered a true copy thereof to the person at the address set forth below.

_____       by FEDERAL EXPRESS/ AIRBORNE EXPRESS to the person at the address set forth below.

_____       by certified mail-return receipt requested to the person at the address set forth below.

_____       by ICE electronic service to the person at the address set forth below:

           U.S. Department of Homeland Security
           Office of the Chief Counsel
           Stewart Detention Center
           ████████████████
           ████████████████████

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 12, 2025.

           ___/s/ Giovanni Diaz_____
           Giovanni J. Diaz, Esq.
           Attorney for Respondent

# Exhibit 13

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

█████████████ .com

Giovanni J. Diaz
Diaz & Gaeta Law, LLC
█████████████

## UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
## BOARD OF IMMIGRATION APPEALS
## FALLS CHURCH, VIRGINIA

| | | |
|---|---|---|
| **IN THE MATTER OF:** | \* | **IN BOND PROCEEDINGS** |
| | \* | |
| **MARIO ALEXANDER GUEVARA** | \* | **A#** ████████ |
| | \* | |
| | \* | **DETAINED** |
| | \* | **Custody Hearing** |
| **(Respondent)** | \* | |
| ———————————————— | \* | |

### RESPONDENT'S MOTION TO LIFT THE STAY ORDER

<u>**RESPONDENT'S MOTION TO LIFT THE STAY ORDER**</u>

COMES NOW Respondent, Mario Alexander Guevara, through his attorney, Giovanni Diaz, and submits this Motion to Lift the Stay Order. This motion is proper as it is filed pursuant to the BIA Practice Manual Chapter 5.9(l). On July 12, 2025 (a Saturday), Mr. Guevara filed a motion that included among its requests for relief the dismissal of the Stay Order in this case. The instant motion raises additional arguments regarding the motion for stay and the stay order not contained in the prior motion.

I.    <u>This Board Should Lift the Stay Order in this Case Because the Government's Emergency Motion for Discretionary Stay Does Not Comply with the Requirements of the BIA Practice Manual Nor the Law</u>

Mr. Guevara continues to maintain, as he asserted in his filing of July 12, 2025, that the stay in this case should be lifted because it was never served on undersigned counsel. The BIA Practice Manual is clear that motions for stay must comply with the service requirements that apply to all other types of motions before the Board, including service. (B.I.A. Practice Manual Chapter 6.3(c)(1)(E)). Counsel for respondent only received the government's Emergency Motion for Discretionary Stay in this case on Friday July 11, 2025, at 8:44 pm as an email attachment from Deputy Chief Counsel Reece. (Exhibit A: *Email from Deputy Chief Counsel Reece to Mr. Giovanni Diaz, Esq., counsel for Respondent, dated July 11, 2025*). While Ms. Reece asserts the motion was filed via Ecas she concedes that the motion was not served on Mr. Guevara or his counsel separately from the "Ecas" system. She also writes, in part "I don't see it in Ecase either" and later "…I am not sure why it isn't in Ecas." *Id.* Thus, Ms. Reece's email substantiates Mr. Guevara's position that in fact the government did not comply with the

service requirements in this matter.

In addition, the government's motion for stay fails to comply with the requirements to be treated as an emergency motion. The BIA Practice Manual establishes three specific and exclusive situations in which the Board will consider a motion for stay on an emergency basis. See: BIA Practice Manual Chapter 6.3(2)(A)(i-iii). The government's motion is silent as to which of these reasons it believes apply in this instance. Plainly the reasons articulated at paragraphs ii and iii do not apply. But neither does the reason at paragraph "i" as, while Mr. Guevara is detained, his removal case is administratively closed, and he is not subject to a removal order. Indeed, there are no future hearings scheduled in Mr. Guevara's removal case.  Thus, his physical removal from the United States is not "imminent" as the practice manual requires. *Id.* Further, it would be odd for the government to bring an emergency motion for stay in apparent anxiety that in the absence of emergency action by this Board Mr. Guevara might be removed from the United States, as by all indications his removal would appear to be the government's goal in this case.

Finally, also in contravention of the practice manual, the government's motion does not state what the time exigencies are that necessitate emergency action. See: B.I.A. Practice Manual, Chapter 6.3(c)(1)(D)(  "*The motion must also contain a specific statement of the time exigencies involved. Motions containing vague or general statements of urgency are not persuasive."*).

The government's failure to serve Mr. Guevara with the motion to stay the bond order in this case is a serious omission that necessitates that this Board lift the stay order. The B.I.A. Practice Manual requires that motions be served on the opposing party. See:

*BIA Practice Manual Chapter 5.2(c).* Service of a motion upon an opposing party is the heart of the adversarial system of justice that requires all parties have an opportunity to be heard. See: U.S. Constitution Amendment V, XIV, and, generally, *Matthews v. Edridge* 424 U.S. 319 (1976) and *Reno v. Flores* 507 U.S. 292 (1993). The government's EOIR 26 Notice of Appeal form indicates, at question 5, that the government does *not intend* to invoke the *automatic* stay provisions. That is consistent with BIA Practice Manual Chapter 7.2(4)(B) which would have required the government to file form EOIR 43 within one day of the Immigration Court's bond order, which the government did not do. Therefore, the Notice of Appeal did not provide notice to Mr. Guevera of the government's intent to file a motion for stay. The certificate of service in which the government represents it served the motion on counsel for Mr. Guevara via Ecas would appear to be inaccurate. For all of these reasons, the Board's stay order of July 7, 2025 must be lifted.

II.     This Board Should Lift the Stay Order in this Case Because the Motion for Stay is Substantively Unpersuasive

This Board should lift the Stay Order in this case because the government's arguments for stay are unpersuasive. The government motion repeats the arguments it presented below, to which Mr. Guevera, through counsel, responded and the Court fully reviewed. The government's filing is silent as to how the Court's reasoning below was flawed. The government's argument seems to rest almost entirely on its citation to *Matter of Guerra* 24 I & N Dec. 37 (BIA 2006) and its finding that the relevant factors for evaluating dangerousness are how "recent, extensive and serious" the Respondent's criminal history is. *Id.* at 40. Unfortunately for the government, the criminal justice authorities of jurisdiction have all determined that rather than constituting alarming indications of dangerous behavior from which the community must be protected, the

incidents about which the government would have this Board be extremely concerned are instead ***not "serious"*** enough to even merit any criminal punishment whatsoever.

In a written decision issued on July 11, 2025, the Immigration Court dealt fully and carefully with all the issues raised in the government's motion for stay. (Exhibit B: *Written Decision and Order of the Immigration Judge, dated July 11, 2025*). After thorough review and consideration of all the evidence and argument the Court determined Mr. Guevara is not a danger to the community. This even though the Court believed, which as noted below is no longer true, that Mr. Guevara had outstanding warrants in Gwinnett County, Georgia. *Id., p. 3*.

Next, this Board should lift the stay order because the government's argument about Mr. Guevera's conduct at a protest in Dekalb County, Georgia conflicts with the factual record before the Immigration Court on this point. The government contends that Mr. Guevara demonstrated a "clear disregard for the laws of Georgia and disrespect for law enforcement." (See: DHS Motion for Stay). On the contrary, the Dekalb County charges against Mr. Guevara, for Unlawful Assembly (O.C.G.A. 16-11-33), Obstruction of an Officer (O.C.G.A. 16-20-24(a)) and Pedestrian Improperly Entering Roadway (O.C.G.A. 40-6-91(b)), had already dismissed on June 26, 2025, well before the bond hearing on July 1, 2025. The Chief Assistant Solicitor General of Dekalb County, Georgia wrote the following in her "Notice That No Accusation Will be Filed":

> ***Mr. Guevara was given multiple directives by different law enforcement agencies at different points in the interaction. Those agencies were also directing the assembled crowds. At the time of his arrest, the video evidence shows Mr. Guevara generally in compliance and does not demonstrate the intent to disregard law enforcement directives.***

(See: *List of Supporting Exhibits (s) Group "A" For: Respondent's Motion for Bond, Exhibit J*).

Further, the government motion for stay describes the warrants for Mr. Guevera in Gwinnett County involving reckless driving, failure to obey signs and unlawful use of a communications device to be still "pending." This was false at the time of the government filing. Upon request of the Gwinnett County prosecutor and order of the Gwinnett County Magistrate Judge, the warrants in those cases were recalled on July 1, 2025. (Exhibit C: *Order Recalling Warrant(s)(Citations) and Accompanying Documents, dated July 1, 2025).*

For the government now, on this record, to argue that Mr. Guevera is subject to a pending warrant in Gwinnett County, Georgia, or was defying law enforcement orders in Dekalb County, Georgia lacks a factual or legal basis and arguably demonstrates disregard and disrespect for the determinations Offices of the Prosecutor, Solicitor General and local courts in those jurisdictions which are theirs, and theirs alone, to make. Here, the federal government of the United States through its legal representative, has made assertions in direct contradiction of the record. In so doing, counsel for the government may well be in violation of Georgia Rule of Professional Conduct Rule 3.3(a)(1) that says that a lawyer "may not knowingly: 1) make a false statement of material fact or law to the tribunal." Georgia Rule of Professional Conduct 3.3 (a)(1) available at: https://www.gabar.org/handbook/?rule=rule72.[1] On its face the rule applies to statements made by lawyers, like the one offered in the motion for stay, and is not limited to legal argument, evidence or the testimony of clients. This rule on Candor Toward the Tribunal establishes duties on counsel that continue "to the conclusion of the proceeding." *Id.* at (b). The rule also requires counsel to take "reasonable remedial measures" when they come to know the falsity of a

---

[1] Comment 3 to the Rule is also relevant here: "However, an assertion purporting to be on the lawyer's own knowledge, as in an affidavit by the lawyer or in a statement in open court, may properly be made only when the lawyer knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry."

statement offered. *Id.* at (a)(4). Even now, the government has not done that here.

It bears noting that Mr. Guevera's initial bond filing was replete with evidence of his collaboration with and support of both local and federal law enforcement both in Georgia and beyond. (See: *List of Supporting Exhibits(s) Group "B" for Respondent's Motion for Bond, Exhibit C-1.)*

This Board should also lift the Stay Order because the government's argument about Mr. Guevara's possession of a firearm is wholly unpersuasive. If Mr. Guevara had ever been investigated, cited, arrested or punished for a firearms violation, plainly the government would have made that known to the Immigration Court or this Board. They have not. Also, contrary to the government's assertion in its motion, whether a person "unlawfully" possesses a firearm in their home is a question of law to be determined by a judge or jury. Legal conclusions are determinations of courts, not the stuff of lay person testimony nor government attorney argument. In its July 11, 2025, written decision the Immigration Court rightfully concludes that "the only firm evidence established by the Department's questioning of Respondent is that there is a gun in Respondent's home that he shares with three United States citizens (USC), his brother is in the military, and Respondent fired the weapon at a firing range." (Exh. A., p. 4). Therefore, this Board ought not credit this portion of the government filing.

III.    <u>CONCLUSION</u>

THEREFORE, based on the foregoing argument and the attached evidence, Mr. Guevera, by and through undersigned counsel of record Mr. Giovanni Diaz, Esq., respectfully moves this Board of Immigration Appeals to lift the stay order in this case, and further to direct the Department of Homeland Security, by and through its legal counsel, to act in all ways in accordance with the Board's order.

Respectfully submitted,

__/s/Giovanni Diaz_____
Giovanni Diaz, Esq.
Diaz & Gaeta Law, LLC
███████████████████

███████████
Phone: (██████████
Fax: (█████████

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**BOARD OF IMMIGRATION APPEALS**
**FALLS CHURCH, VIRGINIA**

| | | |
|---|---|---|
| **IN THE MATTER OF:** | * | **IN BOND PROCEEDINGS** |
| | * | |
| **MARIO ALEXANDER GUEVARA** | * | **A#** ▆▆▆▆▆ |
| | * | |
| | * | **DETAINED** |
| | * | **Custody Hearing** |
| **(Respondent)** | * | |
| ——————————————————— | * | |

## RESPONDENT'S MOTION TO LIFT THE STAY ORDER

## ORDER

Upon receipt of Respondent's Motion, Respondent's Motion is HEREBY:

_____GRANTED                    _____DENIED.

DONE AND ORDERED this _____day of _____, 2025, at FALLS

CHURCH, VIRGINIA.

_____
Appellate Immigration Judge
FALLS CHURCH, Virginia

## <u>CERTIFICATE OF SERVICE</u>

**RE:**   **MARIO ALEXANDER GUEVARA**
         **A# ██████████**

       I DO HEREBY CERTIFY that on July 15, 2025, I caused to be served a copy of the foregoing Respondent's Motion to Lift the Stay Order along with supporting documents:

___X_____       This document was electronically filed through ECAS and both parties are participating in ECAS. Therefore, no separate service was completed.

_____       by placing a true copy thereof in a sealed envelope, with postage thereon fully prepaid and causing the same to be mailed by first class mail to the person at the address set forth below.

_____       by causing to be personally delivered a true copy thereof to the person at the address set forth below.

_____       by FEDERAL EXPRESS/ AIRBORNE EXPRESS to the person at the address set forth below.

_____       by certified mail-return receipt requested to the person at the address set forth below.

_____       by ICE electronic service to the person at the address set forth below:

             U.S. Department of Homeland Security
             Office of the Chief Counsel
             Stewart Detention Center
             ██████████████
             ████████████████████

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 15, 2025.

                             __/s/Giovanni Diaz_____
                             Giovanni J. Diaz, Esq.
                             Attorney for Respondent

# Exhibit 14

Ryan Matsuno                                      DETAINED
Chief Counsel
Emily C. Reece
Deputy Chief Counsel
Kiera D. Potter
Assistant Chief Counsel
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security
█████████████████████████
████████████

## UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
## BOARD OF IMMIGRATION APPEALS
## FALLS CHURCH, VIRGINIA

| In the Matter of: | |
|---|---|
| **GUEVARA, MARIO A** | File No.    A████████ |
| In Bond Proceedings | |

## U.S. DEPARTMENT OF HOMELAND SECURITY'S
## OPPOSITION TO RESPONDENT'S MOTION TO LIFT THE STAY ORDER

COMES NOW, the U.S. Department of Homeland Security (DHS), and files this opposition to respondent's motion to lift the Board of Immigration Appeals' (Board) discretionary stay of the Immigration Judge's decision issued on July 1, 2025, granting the respondent's release on $7,500 bond. On July 3, 2025, DHS filed an appeal of the Immigration Judge's decision to grant a bond and an emergency motion for discretionary stay. On July 12, 2025, the respondent filed a motion for summary affirmance of the Immigration Judge's decision and dismissal of DHS' appeal and the Board's stay order. On July 15, 2025, the respondent filed a motion to lift the Board's stay order. DHS respectfully requests that the Board deny the respondent's motion to lift the stay stating the following:

I.    **DHS' Emergency Motion for Discretionary Stay Complied with the Requirements of the Board's Practice Manual.**

The respondent asserts that the Board should lift the stay because he claims DHS failed to comply with the Board's Practice Manual requirements when serving and filing the emergency motion for discretionary stay. On July 3, 2025, DHS electronically filed an appeal of the Immigration Judge's decision granting the respondent a $7,500 bond. *See* DHS Notice of Appeal. That same day, DHS electronically filed an emergency motion for discretionary stay with the Board. *See* Tab A to DHS' Motion to Correct Record. As evidenced in DHS' Motion to Correct Record, filed July 22, 2025, DHS received a confirmation notice that the emergency motion for discretionary stay was accepted by the Board. *See* Tab B to DHS' Motion to Correct Record. Chapter 3.2 of the Board of Immigration Appeals Practice Manual (BIA Practice Manual) states that, "If all parties are using ECAS in a specific case, the parties do not need to separately serve any electronically filed documents on the opposing party. Rather, the ECAS system will automatically send service notifications to both parties that a new document has been filed. The parties must continue to include a certificate of service with their electronic filing, but simply note in the certificate that service was completed through ECAS."

Here, both parties are using ECAS. Thus, upon receipt of the confirmation email that the emergency motion for discretionary stay had been accepted by the Board, the motion should have been automatically served on the respondent. At this time, it is unclear why the emergency motion for discretionary stay is not reflected in the record. Nonetheless, DHS complied with the requirements of the BIA Practice Manual and on July 22, 2025, filed a motion with the Board to ensure that the record is corrected.

Furthermore, DHS' motion complied with the BIA Practice Manual and the regulations. Chapter 7.2 of the BIA Practice Manual indicates that when a stay is not automatic, DHS may ask the Board to grant an emergency stay. *See also* 8 C.F.R. § 1003.19(i)(1). The respondent contends that DHS' motion did not comply with the BIA Practice Manual because it did not conform to Chapters 6.3(c)(2)(A) and 6.3(c)(1)(D). Specifically, he argues that the motion does not state the reasons that make the motion an emergency. However, these sections are inapplicable because they relate to motions for stays of removal, deportation and exclusion.

## II. The Board Properly Granted the Emergency Motion for Discretionary Stay Because the Respondent Poses a Danger to the Community.

In the respondent's motion, he highlights the fact that his criminal charges have been dismissed as a basis to lift the stay. However, the facts and arguments that DHS asserted in its emergency motion for discretionary stay still hold true, which is that on at least five separate occasions, the respondent confronted local Georgia law enforcement officials and federal agents during undercover narcotics, gang, and human trafficking investigations. *See* DHS Emergency Motion for Discretionary Stay, at EOIR p. 8. The respondent's reckless conduct repeatedly compromised the operational security of numerous ongoing criminal investigations. *Id.* at 8-10. He compromised the safety of undercover officers by posting their identities and vehicle tag numbers. *Id*. at 10. His action jeopardized future operations. *Id*. The respondent put the safety of bystanders at risk by chasing law enforcement officers in his car while taking video. *Id*.

Additionally, in the respondent's motion to lift the stay, he stresses that he has never been charged with a firearms offense and because of that, he does not pose a danger to the community. The respondent's argument seems to be that as long as you are not charged, investigated, cited or convicted of a crime, then the underlying actions are not unlawful or do not make one dangerous. This assertion is without merit, in reality, in the context of immigration custody proceedings.

**WHEREFORE**, for the reasons stated above, DHS respectfully requests that the Board deny the respondent's motion to lift the stay.

KIERA D POTTER

Digitally signed by KIERA D POTTER
Date: 2025.07.31 18:22:01 -04'00'

Kiera D. Potter
Assistant Chief Counsel

**GUEVARA, MARIO A**
A▮▮▮▮▮▮▮

## CERTIFICATE OF SERVICE

On July 31, 2025, I, Kiera D. Potter, served a copy of this **U.S. Department of Homeland Security's Opposition to Respondent's Motion to Lift Stay Order** on:

**Giovanni J. Diaz, Esq.**
**Diaz & Gaeta Law, LLC**
▮▮▮▮▮▮▮▮▮▮▮

☐    by first-class mail, postage pre-paid, to [address of party served].

☐    by first-class mail, postage pre-paid to [address of party served], by placing into my office's receptacle designated for official "out-going" first class mail.

☐    by personally delivering a true copy thereof to the person set forth above.

☐    by electronic service, with prior consent, at the following e-mail address: [email address of party served].

☐    by eService pursuant to the Terms and Conditions agreed to between the parties.

☒    through the EOIR Courts and Appeals System (ECAS), which will automatically send service notifications to both parties that a new document has been filed.

**KIERA D POTTER** Digitally signed by KIERA D POTTER
Date: 2025.07.31 18:21:15 -04'00'

Kiera D. Potter
Assistant Chief Counsel

# Exhibit 15

Ryan Matsuno
Chief Counsel
Emily C. Reece
Deputy Chief Counsel
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security
███████████████████████
███████████

DETAINED

## UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
## BOARD OF IMMIGRATION APPEALS
## FALLS CHURCH, VIRGINIA

In the Matter of:

**GUEVARA, MARIO A**

In Bond Proceedings

File No.    A███████████

## U.S. DEPARTMENT OF HOMELAND SECURITY
## BRIEF ON APPEAL

# TABLE OF CONTENTS

**INTRODUCTION**................................................................................................................**2**

**ISSUE PRESENTED** ..........................................................................................................**2**

**STANDARD OF REVIEW**..................................................................................................**2**

**SUMMARY OF ARGUMENT**............................................................................................**2**

**STATEMENT OF FACTS** ..................................................................................................**3**

**ARGUMENT**........................................................................................................................**4**

THE IMMIGRATION JUDGE ERRED IN GRANTING BOND BECAUSE THE RESPONDENT
FAILED TO MEET HIS BURDEN TO SHOW HE IS NOT A DANGER TO THE
COMMUNITY BASED ON HIS RECENT ARREST HISTORY, CONTINUAL,
OBSTRUCTIVE INTERFERENCE IN CRIMINAL INVESTIGATIONS AND UNLAWFUL
POSSESSION OF A FIREARM. .........................................................................................4

**CONCLUSION** ...................................................................................................................**9**

Filed at BIA on 08/06/2025 on LGW-BWC Eastern Daylight Time 2-2

## INTRODUCTION

The Department of Homeland Security (DHS) appeals from the decision of the Immigration Judge, dated July 1, 2025, ordering the respondent released under section 236(a) of the Immigration and Nationality Act (INA or Act) on a $7,500 bond. The Immigration Judge erred because the respondent failed to establish that his release would not pose a danger to the community. Review by a three-member panel is appropriate because the Immigration Judge's decision is not in conformity with the law and applicable precedent, and there is a need to reverse the Immigration Judge's decision. *See* 8 C.F.R. § 1003.1(e)(6)(iii), (vi). DHS respectfully requests that the Board of Immigration Appeals (Board) reverse the Immigration Judge's decision and order the respondent held without bond during the pendency of his removal proceedings.

## ISSUE PRESENTED

Did the Immigration Judge err in granting bond where the respondent failed to meet his burden to show he is not a danger to the community based on his recent encounters with local and federal law enforcement officers, which resulted in his arrest and criminal charges being lodged, and where he admitted to unlawfully possessing a firearm?

## STANDARD OF REVIEW

Whether the respondent established "that his release would not pose danger to property or persons" under INA § 236(a) is a discretionary determination the Board reviews de novo. *See Matter of Chot-Tut*, 29 I&N Dec. 48, 49 (BIA 2025); *see also* 8 C.F.R. § 1003.1(d)(3)(ii).

## SUMMARY OF ARGUMENT

The Immigration Judge erred in concluding the respondent met his burden of proof to show he is not a danger to the community. The respondent repeatedly inserted himself into active criminal investigations, including those involving narcotics, gangs, and human trafficking. His presence compromised the integrity and operational security of these investigations, putting law enforcement

2

and the public at risk. The respondent's actions resulted in him being arrested by one agency and the subject of criminal warrants by another. In addition to the respondent's reckless conduct with law enforcement agencies, the respondent admitted to unlawfully possessing a firearm in violation of federal law. The Immigration Judge gave undue weight to the fact that the respondent had not been criminally charged for his behavior by law enforcement and prosecuting agencies and overlooked the real-life implications of the respondent's actions. Accordingly, the Immigration Judge granted a bond in the amount of $7,500.

## STATEMENT OF FACTS

The respondent is a native and citizen of El Salvador who last entered the United States as a B1 visitor on or about March 29, 2004, to depart by June 28, 2004. Exh. 2 at 12-16. The respondent's

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████

The respondent came into U.S. Immigration and Customs Enforcement (ICE) custody on or about June 18, 2025, following his arrest by the Doraville, Georgia Police Department on or about June 14, 2025. The respondent was charged with willful obstruction of a law enforcement officer and unlawful assembly. Exh. 2 at 205-13. These charges were subsequently dismissed for lack of sufficient evidence by the Dekalb County, Georgia Solicitor-General on or about June 25, 2024. *Id*. at 202.

On or about June 17, 2025, the Magistrate Court of Gwinnett County, Georgia, issued criminal arrest warrants for the respondent for reckless driving and unlawful use of a telecommunication device alleged to have occurred on May 20, 2025, and failure to obey signs or control devices alleged to have occurred on May 13, 2025. Exh. 4 at 4-6.[1] The Gwinnett County Sheriff's Office report for these charges indicates that the respondent compromised the operational security of undercover officers conducting narcotics and human trafficking investigations on five occasions in 2025. *Id*. at 8-12. The report notes that the respondent livestreamed both uniformed and plain clothes officers engaged in surveillance and took videos of the license plates as well as the makes and models of undercover police vehicles. *Id*. In one livestreamed broadcast, the respondent filmed himself following what he believed to be federal agents in his vehicle. *Id*. The livestream showed the respondent driving through a red light to continue pursuing the individuals he believed to be federal agents. *Id*.

On June 20, 2025, the respondent filed a motion for custody redetermination. Exh. 1. On July 1, 2025, the Immigration Judge held a custody redetermination hearing. During the bond hearing, the respondent admitted to possessing a firearm in his home. I.J. at 4. The Immigration Judge granted the respondent release on a $7,500 bond. *Id.* On July 3, 2025, DHS filed an appeal of the Immigration Judge's decision to grant a bond and an emergency motion for discretionary stay.

## ARGUMENT

THE IMMIGRATION JUDGE ERRED BY FINDING THAT THE RESPONDENT IS NOT A DANGER TO THE COMMUNITY BASED ON RECENT ENCOUNTERS WITH LOCAL LAW ENFORCEMENT OFFICIALS AND FEDERAL AGENTS, RESULTING IN HIS ARREST AND CRIMINAL CHARGES BEING LODGED AND WHERE THE RESPONDENT ADMITTED POSSESSING A FIREARM.

---

[1] It is DHS' understanding that the charges issued by the Gwinnett County Sheriff's Office were dismissed on or about July 10, 2025.

Filed at BIA on 08/05/2025 5:00:21 PM Eastern Daylight Time

In bond proceedings, aliens have the burden of establishing that they do not pose a danger to the community, are not a threat to national security, and do not pose a flight risk. *Matter of Guerra*, 24 I&N Dec. 37, 38 (BIA 2006). When assessing an alien's potential danger, the Immigration Judge should consider the nature and circumstances of the alien's criminal activity, including arrest and convictions, to determine if the alien is a danger to the community. *Matter of Siniauskas*, 27 I&N Dec. 207, 208 (BIA 2018); *Guerra*, 24 I&N Dec. at 40 (stating that factors relevant to danger include how extensive, recent, and serious the alien's criminal activity is). Dangerous aliens are properly detained without bond. *Matter of Urena*, 25 I&N Dec. 140, 141 (BIA 2009).

Here, the respondent did not meet his burden to establish he does not pose a danger to the community based on his repeated encounters with law enforcement, which resulted in an arrest by the Doraville, Georgia Police Department and charges being lodged by the Gwinnett County Sheriff's Office. First, on June 14, 2025, the respondent participated in a protest with a group who moved onto an active roadway. Exh. 2 at 203, 205. The law enforcement officers observed the respondent as part of that group and on two separate occasions, instructed the respondent to move to the sidewalk or he would be arrested. *Id*. The respondent initially complied with the officer's instructions but reentered the roadway twice to livestream the event on his phone. *Id.* at 208, 201. The respondent's failure to comply with lawful orders resulted in his arrest for unlawful assembly, obstruction of a law enforcement officer, and pedestrian in the roadway. *Id*. at 204. The respondent's actions on June 14, 2025, are just one example of the respondent prioritizing the creation of content for his livestream over the safety of motorists, demonstrators, or law enforcement officers acting within the scope of their duties.

While the respondent argued that these charges were dismissed, they are not the only occurrence where the respondent has shown a disregard for the safety of law enforcement or the public. On five different occasions, spanning from February to May 2025, the respondent encountered

local Georgia law enforcement officials and federal agents during undercover narcotics, gang, and human trafficking investigations. Exh. 4 at 8-11. During these encounters, the respondent filmed undercover officers, their vehicles, including their vehicle tag information, and the suspects of the investigation posting the videos on his Facebook account, some of which received hundreds of thousands of views. *Id.* at 9-10.

On February 19, 2025, the respondent filmed officers from the Sheriff's Office and suspects of an active crime scene where there was an undercover narcotics investigation. *Id.* at 8. Seemingly concerned that the officers worked for ICE, the respondent inquired whether "this was an ICE operation." *Id.* Despite law enforcement officer's assurances that this was active narcotics investigation involving *only* the Sheriff's Office, the respondent continued filming plain clothes officers, their vehicles, and the suspects of the investigation. *Id.* The respondent later posted the encounter with the officer on his Facebook page raising safety concerns for the officer. *Id.*

On March 3, 2025, the respondent interfered with a joint narcotics investigation involving Transnational Cartel Gang members. *Id.* at 8. According to law enforcement, the investigation "involved Transnational Cartel Gang members trafficking large amounts of illegal narcotics throughout Gwinnet County and the City of Norcross." *Id.* at 9. During that investigation, while an undercover officer was conducting surveillance, the respondent arrived and began filming the undercover officer and the officer's vehicle, including its county issued tag, again seemingly under the mistaken impression the officer worked for ICE. *Id.* Fearing that the respondent would capture his identity, after the respondent began filming directly in front of the undercover officer's windshield, the officer was forced to move to a suboptimal position, which caused a hindrance to the investigation and could have caused it to be terminated altogether. *Id.* The respondent posted this video to his Facebook page, without obscuring the undercover officer's vehicle tag information and

Filed at BIA on 08/05/2025 2:00:38 PM, Eastern Daylight Time

incorrectly identifying the vehicle as an ICE vehicle. *Id*. Because the video received hundreds of thousands of views, the officer had to request a new county issued tag. *Id*.

On April 2, 2025, the respondent appeared at another undercover investigation and filmed uniformed and plain clothed officers. *Id*. at 9. He again filmed undercover vehicles and their license plates. *Id*. The respondent posted the video to his Facebook page, specifically identifying the law enforcement vehicles to his viewers. *Id.* This video also received thousands of views. *Id.* at 10.

On May 15, 2025, the respondent intruded on an undercover narcotics investigation and recorded undercover deputies and agents from the Drug Enforcement Agency (DEA). *Id*.  Again, the respondent asked the agents whether they worked for ICE or were cooperating with ICE. *Id.* After being informed that there were no ICE officers on the scene, the respondent livestreamed the scene including undercover officers, their vehicles, and possibly vehicle tag numbers from his Facebook page and later posted the video to his account. *Id*.

On May 17, 2025, local law enforcement reviewed another livestreamed video that the respondent posted on his Facebook page. *Id*. The video showed the respondent running a red light to catch up to a vehicle he believed had federal agents. *Id.*

On May 20, 2025, the respondent appeared at an undercover human trafficking operation. *Id*. at 11. Based on his prior encounters with law enforcement, the officers were able to easily identify the respondent. *Id*. Out of concern that his conduct might jeopardize the integrity of the investigation, law enforcement felt it necessary to leave the area while the respondent livestreamed on his Facebook page. *Id*. As officers left, the respondent followed one of the undercover vehicles while livestreaming from his phone. *Id*. In an effort to keep up with the vehicle, the respondent disregarded stop signs and sped past pedestrians, including a woman pushing a stroller. *Id*. During the livestream the respondent identified three of the vehicles as undercover units and zoomed in on their license plates. *Id.* The respondent again posted the video to his Facebook page. *Id*. On June 17, 2025, the Gwinnett County

Sheriff's Office secured arrest warrants for reckless driving, unlawful use of a telecommunication device, and failure to obey traffic signs or controls. *Id*. at 4-6.

Despite the respondent's numerous encounters and interference with law enforcement, the Immigration Judge found that the respondent is not a danger, noting the respondent's actions were related to his work as a journalist, and deferring significantly to prosecution authorities. I.J. at 4. The Immigration Judge gave less weight to the respondent's obstructionist behaviors because the respondent has not been formally charged with obstruction of law enforcement. *Id.* at footnote 3. Rather than assessing the conduct at issue, the Immigration Judge improperly placed significant weight on the presence or absence of criminal charges, overlooking the gravity of the respondent's actions.

While it is true that the respondent is a journalist and was acting in his capacity as a journalist, this does not negate the fact that the respondent's reckless behavior repeatedly undermined the operational security of multiple ongoing, serious criminal investigations that, if compromised, could have extremely detrimental and far-reaching implications for victims, officers and the public. As the Immigration Judge noted there are many journalists, including the respondent, who have reported on ICE activity, but that is not the issue in this case where the respondent's efforts have compromised investigations wholly unrelated to ICE involving human trafficking, narcotics, and gangs. He endangered the safety of undercover officers by publicly posting their identities and vehicle tag numbers. Additionally, he jeopardized the safety of bystanders, pedestrians, and other motorists by pursuing law enforcement officers while disregarding traffic signs and livestreaming while driving. Although the charges stemming from these actions were ultimately dismissed, that outcome does not negate the serious risks created by his conduct. His repeated disregard for public safety, law enforcement operations, and lawful authority reflects a pattern of behavior that continues to pose a tangible threat to the community. Moreover, his efforts have at times resulted in law enforcement

leaving the scene of an investigation; the effects on public safety more broadly remain unknown but it is not out of the realm of possibility to deduce that it results in the public being less safe.

In addition, the respondent's admission to unlawfully possessing a firearm further illustrates that he is a danger to the community. During the custody hearing, the respondent admitted that he keeps a firearm in his home. Federal law prohibits aliens that are illegally or unlawfully in the United States to possess any firearm. 18 U.S.C. § 922(g)(5), (g)(9). The Immigration Judge stated that because the respondent is not charged with that offense, "the Court will not consider it as a criminal offense." I.J. at 4. While the Immigration Judge "took into account that the gun is in the Respondent's home," he emphasized that the respondent has never been charged with a crime involving a firearm. *Id.* The Immigration Judge seemed to indicate that as long as the respondent has not been charged or convicted of a crime involving a firearm, then the underlying actions do not make him dangerous. In the context of immigration custody proceedings, this assertion lacks merit. In light of the respondent's repeated encounters with law enforcement and his indifference to even traffic laws, his unlawful possession of a firearm further demonstrates his continued disregard for the law, and a danger to the community.

CONCLUSION

The Immigration Judge did not properly consider the nature and circumstances of the respondent's criminal and unlawful actions when he found that the respondent met his burden of demonstrating he is not a danger to the community and set a $7,500 bond in this case. *Siniauskas*, 27 I&N Dec. at 208. The respondent's conduct is extensive, recent, and serious. *Guerra*, 24 I&N Dec. at 40 (stating that factors relevant to danger include how extensive, recent, and serious the alien's criminal activity is). While the Immigration Judge acknowledged that he is allowed to consider all criminal history, including charges without conviction, he did not properly do so. Rather, he essentially deferred to law enforcement and prosecuting authorities in making his determination that

the respondent does not pose a danger. Given that the respondent is a danger, he should be properly

detained without bond. *Urena*, 25 I&N Dec. 140, 141.

**WHEREFORE**, for the reasons stated above, DHS respectfully requests the Board vacate the

Immigration Judge's decision to grant the respondent release on bond and order him held without bond.

Respectfully submitted,

EMILY C REECE
Digitally signed by EMILY C
REECE
Date: 2025.08.06 12:18:49 -04'00'

_____

Emily C. Reece
Deput Chief Counsel

**GUEVARA, MARIO A**
A█████████

<div align="center">

### CERTIFICATE OF SERVICE

</div>

On August 6, 2025, I, Emily C. Reece, served a copy of this **U.S. Department of Homeland Security's Brief on Appeal** on:

<div align="center">

**Giovanni J. Diaz, Esq.**
**Diaz & Gaeta Law, LLC**
████████████████████

</div>

☐  by first-class mail, postage pre-paid, to [address of party served].

☐  by first-class mail, postage pre-paid to [address of party served], by placing into my office's receptacle designated for official "out-going" first class mail.

☐  by personally delivering a true copy thereof to the person set forth above.

☐  by electronic service, with prior consent, at the following e-mail address: [email address of party served].

☐  by eService pursuant to the Terms and Conditions agreed to between the parties.

☒  through the EOIR Courts and Appeals System (ECAS), which will automatically send service notifications to both parties that a new document has been filed.

EMILY C REECE  Digitally signed by EMILY C REECE
Date: 2025.08.06 12:19:19
-04'00'

Emily C. Reece
Deputy Chief Counsel

# Exhibit 16

************************************************************************
.com

Giovanni J. Diaz
Diaz & Gaeta Law, LLC
███████████████████████

### UNITED STATES DEPARTMENT OF JUSTICE
### EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
### BOARD OF IMMIGRATION APPEALS
### FALLS CHURCH, VIRGINIA

| | | |
|---|---|---|
| **IN THE MATTER OF:** | * | **IN BOND PROCEEDINGS** |
| | * | |
| **MARIO ALEXANDER GUEVARA** | * | **A#** ███████ |
| | * | |
| | * | **DETAINED** |
| | * | **Custody Hearing** |
| **(Respondent)** | * | |
| ———————————————— | * | |

### RESPONDENT'S FILING IN OPPOSITION TO DHS APPEAL OF IMMIGRATION COURT'S GRANT OF BOND

## RESPONDENT'S FILING IN OPPOSITION TO DHS APPEAL IN OF IMMIGRATION COURT'S GRANT OF BOND

COMES NOW Respondent, Mario Alexander Guevara, through his attorney, Giovanni Diaz, and submits this Opposition to DHS Appeal of Immigration Court's Grant of Bond.

### I.    STANDARD OF REVIEW

Respondent believes that the standard of review that applies to this appeal is the "clearly erroneous" standard. 8 C.F.R. 1003.1(d)(3)(i). as he takes dangerousness to be a factual determination. Further, whether a Respondent will pose a danger in the future, upon release, is a "predictive finding" and as such absolutely subject to the clearly erroneous standard. See: *Zhou Hua Zhu v. U.S. Att'y Gen.*, 703 F.3d 1303 (11th Cir. 2013); *Matter of Z-Z-O* 26 I&N Dec. 586, 587-588 (BIA 2015). As explained thoroughly below, the Immigration Court did not commit clear error.

The government believes the Immigration Court's decision is a matter of discretion and law, and therefore subject to de novo review. 8 C.F.R. 1003.1(d)(ii); *Matter of Chot-Tut, 29 I&N Dec. 48, 49 (BIA 2025)*. Presuming the government is correct, the case the government cites for that proposition contains the following helpful instructive observation: "An Immigration Judge has broad discretion to consider any matter he or she deems relevant when determining whether an alien's release on bond is permissible or advisable. See Matter of Guerra, 24 I&N Dec. at 39. A custody redetermination that has a "reasonable foundation" will not be disturbed on appeal. Id. at 39–40." *Matter of Chot-Tut* 29 I & N Dec. at 49. Even pursuant to de novo review, the Board must find error in the Court's decision to sustain reversal. The government has not established that the Court below committed—because there was none. The government's

2

appeal must be dismissed no matter the standard of review.

## II.    **ARGUMENT**

### A. This Board Should Dismiss the Government's Bond Appeal Because the Government's Brief on Appeal is Wholly Unpersuasive

The government's brief on appeal is unpersuasive and does not warrant reversal of the Immigration Court's decision below. In the main, the government's brief is a rote recitation of the "facts" as it views them, all of which were argued before the Court below and present in nearly all the government's filings in the context of the Motion for Stay and this appeal. Next, the government argues more than once that the Immigration Court gave "undue" weight to the fact that all the criminal charges against Mr. Guevara were dismissed but cites to no legal authority to support the view that their argument. (DHS Brief on Appeal at 3, 8). Indeed the two cases that the government cites for the proposition that the Court ought to have considered all the facts and circumstances of the alleged criminal behavior and not just the presence of a conviction, *Matter of Guerra,* 24 I&N Dec. 37 and *Matter of Siniauskas*, 27 I&N Dec. 207, (BIA 2018) were of course cited by the Immigration Court's decision for the same principle. Rather than "improper" as the government characterizes it, the Immigration Court below was correct to give more weight to the presence or absence of criminal charges than to the other alleged conduct. See: *Matter of Arreguin*, 21 I & N Dec. 38, 42 (BIA 1995). Next, the government is again simply wrong that the record contains Respondent's "admission to unlawfully possessing a firearm." (DHS Brief on Appeal, at 9). As further explained below, a party's view of the facts is not law. Finally, especially considering the extensive record evidence of Respondent's support for and collaboration with law enforcement, to combine reference to his "repeated encounters with law enforcement" and his "unlawful" possession of a

3

firearm with the allegation that he poses a "danger to the community," is borderline insulting. (DHS Brief on Appeal at 9).

### B. This Board Should Dismiss the Government's Bond Appeal Because the Immigration Court Did Not Commit Clear Error

This Board must dismiss the government's appeal of the Immigration Court's grant of bond because the government cannot meet its burden to show the Court committed clear error. See: 8 C.F.R. 1003.1(d)(3)(i), *In Re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). To reverse pursuant to this standard, the Board must find that the Immigration Court's decision is "controverted by indisputable evidence." *Wu Lin v. Lynch*, 813 F.3d 122, 126–27 (2d Cir. 2016). Neither the Board's "subjective belief" nor that the Board may have come to a different decision had it been the trier of fact is enough to overrule the Court's decision. *Id.*

### 1. *The Court's Decision Must Be Sustained Because the Court Carefully Weighed the Evidence Regarding Mr. Guevera's Alleged Dangerousness*

This is not a hard, close case. As it noted in its decision, the Court has "extensive discretion when determining whether to release a noncitizen on bond." (*Written Decision and Order of the Immigration Court on Bond*," July 11, 2025, at 2, citing: *Matter of D-J 23 I & N Dec. 572, 576* (BIA 2003)). The Immigration Court issued a long and thoroughly reasoned decision to support its bond decision. The Court was fully aware it could consider alleged criminal activity, even allegations that fall short of a conviction. *Id. (citing Matter of Siniauskas,* 27 I&N Dec. 207 (BIA 2018)). The Court below also "does not take Respondent's alleged criminal activity lightly." (*Written Decision and Order of the Immigration Court on Bond*," at 5). However, the Court appropriately

deferred to the state prosecuting authorities and their decisions to dismiss the charges against Mr. Guevera. *Id.* at 4. Next, the Court carefully considered whether Mr. Guevera unlawfully owned a firearm. After closely scrutinizing the record, the Court concluded that, despite DHS's argument, there was not evidence in the record "to consider it a criminal offense." *Id.* The Court also took note that the recently dismissed charges are the entirety of Mr. Guevera's criminal history throughout his twenty years in the United States. And, the record demonstrates he has a "history of cooperation with law enforcement." *Id.* at 5-6.

### 2. *The Court's Decision Must Be Sustained Because the Court Carefully Considered the Evidence Regarding Flight Risk*

The Court below found there is a risk of flight in Mr. Guevera's case. *Id.* "However, the Court (found) that Respondent has a plethora of reasons to remain with his family and comply with any future immigration directives and proceedings." *Id.* On the issue of flight, the Court balanced Mr. Guevera's positive and negative equities and set a reasonable bond amount specifically calibrated to ensure his appearance at future court hearings given all the facts and circumstances of the case. *Id.* at 7. The Court weighed the evidence, applied the facts to the law, wrote a thorough decision making clear its process and issued a reasonable decision. In short, the Court did exactly what we would hope all Courts in our legal system would do. And as such, the Immigration Court's decision is sound and should be reversed. The government has not and cannot bring forth any new evidence or argument before this tribunal that can show that the Court made a mistake. That the government is dissatisfied or disappointed with the Court's decision below is not evidence of clear legal error. Therefore, the Court's

decision must be sustained.

3. *The Court's Decision Must Be Sustained Because the Case Law Strongly Supports the Court's Decision on the Issue of Most Concern to the Government--Dangerousness*

The Immigration Court correctly decided that Mr. Guevara is not a danger. A respondent's criminal history is a key factor in determining dangerousness. *Matter of Arreguin*, 21 I & N Dec. 38, 42 (BIA 1995). A criminal conviction is a substantial indication of dangerousness. A police report that does not result in a conviction is not. *Id.* The Board has found on multiple occasions that arrests that ultimately wind up in dismissed charges are insufficient to support a finding of dangerousness. See e.g.: *Matter of C-A-B-*, AXXX XXX 164 (BIA Feb. 5, 2020),(dismissing DHS appeal arguing that detainee was a danger to the community. The BIA reasoned that the detainee's federal criminal charges for drug trafficking were dismissed four days after his arrest and allegations of criminal associations were conclusory and unsupported by record evidence); *Matter of L-Y-V-A-*, AXXX XXX 531 (BIA Jan. 2, 2020) (reversing the Immigration Court's finding of dangerousness based on detainee's sole arrest for child endangerment and neglect where charges were dismissed), *Matter of L-Y-V-A-*, AXXX XXX 531 (BIA Jan. 2, 2020),( reversing the Immigration Court's finding of dangerousness based on detainee's sole arrest for child endangerment and neglect where charges were dismissed.), *Matter of G-D-*, AXXX XXX 055 (BIA July 24, 2018) (dismissing DHS appeal arguing that detainee was a danger to the community where he "admitted to an incident relating to his criminal charges." Despite the DHS' contention that detainee had made such an admission, the BIA reasoned that those were the only criminal charges ever filed against him and were later dismissed.); *Matter of A-B-L-,*

6

AXXX XXX 554 (BIA Jan. 23, 2018), (reversing the Immigration

Court's finding of dangerousness, where he was detained after the police found large

quantity of stolen retail merchandise at detainee's home. The BIA reasoned that he was

not charged with any crime and that little weight should be given to conduct described in

police documents that is neither prosecuted criminally nor independently corroborated.)

Similarly, this Board must dismiss the government's appeal as all the criminal

charges against Mr. Guevera have been dismissed. Surely the government brief on appeal

will recite all the allegations in the police reports from Gwinnett and Dekalb County,

Georgia and insist that Mr. Guevara is an extreme threat to the public. The government

has been insisting on this point in nearly every one of its filings in this litigation. It

doesn't matter. The intensity of the government's objection to the Court's decision is not

a factor for the Board's appellate review. Moreover, and of note, the government can

point to no actual harm to the public or detriment to law enforcement's ability to do their

job, caused by Mr. Guevara's alleged activity.

Next, this Board should affirm the order of the Immigration Court below because

the government's assertion that Mr. Guevera "defied" and "disregarded" law enforcement

orders at a "large scale protest" is unsupported by the record. The factual record before

the Immigration Court on this point is rather that case in Dekalb County, Georgia

involving charges for Unlawful Assembly (O.C.G.A. 16-11-33), Obstruction of an

Officer (O.C.G.A. 16-20-24(a)) and Pedestrian Improperly Entering Roadway (O.C.G.A.

40-6-91(b)), had already dismissed on June 26, 2025, well before the bond hearing on

July 1, 2025. The Chief Assistant Solicitor General of Dekalb County, Georgia wrote the

following in her "Notice That No Accusation Will be Filed":

*Mr. Guevara was given multiple directives by different law enforcement agencies at different points in the interaction. Those agencies were also directing the assembled crowds. At the time of his arrest, the video evidence shows Mr. Guevara generally in compliance and does not demonstrate the intent to disregard law enforcement directives.*

(See previously filed: *List of Supporting Exhibits (s) Group "A" For: Respondent's Motion for Bond, Exhibit J*).

Upon request of the Gwinnett County prosecutor and order of the Gwinnett County Magistrate Judge, the warrants in the cases in that county were recalled on July 1, 2025. (See previously filed: *Order Recalling Warrant(s)(Citations) and Accompanying Documents, dated July 1, 2025).*

This Board should also affirm the Immigration Court's bond order below and dismiss the government appeal because the government's two- and one-half line mention of a firearm at Mr. Guevera's home in their EOIR 26 filing is wholly unpersuasive. If Mr. Guevara had ever been investigated, cited, arrested or punished for a firearms violation, plainly the government would have made that known to the Immigration Court or this Board. They have not. Also, whether a person "unlawfully" possesses a firearm in their home is a question of law to be determined by a judge or jury. Legal conclusions are determinations of courts, not the stuff of lay person testimony. In its July 11, 2025, written decision the Immigration Court rightfully concludes that "the only firm evidence established by the Department's questioning of Respondent is that there is a gun in Respondent's home that he shares with three United States citizens (USC), his brother is in the military, and Respondent fired the weapon at a firing range." (Written Decision and Order of the Immigration Judge, at 4). In its July 31, 2025 Opposition to Respondent's Motion to Lift the Stay, the government argues that the lack of a conviction on the firearm

issue is immaterial. The caselaw, of course, is entirely to the contrary. See: *supra, Matter of Arreguin*, 21 I & N Dec. 38 (BIA 1995), et. al.

In a written decision issued on July 11, 2025, the Immigration Court dealt fully and carefully with all the issues the government has raised in this litigation. (*Written Decision and Order of the Immigration Judge on Bond*). After thorough review and consideration of all the evidence and argument the Court determined Mr. Guevara is not a danger to the community. This even though the Court believed, which as noted below is no longer true, that Mr. Guevara had outstanding warrants in Gwinnett County, Georgia. *Id., at. 3.*

The Court below made a thorough, careful and reasoned decision. The government doesn't like it. That is evidence of disagreement, not of a clear judicial error.

C. CONCLUSION

THEREFORE, based on the foregoing, Mr. Guevera, by and through undersigned counsel of record Mr. Giovanni Diaz, Esq., respectfully moves this Board of Immigration Appeals to affirm the Immigration Court's bond order of July 1, 2025 granting Mr. Guevera bond in the amount of $7500.00 and dismiss the government's bond appeal and further to direct the Department of Homeland Security, by and through its legal counsel, to act in all ways in accordance with the Board's order.

Respectfully submitted,

Giovanni Diaz, Esq.
Diaz & Gaeta Law, LLC

Phone:
Fax:

9

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**BOARD OF IMMIGRATION APPEALS**
**FALLS CHURCH, VIRGINIA**

| | | |
|---|---|---|
| **IN THE MATTER OF:** | * | **IN BOND PROCEEDINGS** |
| | * | |
| **MARIO ALEXANDER GUEVARA** | * | **A#** ████████ |
| | * | |
| | * | **DETAINED** |
| | * | **Custody Hearing** |
| **(Respondent)** | * | |
| | * | |

## RESPONDENT'S FILING IN OPPOSITION TO DHS APPEAL OF IMMIGRATION COURT'S GRANT OF BOND

### ORDER

Upon receipt of Respondent's Motion, Respondent's Motion is HEREBY:

_____GRANTED                     _____DENIED.

DONE AND ORDERED this _____day of _____, 2025, at FALLS

CHURCH, VIRGINIA.

_____
Appellate Immigration Judge
FALLS CHURCH, Virginia

## CERTIFICATE OF SERVICE

**RE:    MARIO ALEXANDER GUEVARA**
**A# ▮▮▮▮▮▮▮**

      I DO HEREBY CERTIFY that on August 6, 2025, I caused to be served a copy of the foregoing Respondent's **FILING IN OPPOSITION TO DHS APPEAL OF IMMIGRATION COURT'S GRANT OF BOND**
along with supporting documents:

___X_____      This document was electronically filed through ECAS and both parties are participating in ECAS. Therefore, no separate service was completed.

_____      by placing a true copy thereof in a sealed envelope, with postage thereon fully prepaid and causing the same to be mailed by first class mail to the person at the address set forth below.

_____      by causing to be personally delivered a true copy thereof to the person at the address set forth below.

_____      by FEDERAL EXPRESS/ AIRBORNE EXPRESS to the person at the address set forth below.

_____      by certified mail-return receipt requested to the person at the address set forth below.

_____      by ICE electronic service to the person at the address set forth below:

          U.S. Department of Homeland Security
          Office of the Chief Counsel
          Stewart Detention Center

          ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 6, 2025.

          Giovanni J. Diaz, Esq.
          Attorney for Respondent