UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| Mario Alexander GUEVARA,<br><br>*Petitioner*,<br><br>v.<br><br>George Sterling, in his official capacity as Director of the Atlanta Field Office, Immigration and Customs Enforcement *et al.*,<br><br>*Respondents*. | Case No. 2:25-cv-00104-LGW-BWC |

## DECLARATION OF JOSÉ ZAMORA

I, José Zamora, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct to the best of my knowledge.

1. I am over the age of 18, am competent to give this declaration, and testify from my own personal knowledge regarding the facts in this declaration.

2. I am the Regional Director for the Americas for the Committee to Protect Journalists (CPJ). I have over 20 years of experience in journalism, communications, media, and press freedom in Central America and the United States. Prior to my work at CPJ, I previously held senior communications roles at Exile Content Studio and Univision News and led the Knight News Challenge at Knight Foundation. I also helped launch and advise the Central American

1

Independent Media Archive, which was founded to preserve and protect independent journalism in a region where reporters face escalating threats under authoritarian regimes.

3. CPJ is incorporated in the United States as a 501(c)(3) independent, nonprofit, nonpartisan organization that promotes press freedom worldwide. We defend the right of journalists to report the news safely and without fear of reprisal. For over 40 years, we have supported journalists and advanced press freedom globally. CPJ does not accept government funding.

4. We believe freedom of expression is the foundation for all other human rights.

5. Our mission is to protect the free flow of news and commentary by taking action wherever journalists are under threat.

6. Based in New York City, but with 80 staff around the world, we defend press freedom worldwide by safeguarding journalists, upholding accuracy and independence, and championing free expression as the foundation of universal freedoms. For decades, CPJ's research has tracked and provided a global snapshot of obstructions to a free press. This includes a global annual census on documenting the number of journalists imprisoned in each country, and a landmark annual report identifying the number of journalists killed in each country in retaliation for their

work. As part of this work, CPJ tracks the detention, arrest, and killings of journalists throughout the world on a daily basis.

7.  As Regional Director for the Americas, I lead CPJ's press freedom efforts across the region, setting strategy and supporting journalists at risk, with a focus on advancing our mission to defend the right to report freely and without fear of reprisal.

8.  Mario Guevara is a widely-known and respected Hispanic journalist who lives and works in Georgia. CPJ became aware of Guevara's initial arrest on June 14, 2025, through our regular monitoring of reporting-related detentions of journalists.

9.  Mr. Guevara is originally from El Salvador, where he worked for *La Prensa Gráfica*, one of the two largest national newspapers. Based on decades of tracking press freedom violations, CPJ has documented many journalists reporting on political issues in El Salvador who have been targeted, harassed, detained, and subjected to violence. After coming to the United States in 2004, fleeing violence and harassment for his journalism in El Salvador, he worked as a reporter for Georgia's largest Spanish-language newspaper *Mundo Hispanico*. In 2021, he received a Southeast Regional Emmy Award for his reporting. In 2024, Mr. Guevara started his own digital Spanish-language news organization MG News, which

currently has over 110,000 followers on Facebook. Meanwhile, over 780,000 people follow "Mario Guevara (for MG News)" on Facebook.

10. An important aspect of Mr. Guevara's reporting for MG News is filming and publishing video, including livestream video, of law enforcement officers carrying out their official duties in public. Covering and recording news events in real time is part and parcel for journalists. Livestreaming and recording law enforcement activities, at a safe distance and without interfering, is a standard practice for journalists. As journalists go about gathering the facts on the scene and conveying vital information as it happens, to their audiences, they are performing a public service of keeping the public informed about developments that may affect them and that may be factored into their decision making. From filming the police response on September 11, 2001, to Hurricane Katrina, to safely documenting law enforcement responses to fires or local emergencies, live coverage is the norm. Nightly broadcast news consists of reporters speaking live to camera about events as they unfold. Providing real-time updates on social media platforms such as Facebook and X (formerly Twitter) is a tool of the trade. Real-time coverage and documentation are a means of credibly and immediately providing breaking, frontline news to the public, and can also be later used for analysis and use in non-live formats.

11. Mr. Guevara's coverage of law enforcement is unique in that he reports not only on headline-worthy stories like the ICE detention of Georgia college student Ximena Arias-Cristobal, but also on the day-to-day police happenings in his local area, like ICE arrests at Home Depot. His viewers have no alternative news source for this very localized type of information, which is top of mind for many in the Hispanic community who reasonably fear being targeted for arrest and deportation.

12. Based on reviewing videos posted on MG News' and Mr. Guevara's Facebook accounts, it is apparent that Mr. Guevara follows standard reporting practices when recording and reporting. He documents and narrates activities occurring in plain view, and in doing so helps ensure accountability of law enforcement actions, public awareness of how and when law enforcement is taking action, and creates a public record of such actions. Specifically in the videos that show the events leading to Mr. Guevara's detention, it appears that Mr. Guevara did not physically or verbally interfere with law enforcement action and maintained a safe distance from officers.

13. It is on account of Mr. Guevara's local reporting and livestreaming that he is currently being held in ICE custody in Folkston, Georgia.

14. According to arguments made in an immigration bond hearing on July 1, 2025, which CPJ remotely attended, the United States Government opposes Mr. Guevara's release on bond primarily on the grounds that his reporting by means of

recording and livestreaming the public activities of law enforcement presents a safety threat. In other words, the Government makes no pretext about the fact that they are continuing to detain Mr. Guevara because of his journalism.

15.     This argument is deeply disturbing to CPJ. It is premised on the inter-related notions that practicing journalism is dangerous in the eyes of the Government, and that people do not have the right to observe what the police and other law enforcement officers are doing in their own community in open and in public places. These notions are contrary to the First Amendment, and to international practice and jurisprudence in respect of press freedom and access to information.

16.     A central tenet of a free society—as distinguished from a police state—is the freedom of journalists to report what they observe while traveling or standing in publicly accessible, outdoor spaces like streets, sidewalks, and parking lots. The Government's objection to such a basic level of information gathering cannot be reconciled with the United States' constitutional guarantees of free speech and free press.

17.     Suppressing basic news gathering is a defining feature of repressive regimes, where independent reporting is treated as a threat. In such environments, free speech and free press are absent, and law enforcement often acts without

oversight. The result is a climate where truth is controlled, and accountability is systematically undermined.

18. Based on our extensive tracking of detained journalists, I believe that Mr. Guevara is the only journalist in the United States to be jailed currently because of his reporting. The U.S. Press Freedom Tracker, led by the Freedom of the Press Foundation and co-founded by CPJ, compiles press freedom violations in real time. At the time of filing, Mario Guevara is the only journalist listed as in custody in relation to his journalism. Indeed, since it began in 1992, CPJ's annual census of imprisoned journalists—which counts the number of journalists in prison in every country on December 1 each year—has only included one journalist in the United States, in 2013. The rarity and significance of Mr. Guevara's ongoing imprisonment, especially in light of the government's justification for it, cannot be overstated.

19. Mr. Guevara's continuing detention, which separates him from his family and his work, is both a punishing hardship and a prior restraint or gag on his future reporting. So long as he is detained, he cannot record or livestream law enforcement officers doing their work in public.

20. Mr. Guevara is a chilling example for other journalists, particularly but not exclusively for non-citizen journalists, who report on ICE or other law enforcement agencies, or are thinking of doing so. His detention, with no clear end in sight unless his habeas petition is granted, sends a sharply deterrent message to

others who want to share information, including recorded images, about what public officials do in public.

21. The longer Mr. Guevara's detention continues, the more it erodes the fundamental rights of speech and press, not only for him, but for all journalists reporting, or wanting to report, on government officials' public activities, both because the harms get worse over time and because the longer he is detained, the more it sends the message that such detention is permissible, and therefore possible or even likely for others.

22. If the government is allowed to detain Mr. Guevara on this basis, it sends a message to all journalists and reporters that they, too, could be detained in an effort to stop them from reporting or otherwise shining a light on government activities. The detention of journalists in retaliation for their reporting is recognized as a hallmark of repression, with a demonstrable chilling effect for press freedom and other journalists. Indeed, it is such a strong indicator of a repressive and unfree media environment that it is one of only three indicators that CPJ tracks annually (the other two are the number of journalists killed and an impunity index that measures the number of unsolved murders in proportion to a country's population).

23. If the United States government was to be permitted to detain journalists because of their livestreaming or recording of law enforcement activity, it would signal a significant erosion of press freedom globally.

24. On behalf of CPJ, I strongly urge the Court to uphold the fundamental rights of free speech and press, and order Mr. Guevara released on bond.

Executed this 20th day of August, 2025.

                                                  _____
                                                      José Zamora