# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# BRUNSWICK DIVISION

| | |
|---|---|
| MARIO ALEXANDER GUEVARA, | ) |
| Petitioner, | ) |
| v. | ) Civil Action No. 2:25-cv-104 |
| WARDEN, FOLKSTON ICE PROCESSING CENTER, et al., | ) |
| Respondents. | ) |

## RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION

Petitioner Mario Guevara filed a habeas corpus action under 28 U.S.C. § 2241, which allows detainees and prisoners to challenge custody that violates the Constitution or laws of the United States. He also filed a Motion for Preliminary Injunction, Doc. 2, in which he asks this Court to overlook the jurisdictional flaws with his underlying Petition and substitute its judgment for that of the Board of Immigration Appeals ("BIA"). Petitioner is unable to show the elements necessary to receive a preliminary injunction; most notably, he is unlikely to succeed on the merits of his habeas corpus claim, which is the only claim he has raised. Therefore, this Court should deny his Motion for Preliminary Injunction.[1]

---

[1] Petitioner's Motion requests, in the alternative, a temporary restraining order ("TRO"). Doc. 2. Because Petitioners gave notice to Respondents and their requested relief exceeds the 14 days allowed for in a TRO, this Court should treat this Motion as a request for a preliminary injunction. *See, e.g.*, *Levine v. Comcoa Ltd.*, 70 F.3d 1191, 1193 (11th Cir. 1995); *see also United States v. State of Ala.*, 791 F.2d 1450, 1458 (11th Cir. 1986) (allowing conversion of TRO into preliminary injunction when opposing party has notice); *Benavides v. Gartland*, No. 5:20-cv-46, 2020 WL 1914916, at *1 n.1 (S.D. Ga. Apr. 18, 2020) (Wood, J.) (same). The standard for review is the same. *See, e.g.*, *Ewe Grp., Inc. v. Bread Store, LLC*, 54 F. Supp. 3d 1343, 1347 (N.D. Ga. 2014).

1

# BACKGROUND

Petitioner is a citizen of El Salvador. Doc. 1, ¶ 18. He entered the United States in 2004. *Id.*, ¶ 18. In 2012, an immigration judge denied his application for relief from removal, and he appealed that decision. *Id.*, ¶ 20. While his appeal was pending, Petitioner filed a joint motion with the Department of Homeland Security ("DHS") to administratively close the appeal. *Id.*, ¶ 20; Doc. 2-2 at 5. The Board of Immigration Appeals ("BIA") granted the motion. *Id.* However, the BIA order granting the motion also stated that the proceedings could be reinstated by written request. *Id.*

On June 14, 2025, Petitioner was arrested by local law enforcement officers in DeKalb County, Georgia, and charged with obstruction of a law enforcement officer, unlawful assembly, and being a pedestrian on or along the roadway. Doc. 2-3, ¶ 3; *see also* Doc. 2-2 at 9. After Petitioner's arrest, ICE lodged a detainer against him. Doc. 1, ¶ 43.

When Petitioner was released from the DeKalb County Jail, ICE took him into custody. Doc. 1, ¶ 44. He is currently detained at the ICE Processing Center in Folkston, Georgia. *Id.*, ¶ 9. He is detained pursuant to the Immigration and Nationality Act ("INA") § 236(a), which is codified at 8 U.S.C. § 1226(a). Respondents' Exhibit 1, Declaration of Wanick Ambroise ("Ambroise Dec."), ¶ 3; Doc. 2-2 at 29.

On July 1, 2025, an immigration judge held a custody redetermination hearing. Doc. 2-2 at 28. Petitioner had already conceded removability from the United States in the prior proceedings. *Id.* at 28 n.1. The judge found that Petitioner (procedurally

referred to in his decision as "Respondent") was not a danger to the community nor a significant flight risk and granted bond in the amount of $7,500.00. *Id.* at 28.

Two days after the bond redetermination hearing, DHS filed a motion with the BIA for an emergency stay of the immigration judge's bond order. Doc. 2-2 at 129. The BIA granted the stay of the bond order on July 7, 2025. *Id.* DHS and Petitioner have continued to litigate the bond issue before the BIA; briefs were filed by the parties as recently as August 6, 2025. *See, e.g.,* Doc. 2-2 at 180. Petitioner's underlying removal case is pending separately with the BIA; DHS filed a motion to recalendar the appeal after Petitioner entered ICE custody. Ambroise Dec., ¶ 12.

On August 20, 2025, Petitioner filed a habeas corpus petition seeking release on bond. Doc. 1 at 29. He did not challenge any other action from Respondents apart from his release on bond. *Id.* He did not seek money damages. *Id.*

On August 21, 2025, Petitioner filed the Motion for Preliminary Injunction at issue here. Doc. 2. On August 22, 2025, he served the United States Attorney's Office for the Southern District of Georgia. Counsel for Respondents is unaware of what additional steps Petitioner may have taken to effect service pursuant to Rule 4(i)(2) of the Federal Rules of Civil Procedure.

## **PETITIONER'S ALLEGATIONS**

Petitioner's habeas corpus petition was filed pursuant to 28 U.S.C. § 2241. Doc. 1, ¶ 15. The "sole function" of habeas is to seek release; "it cannot be used properly for any other purpose." *Pierre v. United States*, 525 F.2d 933, 936 (5th Cir. 1976). The Petition presents two claims: First, Petitioner alleges that his detention violates his

protected speech rights and press activity under the First Amendment. Doc. 1, ¶¶ 110–113. Second, he alleges that his detention violates his right to due process under the Fifth Amendment. *Id.*, ¶¶ 115–119. He asserts that these constitutional violations justify his immediate release on bond. *Id.* at 29.

In his Motion for Preliminary Injunction, Petitioner argues that he is likely to succeed on the merits of his habeas claim. Doc. 2-1 at 11. He reiterates his position that his detention violates his First and Fifth Amendment rights. *Id.* at 11-23. He also argues that he is suffering irreparable harm, *id.* at 24, and that his release is in the public interest, *id.* at 25. Petitioner does not address this Court's jurisdiction to review the BIA's issuance of the stay.

## ARGUMENT

Petitioner's Motion for Preliminary Injunction is couched in terms of the First and Fifth Amendments. One might read it and believe Petitioner had filed a civil action pursuant to 42 U.S.C. § 1983 (or *Bivens*), alleging that various municipal, state, and/or federal actors individually violated his constitutional rights. But Petitioner has filed no such action. Instead, he has filed only a habeas corpus petition under 28 U.S.C. § 2241. The violations of which Petitioner complains are not properly raised under § 2241, and the relief he seeks in his Motion for Preliminary Injunction is simply not available under § 2241. Therefore, he is unlikely to succeed on the merits of his claim. For this and the other reasons outlined below, this Court should deny this Motion.

## I.   A preliminary injunction is an extraordinary remedy.

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Because it is an extraordinary and drastic remedy, "its grant is the exception rather than the rule." *United States v. Lambert*, 695 F.2d 536, 539 (11th Cir. 1983). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *see also Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1284 (11th Cir. 1990) (noting that the chief function of a preliminary injunction is "to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated.").

The moving party bears the burden to establish the need for a preliminary injunction. To grant such "extraordinary relief," the court must find that the movant has established four essential elements: "(1) a likelihood of success on the merits of the overall case; (2) irreparable injury; (3) the threatened injury outweighs the harm the preliminary injunction would cause the other litigants; and (4) the preliminary injunction would not be averse to the public interest." *Benavides v. Gartland*, No. 5:20-cv-46, 2020 WL 3839938, at *4 (S.D. Ga. July 8, 2020) (Wood, J.). A preliminary injunction should not be granted "unless the movant clearly established the burden of persuasion as to all four elements." *Horton v. City of Augustine, Fla.*, 272 F.3d 1318, 1326 (11th Cir. 2001) (quotation marks omitted). However, "where the government is

the party opposing the preliminary injunction, its interest and harm merge with the public interest." *Swain v. Junior*, 958 F.3d 1081, 1091 (11th Cir. 2020).

When a party seeks to change the status quo through an injunction, as is the case here, the injunction is a mandatory injunction. *See, e.g., Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484 (1996) (outlining difference between mandatory and "prohibitory" injunctions). Mandatory injunctions are "particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party." *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976); *see also Fox v. City of W. Palm Beach*, 383 F.2d 189, 194 (5th Cir. 1967) ("There is no question but that mandatory injunctions are to be sparingly issued and upon a strong showing of necessity and upon equitable grounds which are clearly apparent."); *Wachovia Ins. Servs., Inc. v. Paddison*, No. 4:06-cv-83, 2006 WL 8435308, at *2 (S.D. Ga. Apr. 6, 2006) (Edenfield, J.) (noting that mandatory injunctions are subject to heightened scrutiny).

Here, this Court should construe Petitioner's Motion as seeking a mandatory injunction, since Petitioner seeks a change in the current status quo—he seeks release, and he is currently detained. Therefore, the Court should give Petitioner's request heightened scrutiny and require him to meet that burden.

**II.    Petitioner is not likely to succeed on the merits of his habeas corpus claim, which is the only basis for relief in his Petition.**

Petitioner challenges his detention during removal proceedings under habeas corpus, 28 U.S.C. § 2241. Doc. 1, ¶ 1, 15. He is not likely to succeed for several independent reasons.

6

### A. *Petitioner's habeas corpus claim is precluded by 8 U.S.C. § 1226(e).*

First, the decision to detain an alien during removal is at the discretion of the Attorney General. Congress vested the Attorney General with substantial discretion to determine whether to detain an alien during the pendency of removal proceedings. *See* 8 U.S.C. § 1226(a)(2). At the same time, Congress made clear that such decisions are not reviewable in court. Under 8 U.S.C. § 1226(e):

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

Although the Supreme Court noted in *Demore v. Kim*, 538 U.S. 510, 517 (2003), that an earlier version of § 1226(e) did not explicitly bar habeas review, Congress subsequently enacted 8 U.S.C. § 1252(a)(5), which clarified that all references within Chapter 12 of Title 8 to "judicial review" or "jurisdiction to review" include habeas actions brought under 28 U.S.C. § 2241. In other words, "[t]he Attorney General's decision regarding detention, bond, or parole is not reviewable by the courts." *Sopo v. U.S. Attorney General*, 825 F.3d 1199, 1208 (11th Cir. 2016), *vacated as moot by* 890 F.3d 952 (11th Cir. 2018); *see also Dorley v. Normand*, No. 5:22-cv-62, 2023 WL 3620760, at *3 (S.D. Ga. Apr. 3, 2023) (Cheesbro, J.) (habeas petitioner could not challenge discretionary bond decision of an immigration judge made pursuant to 8 U.S.C. § 1226(a)), *report and recommendation adopted,* 2023 WL 3174227 (S.D. Ga. May 1, 2023); *Aham v. Gartland*, No. 5:19-cv-46, 2020 WL 806929, at *3 (S.D. Ga. Jan. 29, 2020) (Cheesbro, J.) ("The immigration judge's decision to deny Aham bond

7

was based on his finding, after two hearings, that Aham did not establish he is not a danger to society or a flight risk was within the discretion afforded under § 1226(a). Thus, this Court cannot review this decision under § 1226(e).") (footnote omitted), *report and recommendation adopted,* 2020 WL 821005 (S.D. Ga. Feb. 18, 2020).

Here, Petitioner seeks to use § 2241 to challenge the discretionary decision to detain him. As an initial matter, he cannot challenge the decision of an immigration judge denying bond; the judge in this matter granted bond. Doc. 2-2 at 28. Logically, he must instead be challenging the decision of the BIA to stay the immigration judge's order granting bond. *See id.* at 129. But Petitioner cites no authority that would allow this Court to assume jurisdiction over the stay order and substitute its discretion for that of the BIA. Further, § 1226(e) forbids it. Section 2241 does not provide an avenue for this Court to review the detention decisions of the immigration courts. *Dorley*, 2023 WL 3620760, at *3. Therefore, Petitioner is not likely to succeed on this claim.

### B. Petitioner's habeas corpus claim is precluded by 8 U.S.C. § 1252(g).

The plain language of 8 U.S.C. § 1252(g), as well as its consistent interpretation by the Eleventh Circuit, also forecloses Petitioner's habeas corpus claim.

Congress also stripped federal district courts of jurisdiction over § 2241 challenges to an alien's detention in 8 U.S.C. § 1252(g). That section reads:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by

> the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).

Calling § 1252(g) "unambiguous," the Eleventh Circuit held that this statute "bars federal courts' subject-matter jurisdiction over any claim for which the 'decision or action' of the Attorney General (usually acting through subordinates) to commence proceedings, adjudicate cases, or execute removal orders is the basis of the claim." *Gupta v. McGahey*, 709 F.3d 1062, 1065 (11th Cir. 2013), *reh'g denied*, 737 F.3d 694 (11th Cir. 2013), *cert. denied*, 573 U.S. 931. The Court of Appeals interpreted the scope of "commencing proceedings" to include "[s]ecuring an alien while awaiting a removal determination." *Id.*

A subsequent panel made *Gupta*'s holding more plainly applicable to the facts of this Petition, finding that "ICE's decision to take [a noncitizen] into custody and to detain him during his removal proceedings . . . w[as] closely connected to the decision to commence proceedings, and thus w[as] immune from our review." *Alvarez v. U.S. Immigr. & Customs Enf't*, 818 F.3d 1194, 1203 (11th Cir. 2016). The Eleventh Circuit found that § 1252(g) barred Alvarez's claim, even though he alleged his detention violated the Fourth and Fifth Amendments because government officials made knowing misrepresentations to detain him. *Id.* at 1203–04; *see also Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 488 (1999) ("[A]n alien unlawfully in this country has no constitutional right to assert selective enforcement as a defense against his deportation."). "When asking if a claim is barred by § 1252(g), courts must focus on the action being challenged." *Canal A Media Holding, LLC v. United States*

9

*Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1257–58 (11th Cir. 2020). Efforts to challenge the refusal of immigration officials to exercise favorable discretion also fall under § 1252(g)'s jurisdictional provision. *Alvarez*, 818 F.3d at 1205.

Here, Petitioner has raised a claim explicitly precluded by 8 U.S.C. § 1252(g). Relying on 28 U.S.C. §§ 1651[2] and 2241, he challenges a specific action—securing him during removal proceedings—that the Eleventh Circuit has ruled falls within the scope of "commencing proceedings" referenced in § 1252(g). *See Gupta*, 709 F.3d at 1065. Securing Petitioner for removal is just that sort of decision. *Id.* Petitioner's challenge constitutes an attempt to evade the procedurally proper decision of the BIA regarding his bond determination. He has further not pointed to any authority that would allow this Court to assume jurisdiction over the BIA's Stay Order and substitute its discretion for that of the BIA.

In short, Petitioner's habeas corpus claim is precluded by statute, and this Court lacks jurisdiction to entertain it. Without jurisdiction, the Petition is certainly not likely to succeed on the merits.

### C. Petitioner's allegations fail to establish a First Amendment violation.

Even if this Court determines to evaluate Petitioner's habeas claims within the context of his Motion for Preliminary Injunction, the Motion should still be denied. Petitioner must show a likelihood of success on the merits, which he has failed to do even on his own terms. His Motion contains numerous unsupported allegations, most

---

[2] 28 U.S.C. § 1651 is the All Writs Act, which the Petition mentions only in passing. *See* Doc. 1, ¶ 16. As noted, challenges arising under 28 U.S.C. § 1651 are also explicitly excluded from federal court jurisdiction along with § 2241. *See* 8 U.S.C. § 1252(g).

notably in the area of establishing a causal connection between his detention and his allegations of First Amendment retaliation.

As an initial matter, many of Petitioner's allegations are unsupported. He argues that "**by the Government's own account**, it has continued to detain Mr. Guevara to ensure that he does not livestream, record, or publish videos of law enforcement officers performing their duties in public—because the Government believes these constitutionally-protected activities constitute a danger to the community." Doc. 2-1 at 15 (emphasis added). But no citation is provided to support this claim. *See* L.R. 7.1(b) ("Every factual assertion in a motion, response, or brief shall be supported by a citation to the pertinent page in the existing record or in any affidavit, discovery material, or other evidence filed with the motion."). Petitioner also asserts that, "**per the Government**, Mr. Guevara must remain in detention so that he does not engage in such journalistic activities going forward." Doc. 2-1 at 15 (emphasis added). Again, no citations are provided to establish that this is "the Government's" position. This Court should disregard claims not supported by citation to the record.

Further undermining Petitioner's claims is his reliance on inapposite case law. Petitioner has filed a petition for habeas corpus. Doc. 1 at 1, 8, 15. But his Motion mentions habeas corpus only once and in passing. *See* Doc. 2-1 at 2. Instead, his Motion for Preliminary Injunction presents a First Amendment claim as if arising under 42 U.S.C. § 1983. When outlining the elements of a First Amendment retaliation claim, Petitioner cites only cases that involve claims arising under 42

11

U.S.C. § 1983—and none involving First Amendment claims brought under habeas corpus. *See* Doc. 2-1 at 17. Petitioner argues that he "readily meets these elements," *id.*, but given that those elements apply to an entirely different species of civil action than the action initiating this case, it is hard see how meeting those elements is relevant.

Petitioner also fails to establish any causation between his current detention and any First Amendment activity. He appears to argue that, because he worked as a journalist and because he is now detained, the two facts must be connected. But Petitioner's initial arrest—which he argues occurred while he was reporting on a protest, Doc. 1, ¶ 3—was by local law enforcement, not federal agents. Doc. 2-1 at 5. ICE did not take him into custody until after a bond determination was made by a state court judge. *Id.* There is therefore no basis to infer that ICE took Petitioner into custody in order to violate his First Amendment rights. Indeed, the basis of his current detention is his removal proceedings, not any First Amendment activities. Ambroise Dec., ¶ 3 (establishing Petitioner is detained pursuant to 8 U.S.C. § 1226(a)). Petitioner does not dispute that he is removable. Doc. 2-2 at 28. He does not dispute that Congress has granted to the Attorney General the discretion to detain aliens pending a decision on removability. *See* 8 U.S.C. § 1226(a). Petitioner fails to connect either of these undisputed facts to the alleged violation of his First Amendment rights. Even more starkly, Petitioner offers no argument to show that the BIA's decision entering the stay—the decision that prevented Petitioner from

12

posting the bond ordered by the immigration judge—had any basis in First Amendment retaliation whatsoever.

Petitioner attempts to raise a § 1983-style First Amendment claim without filing a § 1983 action (or a *Bivens* action). He fails to point to evidence that his current detention was caused by retaliatory attacks on his First Amendment rights by federal officials and instead focuses on the conduct of local law enforcement. Therefore, this Court should find that he is not likely to succeed on his First Amendment claim.

### D. Petitioner is not likely to succeed on his due process claim.

Petitioner is also not likely to be able to establish any due process violation related to his detention. He appears to argue that the mere fact of his detention constitutes a due process violation. *See* Doc. 2-1 at 22–23; *compare* Doc. 1, ¶¶ 118–19. But he provides no specifics; in fact, Petitioner's Motion does not identify any form of due process to which he is entitled that he has been denied.

Detention alone is not enough to show a due process violation. The detention of an alien pending removal proceedings is insufficient to establish a constitutional claim, since the Supreme Court "has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523. Some process is certainly required: "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018). If an alien's circumstances materially change, he or she can request additional review. 8 C.F.R. § 1003.19(e). An appeal process is also provided for. *Id.* § 1003.19(f).

Here, Petitioner has already received the due process to which he is entitled. He received a bond hearing at the outset of his detention by ICE authorities. Doc. 2-2 at 28. The decision of the immigration judge on bond is under further review. *See generally* Doc. 2-2 (containing both sides' briefing on the bond appeal). His removal is also receiving review by the BIA. Ambroise Dec., ¶ 12. Petitioner may seek redetermination of his bond should his circumstances change. *Id.* at 31 n.5. The entire structure of Petitioner's detention establishes that due process has been provided: "The fact that [Petitioner] was given a bond hearing, and redetermination of his initial bond determination remains available under 8 C.F.R. § 1003.19(e) undermines any due process claim [Petitioner] could assert." *See Duncan v. Gartland*, No. 5:19-cv-45, 2020 WL 812962, at *3 (S.D. Ga. Jan. 29, 2020) (Cheesbro, J.), *report and recommendation adopted*, 2020 WL 820288 (S.D. Ga. Feb. 18, 2020).

Because Petitioner has been provided due process and has failed to identify any specific failure of due process, he is not likely to succeed on his due process claim.

### E. *Petitioner's complaints about the conditions of his confinement are not relevant to the likelihood of his success.*

A habeas petition allows a prisoner to challenge the legality or duration of his confinement. *Gomez v. United States*, 899 F.2d 1124, 1126-27 (11th Cir. 1990). It does not allow him to challenge anything else: "its sole function is to grant relief from unlawful imprisonment or custody and it cannot be used properly for any other purpose." *Pierre*, 525 F.2d at 935–36. In this circuit, the rule "is that any challenge to the Fact or Duration of a prisoner's confinement is properly treated as a habeas corpus matter, whereas challenges to conditions of confinement may proceed under §

14

1983 . . . ." *Johnson v. Hardy*, 601 F.2d 172, 174 (5th Cir. 1979). This standard limitation on habeas petitions has been routinely echoed by this Court. *See, e.g.*, *Hylander v. Warden, FCI Jesup*, No. 2:22-cv-44, 2023 WL 2169920, at *2 (S.D. Ga. Jan. 25, 2023) (Cheesbro, J.) ("He contests the conditions of his confinement, and such claims are not cognizable under § 2241."), *report and recommendation adopted,* 2023 WL 2167402 (S.D. Ga. Feb. 22, 2023); *see also Archilla v. Witte*, No. 4:20-cv-596, 2020 WL 2513648 (N.D. Ala. May 15, 2020) (finding that courts which allow habeas challenges to the conditions of confinement "simply ignore the plain language of the statute and centuries of habeas jurisprudence."). Nor is the Eleventh Circuit in the minority on this issue. *See Wilborn v. Mansukhani*, 795 F. App'x 157, 163 (4th Cir. 2019) ("Seven of the ten circuits that have addressed the issue in a published decision have concluded that claims challenging the conditions of confinement cannot be brought in a habeas petition." (citing cases)).

Here, Petitioner includes complaints about his current conditions of confinement to support his argument that he should receive injunctive relief. *See, e.g.*, Doc. 2-2 at 9. These allegations are not the proper basis for a habeas corpus claim. Since they cannot establish habeas relief, they fail to establish any likelihood of success on the merits and should be disregarded.

**III.  Petitioner has not established irreparable injury.**

The parties do not dispute that that "likelihood of success on the merits" is the most important criterion. *See* Doc. 2-1 at 11. Respondents submit that this Court can—and should—end the inquiry by ruling in Respondents' favor on that issue. But

15

even if the Court examines the remaining elements, the Motion for Preliminary Injunction should still be denied.

Irreparable injury must be specific: "The injury must be neither remote nor speculative, but actual and imminent." *Ne. Fla. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) (internal quotation marks and citation omitted). Merely showing a "possibility" of irreparable harm is insufficient. *Winter*, 555 U.S. at 22. "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.*

Here, Petitioner has failed to meet his burden to show more than a possibility of irreparable injury absent a permanent injunction. He argues that his loss of liberty, on its own, constitutes an irreparable injury, but the case he cites involves criminal sentencing, not immigration detention or preliminary injunctions. Doc. 2-1 at 24 (citing *Rosales-Mireles v. United States*, 585 U.S. 129, 139 (2018)). Petitioner references separation from his family, Doc. 2-1 at 24, but this is no more than the same harm that any detained person might face. His Motion states that his "business ha[s] struggled financially since his detention." *Id.* But the only factual support for this claim is Petitioner's own declaration, in which he states vaguely that his business is "generating less income" with "more and more costs." Doc. 2-4, ¶ 35. No specifics are provided. Further, there is no indication that an injunction would remedy this

alleged harm—in other words, no evidence that an order granting bond to Petitioner would result in an increase in business income and a decrease in costs.

Therefore, Petitioner has failed to establish irreparable harm.

## IV. Petitioner has failed to show that the public interest weighs in favor of granting an injunction.

As argued above, "where the government is the party opposing the preliminary injunction, its interest and harm merge with the public interest." *Swain*, 958 F.3d 1091 (11th Cir. 2020). For several reasons, Petitioner has not shown that the public interest weighs in favor of granting an injunction.

First, Petitioner fails to support his claim with facts specific to his situation. He asserts, again without factual support, that "the Government" is seeking Petitioner's detention "because of his livestreaming." Doc. 2-1 at 25. He has offered no evidence to substantiate that Respondents are doing so. Nor is there any reasonable dispute that Petitioner's detention is in fact due to his removal proceedings. Ambroise Dec., ¶ 3. (citing INA § 236(a)(1)).

Second, Respondents submit that the public interest lies in ensuring that aliens facing removal proceed through established avenues for relief rather than overwhelming the court system. Such is the plain intent of Congress, and the Supreme Court has counseled that courts sitting in equity should not override the policy choices of Congress articulated in statutes. *See United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 497 (2001) (holding no medical necessity exception to marijuana manufacture and distribution). An adverse decision in this case would also negatively impact the public interest by jeopardizing "the orderly and

17

efficient administration of this country's immigration laws." *See Sasso v. Milhollan*, 735 F. Supp. 1045, 1049 (S.D. Fla. 1990); *see also Coal. for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997) ("[I]t is clear that a state suffers irreparable injury whenever an enactment of its people or their representatives is enjoined."). While it is "always in the public interest to protect constitutional rights," if, as here, Petitioner has not shown a likelihood of success on the merits of that claim, that presumptive public interest evaporates. *See Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005).

Thus, Petitioner has not established that the public interest weighs in favor of an injunction.

## V.     If the Court issues an injunction, it should require Petitioner to give security pursuant to Rule 65(c).

Rule 65(c) of the Federal Rules of Civil Procedure states that a court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Should the Court grant an injunction to Petitioner, Respondents respectfully request, pursuant to executive policy, that this Court require Petitioner to provide an appropriate security amount to ensure that any damages sustained by the Respondents are paid. *See Presidential Memorandum, Ensuring the Enforcement of Federal Rule of Civil Procedure 65(c)*, 2025 WL 762840 (March 11, 2025). Respondents leave the amount of such security to the discretion of the Court. *See BellSouth Telecommunications, Inc. v. MCIMetro*

*Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005) (amount of security required by Rule 65(c) is a matter within the discretion of the trial court).

## CONCLUSION

This Court should deny Petitioner's Motion for Preliminary Injunction.

Respectfully submitted, this 26th day of August, 2025,

                        MARGARET E. HEAP
                        UNITED STATES ATTORNEY

                        */s/ O. Woelke Leithart*
                        Idaho Bar No. 9257
                        Assistant United States Attorney
                        U.S. Attorney's Office
                        Post Office Box 8970
                        Savannah, Georgia 31412
                        Telephone: (912) 652-4422
                        E-mail: Woelke.Leithart@usdoj.gov