UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

Mario Alexander GUEVARA,

    *Petitioner*,

v.

LaDeon FRANCIS, in his official capacity as Director of the Atlanta Field Office, Immigration and Customs Enforcement *et al.*,

    *Respondents*.

Case No. 25–cv–86

**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

Petitioner Guevara submits this supplemental brief in support of his preliminary injunction motion, addressing the three issues the Court identified at the August 27 hearing: (1) the impact of administrative closure of removal proceedings on Mr. Guevara's detention; (2) whether 8 U.S.C. §§ 1226(e) and 1252(g) bar this Court's review; and (3) whether Mr. Guevara must exhaust administrative remedies. Tr. of Oral Arg. at 35:19–24, *Guevara v. Francis*, Aug. 27, 2025 ("Tr.").

## BACKGROUND

### I.    MR. GUEVARA'S IMMIGRATION CASE TIMELINE

Mr. Guevara lawfully entered the United States in 2004. Guevara Decl. ¶ 2, ECF No. 2-4. He affirmatively applied for relief from removal in 2007. *Id*. ¶ 4. In June 2012, the Immigration Judge ("IJ") denied Mr. Guevara's application but granted him voluntary departure, following which he appealed to the Board of Immigration Appeals ("BIA"). Ambroise Decl. ¶¶ 6-7, ECF No. 24-1. In December 2012, the BIA granted a joint motion by Mr. Guevara and the Government to administratively close his case. Kim Decl. Ex. 1, ECF No. 2-2 ("Ex. 1"). Until this summer, the Government has not sought to re-open his case. Guevara Decl. ¶ 4.

On June 18, 2025, ICE took Mr. Guevara into custody following his arrest while documenting a protest. Calmes Decl. ¶¶ 3, 5, ECF No. 2-3. On or about June 27, DHS filed a

1

motion to recalendar Mr. Guevara's appeal with the BIA. Calmes Supp. Decl. ¶¶ 3–5. On July 9, Mr. Guevara filed a non-opposition to recalendaring and a motion to remand to the IJ so that he may apply for adjustment of status, *id*. ¶ 6, given that he has a pending I-130 petition filed by his U.S. citizen son and is prima facie eligible to adjust status upon approval, *id*. ¶10. To date, the motion to recalendar remains pending and thus his removal proceedings remain administratively closed.

On June 30, 2025, Mr. Guevara filed for bond. *See* Kim Decl. Ex. 6 at 1 ("Ex. 6"). On July 1, the IJ held a hearing and granted bond, Kim Decl. Ex. 5, memorialized in a Written Decision and Order on July 11, Ex. 6. On July 3, the Government appealed the bond decision, Kim Decl. Ex. 9 ("Ex. 9"), and sought an emergency stay, Kim Decl. Ex. 10 ("Ex. 10"), which the BIA granted on July 7. Kim Decl. Ex. 11. On July 12, Mr. Guevara sought summary affirmance of the bond order, Kim Decl. Ex. 12, and, on July 15, also sought to lift the stay, Kim Decl. Ex. 13. On July 31, the Government opposed his stay motion. Kim Decl. Ex. 14 ("Ex. 14"). On August 6, it filed its appeal brief, Kim Decl. Ex. 15 ("Ex. 15"), and Mr. Guevara opposed, Kim Decl. Ex. 16.

## II.   THE GOVERNMENT'S STATED REASONS FOR DETAINING MR. GUEVARA

Since the IJ's bond order, the Government has objected to the order and attempted to justify Mr. Guevara's detention in four filings, Exs. 9–10, 14–15—all of which consistently and principally argue that his filming and reporting are a danger to the community. In its Brief on Appeal, four of the 4.5 pages it devotes to justifying continued detention focus on Mr. Guevara's filming and reporting. Ex. 15. at 6–10.[1] First, it describes his press activity at the June 14 protest,

---

[1] All pin cites are to the page number of the exhibit and not to that of the Government's brief.

namely that he "reentered the roadway twice to livestream the event on his phone," *id*. at 6,[2] and then his press activity on six prior occasions, which it summarizes as follows:

> On [six] different occasions, spanning from February to May 2025, the respondent encountered local Georgia law enforcement officials and federal agents . . . . During these encounters, the respondent filmed undercover officers, their vehicles, including their vehicle tag information, and the suspects of the investigation posting the videos on his Facebook account . . . .

Ex. 15 at 6–7.[3] The Government's July 31 brief opposing Mr. Guevara's motion to lift the BIA's stay offers less than a page of argument and focuses almost exclusively on Mr. Guevara's press activity on the six "occasions" described in its Brief on Appeal. Ex. 14. Its argument in the July 3 Notice of Appeal is less than a page and focuses almost exclusively on the same press activity. Ex. 9 at 8 ("respondent . . . live stream[ed] the [June 14] events"), *id.* (describing the six "encounter[s]" during which "the respondent recorded or live streamed" and "post[ed] videos of undercover agents, their vehicles, and tag numbers," which "were viewed by hundreds of thousands of

---

[2] The Government misrepresents Mr. Guevara's press activity on June 14, in a failed attempt to connect it with any harm. First, it misstates that DeKalb County dismissed the charges against him "for lack of sufficient evidence" and that he had been arrested for "failure to comply with lawful orders." Ex. 15 at 4, 6. DeKalb County explicitly stated that it was dismissing the charges because "video evidence shows" that Mr. Guevara was complying with police orders and was not acting unlawfully. Kim Decl. Ex. 3 ("Ex. 3"). Second, the Government misstates that Mr. Guevara "participated in a protest with a group who moved onto an active roadway." Ex. 15 at 6. He did not participate; he was documenting it, as evidenced by video footage of the protest and his arrest. George Chidi, *Bodycam of James Talley, No Kings Day Protest, June 14, 2025*, at 31:40–36:00, YouTube (July 21, 2025), https://www.youtube.com/watch?v=Zcc3KcPwR5I&t=1899s. The Government makes the same misrepresentations in its Notice of Appeal and emergency stay motion. *See* Ex. 9 at 8 (describing Mr. Guevara "def[ying]" and "disregard[ing]" law enforcement orders"); Ex. 10 at 2 (describing charges as being "dismissed for lack of sufficient evidence"); *id.* at 4 (describing Mr. Guevara as "participat[ing]" and "repeated[ly] disregard[ing] . . . officer's warnings").

[3] The Government's description of these six occasions relies on a Gwinnett County Sheriff's Office report, which summarizes Mr. Guevara's troubling "behavior" as "demonstrat[ing] a consistent pattern of pursuing and filming law enforcement activities." Kim Decl. Ex. 4 at 10.

people"). The four pages of argument in its July 3 emergency stay motion also primarily recounts the same press activity, in almost identical fashion as its Brief on Appeal. Ex. 10 at 3–6.

At argument, the Court asked about the dropped traffic charges from Gwinnett County and the firearm allegations against Mr. Guevara. Tr. at 16:6–20. The Government's filings inextricably link both—and how they purportedly demonstrate Mr. Guevara's dangerousness—to his reporting, belying any argument that they constitute independent bases for his detention.[4] With respect to the traffic charges, the Government articulates the danger as "pursuing law enforcement officers" "and livestreaming while driving," both of which reference Mr. Guevara's newsgathering. Ex. 15 at 9; Ex. 10 at 6; Ex. 14 at 3. Notably, the Notice of Appeal articulates Mr. Guevara's purported dangerousness based on the Gwinnett County charges as arising from his "record[ing] or live stream[ing]" law enforcement activity and "posting videos," *not* any harms related to his actual driving. Ex. 9 at 8.[5]

The Government also ties its allegations regarding Mr. Guevara's alleged possession of a gun to his reporting.[6] *See* Ex. 9 at 8 (stating gun "is of particular concern when considered in light

---

[4] Even if the Government could demonstrate that these were independent bases for detention, that would not overcome Mr. Guevara's First Amendment claims. Mr. Guevara needs to demonstrate only that his reporting was a "substantial" or "motivating" factor in the Government's opposing his release on bond. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). The Government must then establish that it "would have" taken the same adverse action of opposing his release absent his reporting, not simply that it could have. *Id.* at 285.

[5] Mr. Guevara's June 14 arrest is not a plausible basis for detaining him because the charges were dismissed on the basis that "video evidence shows [him] generally in compliance [with police orders] and does not demonstrate the intent to disregard law enforcement directives." Ex. 3 at 1.

[6] The Government misrepresents the facts regarding the gun. Mr. Guevara has never "testified that he unlawfully possesses a firearm." Ex. 9 at 8; Ex. 10 at 6 (claiming the same); Ex. 15 at 10 (same). Instead, the IJ found that the Government had entered no evidence related to the gun and that its questioning of Mr. Guevara at the bond hearing failed to establish that he possessed, let alone unlawfully possessed, a gun. Ex. 6 at 4. Instead, "the only firm evidence established . . . is that there is a gun in Respondent's home that he shares with . . . United States citizens (USC), his

4

of his . . . practice of confronting law enforcement officers," referring to his reporting on public law enforcement activity); Ex. 10 at 6–7 (same); Ex. 15 at 10 (same). It is also clear from the Government's filings that its allegations about a gun are purely an afterthought. *See* Ex. 15 at 10 (comprising one paragraph in nearly five pages of argument); Ex. 14 at 3 (three sentences responding to Mr. Guevara's argument that he has never been charged with a firearms offense); Ex. 10 at 6–7 (one paragraph in four-page argument); Ex. 9 at 8 (two sentences).

## ARGUMENT

**I.     MR. GUEVARA IS NOT IN ACTIVE REMOVAL PROCEEDINGS.**

Administrative closure is a "temporary suspension of a case" that "removes" it "from the [BIA]'s docket." 8 C.F.R. § 1003.1(l). Unless and until a case is recalendared, it remains off the docket. *Id.*; *see also In re Gutierrez-Lopez*, 21 I&N Dec. 479, 479 (BIA 1996) ("Administrative closure . . . is used to temporarily *remove* the case from . . . the [BIA]'s docket." (emphasis added)); *Lopez-Reyes v. Gonzales*, 496 F.3d 20, 21 (1st Cir. 2007) (same); *Mickeviciute v. INS*, 327 F.3d 1159, 1161 n.1 (10th Cir. 2003) (same). When a party moves to recalendar, the BIA may "exercise [its] discretion" to grant the motion, but it is by no means automatic. 8 C.F.R. § 1003.1(l)(2). Mr. Guevara's case remains administratively closed and thus off the BIA's docket.

Immigration detention must be in service of removal. *See* 8 U.S.C. § 1226(a) ("On a warrant issued by the Attorney General, an alien may be arrested and detained *pending a decision on whether the alien is to be removed* . . . ." (emphasis added)); *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (detention must "bear . . . reasonable relation to the purpose for which the individual

---

brother is in the military, and Respondent fired the weapon at a firing range" and that "in his twenty years within the United States he has never been charged with a crime involving a firearm." *Id*. The Government also failed at the bond hearing to "reference a potential criminal statute that [Mr. Guevara] would have been violating." *Id*. at 4 n.4.

5

was committed") (cleaned up)). Mr. Guevara's detention is not in service of removal because his removal proceedings are administratively closed and have not been recalendared. Congress authorized the Government to detain "*pending*" removal proceedings, but as of today, there are no such proceedings because they remain closed.[7]

## II. THE INA DOES NOT STRIP THIS COURT'S JURISDICTION TO REVIEW MR. GUEVARA'S UNCONSTITUTIONAL DETENTION CLAIMS.

### A. 8 U.S.C. § 1226(e) does not bar review.

The Government contends that 8 U.S.C. § 1226(e) bars review on two grounds. First, on the sweeping ground that "Section 2241 does not provide an avenue for this Court to review the detention decisions of the immigration courts." Resp. to Mot. for Prelim. Inj. at 8, ECF No. 24 ("Resp."). And second, on the narrower ground that Mr. Guevara is challenging "the discretionary decision to detain him." *Id*. Both arguments are wrong under Supreme Court precedent.

In *Demore v. Kim*, the Supreme Court stated that "Section 1226(e) contains no explicit provision barring habeas review" and opined "that its clear text does not bar [a] constitutional challenge[.]" 538 U.S. 510, 517. The Court subsequently affirmed that conclusion, *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018), and held that "[b]ecause the extent of the Government's detention authority is not a matter of 'discretionary judgment,' 'action,' or 'decision,'" a petitioner's challenge to its scope "falls outside of the scope of § 1226(e)," *id*. at 296.

The Government's assertion that the REAL ID Act bars *all* habeas actions under 28 U.S.C. § 2241, Resp. at 7, is also foreclosed. *Jennings*, which postdates the Act, held that "§ 1226(e) does not bar us from considering [a non-citizen's detention] claims." 583 U.S. at 295. The Eleventh

---

[7] *Zadvydas* also instructs that the foreseeability of removability is a factor in considering whether detention is statutorily authorized. 533 U.S. at 699-700. Mr. Guevara's removal is not reasonably foreseeable even upon recalendaring because he is the beneficiary of a prima facie approvable visa petition (hence, his non-opposition to recalendaring). Calmes Supp. Decl. ¶¶ 6, 10.

Circuit, too, has decided immigration habeas cases since the Act's enactment. *See, e.g.*, *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199, 1208 (11th Cir. 2016), *vacated as moot by* 890 F.3d 952 (11th Cir. 2018) (holding immigration detention violated due process); *Madu v. U.S. Att'y Gen.*, 470 F.3d 1362 (11th Cir. 2006) (remanding to district court for habeas proceedings).[8]

The Government is also wrong to characterize this action as a challenge to "the discretionary decision to detain [Mr. Guevara]." Resp. at 8.[9] This is a constitutional "challeng[e] to] the extent of the Government's detention authority," *Jennings*, 583 U.S. at 295, which falls "outside of the scope of § 1226(e)," *id*. at 296. *See also Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (§ 1226(e) does not "limit habeas jurisdiction over constitutional claims" (cleaned up)); *Najera v. United States*, 926 F.3d 140, 144 (5th Cir. 2019) ("§ 1226(e) does not deprive us of all authority to review . . . constitutional challenges" (cleaned up)); *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011); *Al-Siddiqi v. Achim*, 531 F.3d 490, 494 (7th Cir. 2008).

None of the cases cited by the Government are to the contrary. *See* Resp. at 7–8. In *Sopo*, the Eleventh Circuit reached the merits of a challenge to prolonged immigration detention without a bond hearing and held that it violated due process. 825 F.3d at 1220–21. In *Dorley v. Normand*, this Court applied *Sopo* to reach the same conclusion. No. 22-cv-62, 2023 WL 3620760, at *3–*6 (S.D. Ga. Apr. 3, 2023) (Cheesbro, J.), *report and recommendation adopted,* 2023 WL 3174227

---

[8] The Act's legislative history also undermines the Government's argument. Congress expressly stated that it "would not preclude habeas review over challenges to detention that are independent of challenges to removal orders." H.R. Rep. No. 109-72, at 175 (2005) (Conf. Rep.). It was therefore "attentive[] to the constitutional limitations on withdrawing habeas relief from those seeking release from unlawful detention." *Kong v. United States*, 62 F.4th 608, 615 (1st Cir. 2023).

[9] The Government mistakenly asserts that Mr. Guevara is challenging the BIA's stay decision. *See* Resp. at 8; *see also* Tr. at 28:5–9. Mr. Guevara does not challenge the BIA decision, but the Government's continuing detention of him in violation of the First and Fifth Amendments. Pet. for Writ of Habeas Corpus & Compl. at 27–29, ECF No. 1; Tr. at 28:13–25, 33:15–19.

(S.D. Ga. May 1, 2023). And in *Aham v. Gartland*, this Court reached the merits of a non-citizen's due process challenge to determine it was unavailing. No. 19-cv-46, 2020 WL 806929, at *3 (S.D. Ga. Jan. 29, 2020) (Cheesbro, J.), *report and recommendation adopted,* 2020 WL 821005 (S.D. Ga. Feb. 18, 2020). Because Mr. Guevara challenges the constitutionality of his detention, his habeas petition is appropriate and § 1226(e) poses no bar to this Court's review.

**B.     8 U.S.C. § 1252(g) does not bar review.**

Section 1252(g) "applies only to three discrete actions": "to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (citing 8 U.S.C. § 1252(g)).[10] While other decisions "may be part of the deportation process—such as the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation proceeding," they do not fall within § 1252(g)'s limited scope because they do not interfere with the "particular evil" it was "directed against": "attempts to impose judicial constraints upon prosecutorial discretion." *Id.* at 482, 485 n.9.[11]

The Eleventh Circuit has interpreted *Reno* as "instruct[ing]" it "to narrowly interpret § 1252(g)[.]" *Alvarez*, 818 F.3d at 1202 (reiterating that § 1252(g) "applies only to three discrete

---

[10] At argument, the Government made the extraordinary assertion that § 1252(g) bars *all* habeas challenges brought under 28 U.S.C. § 2241. Tr. at 26:14–15. This argument is squarely foreclosed by Supreme Court and Eleventh Circuit precedent. *See Alvarez v. U.S. Immigr. & Customs Enf't*, 818 F.3d 1194, 1201–02, 04–05 (11th Cir. 2016) (holding § 1252(g) does not bar review of § 2241 claim of detention unconnected to removal); *see also Jennings*, 583 U.S. at 294-95.

[11] Since *Reno*, the Supreme Court has continued to emphasize § 1252(g)'s "narrow" ambit. *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) ("We have previously rejected as 'implausible' the Government's suggestion that § 1252(g) covers 'all claims arising from deportation proceedings' or imposes 'a general jurisdictional limitation.'") (quoting *Reno*, 525 U.S. at 482)); *Jennings*, 583 U.S. at 294 ("We did not interpret [§ 1252(g)] to sweep in any claim that can technically be said to 'arise from' the three listed actions . . . . Instead, we read the language to refer to just those three specific actions themselves." (citation omitted)). The legislative history of the REAL ID Act, which makes clear that it would not preclude habeas review of detention challenges separate from removal challenges, *see supra* n.8, buttresses this reading.

8

actions," not the "variety of other actions that may be taken before, during, and after removal proceedings"); *Canal A Media Holding, LLC v. USCIS*, 964 F.3d 1250, 1257–58 (11th Cir. 2020).[12]

"[C]onsonant with the Supreme Court's instructions to read § 1252(g) as a narrow provision," *Alvarez* instructs that § 1252(g) does not bar review of detention where the Government's actions are "motivated" not by the "intent" to "execute . . . removal" but "to prolong . . . detention." 818 F.3d at 1204-05 (citing *Reno*, 525 U.S. at 482). This is such a case.

Across four separate filings to the BIA, the Government has clearly stated that it is detaining Mr. Guevara *not* to execute removal, but because his filming and reporting on law enforcement activity is a danger to the community. *See supra* Background, II. In none of these filings—including in their recitation of the relevant procedural history—does the Government even mention any underlying removal proceedings. *See* Ex. 15 at 4–5; Ex. 14 at 2; Ex. 10 at 2–3; Ex. 9 at 8. The Government "must defend its actions based on the reasons it gave when it acted." *Regents*, 591 U.S. at 24. It cannot simply rewrite history in a belated attempt before this Court to premise its detention of Mr. Guevara on removal proceedings.

Moreover, its revisionist claim that Mr. Guevara's detention was to "secur[e] him during removal proceedings[,]" Resp. at 10, cannot be squared with the fact that, at the time ICE took him

---

[12] The Court also recognized that *Reno*'s instruction to "narrowly interpret § 1252(g)" is "a command that our sister circuits have applied in subsequent cases." *Alvarez*, 818 F.3d at 1202–03 (discussing *Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir. 1999) ("§ 1252(g) is no impediment to adjudicating claims that challenge 'detention while the administrative process lasts'") and citing *Zhislin v. Reno*, 195 F.3d 810, 814 (6th Cir. 1999), *DeSousa v. Reno*, 190 F.3d 175, 182 (3rd Cir. 1999) (§ 1252(g) "only applies to suits challenging the government's selective enforcement of the immigration laws'")). Other circuits have held that § 1252(g) does not preclude jurisdiction over "challenges to the legality of [a non-citizen's] detention," *Kong*, 62 F.4th at 609, because they "may be resolved without affecting pending [removal] proceedings," *Parra*, 172 F.3d at 957. *See also Bello-Reyes v. Gaynor*, 985 F.3d 696, 698, 700 n.4 (9th Cir. 2021) (§ 1252(g) did not bar First Amendment detention challenge); *Kellici v. Gonzales*, 472 F.3d 416, 420 (6th Cir. 2006).

into its custody, Mr. Guevara's removal proceedings were in the same posture they had been for thirteen years—administratively closed, Ex. 1; Guevara Decl. ¶ 4—and that they still remain closed despite the two and a half months that Mr. Guevara has already languished in immigration detention. The Eleventh Circuit has held that § 1252(g) does not apply when challenging detention that is similarly untethered from any active removal proceedings—namely, in *Alvarez*, where the Government "knew that it would be impossible to execute [a] removal order," 818 F.3d at 1204–05,[13] and in *Madu*, where there was "no removal order," 470 F.3d at 1368. Equally, the Government's decision to continue detaining Mr. Guevara cannot be to secure him for removal, nor can it "be said to have arisen from a decision to remove him," *Alvarez*, 818 F.3d at 1205, in light of the lack of any active removal proceedings, *see supra* Argument, I.

Nor does it matter that removal proceedings against Mr. Guevara may proceed in the future. In *Gonzalez v. FedEx Ground Package System, Inc.*, a district court in this Circuit held that §

---

[13] The Government also leans heavily on *Alvarez* but focuses on the wrong holding—that "ICE's decision to take [a noncitizen] into custody and to detain him *during his removal proceedings*" was "closely connected to the decision to commence proceedings, and thus w[as] immune from [its] review." Resp. at 9 (quoting *Alvarez*, 818 F.3d at 1203 (alteration in original) (emphasis added)). There, the facts underlying the petitioner's initial detention evince a tight connection between the detention and removal proceedings: the petitioner pled guilty to criminal charges triggering removal, and ICE took him into custody following his release from prison. *Alvarez*, 818 F.3d at 1196–97. But the *Alvarez* Court also held that the petitioner's separate challenge to his continuing detention after he was ordered removed was unconnected from any "decision to remove him" and was therefore not barred by § 1252(g). *Id.* at 1204–05.

The Government's reliance on *Gupta v. McGahey*, 709 F.3d 1062 (11th Cir. 2013), is distinguishable on the same grounds. Resp. at 9. In *Gupta*, which challenged arrest and detention by ICE agents, "an ICE agent prepared a notice to appear for removal proceedings and secured an arrest warrant *before* serving the notice of removal on the plaintiff alien at the time of his arrest." *Gonzales v. FedEx Ground Package Sys., Inc*, 12-CV-80125, 2013 WL 12080223, at *9 (S.D. Fla. Aug. 1, 2013) (emphasis added). "Significantly, the Eleventh Circuit relied on the fact that ICE's alleged misconduct occurred *after* it served the plaintiff with a notice to appear and secured a warrant for the plaintiff's arrest, reasoning that '[s]ecuring an alien while awaiting a removal determination constitutes an action to commence proceedings.'" *Id*. (quoting *Gupta*, 709 F.3d at 1065 (alteration in original) (emphasis added)).

1252(g) did not bar jurisdiction where the plaintiffs challenged detention "before removal proceedings had commenced." 2013 WL 12080223, at *10. "Under § 1252(g), the fact that removal proceedings were ultimately initiated is not enough to divest this Court of jurisdiction" because that could not alter the fact that the Government's "alleged misconduct" did not "arise from the decision to commence or execute removal orders[.]" *Id*. So too, here, since the removal proceedings against Mr. Guevara have remained closed at every point that the Government has sought to prolong his detention.[14]

Accepting the Government's argument that § 1252(g) bars this action would require this Court to adopt an extraordinarily broad reading that "sweep[s] in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General," *Jennings*, 583 U.S. at 294—a position the Supreme Court has rejected as "implausible," *Regents*, 591 U.S. at 19. Mr. Guevara's petition can be resolved without impacting the removal proceedings. If he is released on bond, as the IJ ordered, any active removal case would continue in immigration court. To accept the Government's jurisdictional argument would be to shield virtually all unlawful detention claims from review, enabling the Government to "detain noncitizens indefinitely without needing to provide a justification to anyone." *Kong*, 62 F.4th at 616. This is not the result Congress intended.

---

[14] Mr. Guevara's challenge is also not barred by § 1252(g) because he alleges not that the Government is exercising discretion, but rather that it is doing something it has no power to do at all: unconstitutionally detaining him to restrain and punish his reporting. Where a petitioner "brings a constitutional challenge to his detention," "section 1252(g) does not apply." *Madu*, 470 F.3d at 1368; *see also Garcia v. Att'y Gen. of U.S.*, 553 F.3d 724, 729 (3d Cir. 2009) (§ 1252(g) "not implicated" in challenges to the "very *authority*" of executive's actions); *Ali v. Mukasey*, 524 F.3d 145, 150 (2d Cir. 2008) (§ 1252(g) inapplicable where petitioner alleges he was "placed in removal proceedings unlawfully or for reasons that would offend the Constitution"); *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (en banc) ("The district court may consider a purely legal question that does not challenge the Attorney General's discretionary authority[.]").

### III. EXHAUSTION IS NEITHER NECESSARY NOR APPROPRIATE.

"[W]here Congress has not clearly required exhaustion, sound judicial discretion governs," *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992), and "it is well established that exhaustion in the § 2241 context can be excused." *Alarcon v. Gallagher*, No. 19-cv-4447, 2021 WL 9385236, at *3 (N.D. Ga. Apr. 30, 2021) (collecting cases), *report and recommendation adopted*, No. 19-CV-4447, 2021 WL 9385438 (N.D. Ga. July 28, 2021). Where "the litigant's interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further," exhaustion should not be required. *McCarthy*, 503 U.S. at 146 (cleaned up). The Supreme Court has "recognized at least three broad sets of circumstances" in which the individual's interests "weigh heavily against requiring administrative exhaustion," two of which squarely apply here: (1) the agency lacks competence to resolve the constitutional issues presented; and (2) delaying review will cause undue prejudice, both by imposing irreparable harm and because the timeframe for agency resolution is unclear. *Id.* at 146–48; *Shorter v. Warden*, 803 F. App'x 332, 336 (11th Cir. 2020) (same).

#### A. The BIA lacks the requisite institutional competence.

The Supreme Court has stated that exhaustion is heavily disfavored where an agency "lacks institutional competence to resolve the particular type of issue presented"—including where "the constitutionality of a [government action]" is in play. *McCarthy*, 503 U.S. at 147–48. The issues here are constitutional: whether the Government is violating the First and Fifth Amendment by continuing to detain Mr. Guevara because of his reporting. "Since the BIA cannot even reach constitutional concerns, it clearly lacks the institutional competence to handle petitioner's case." *Rivera v. Demore*, No. 99-cv-3042, 1999 WL 521177, at *2 (N.D. Cal. July 13, 1999) (citing *Matter of C-,* 20 I&N Dec. 529 (BIA 1992)); *see also Yahweh v. U.S. Parole Comm'n*, 158 F. Supp. 3d 1332, 1343–44 (S.D. Fla. 2001); *Khalil v. Joyce*, 780 F. Supp. 3d 476, 526 (D.N.J. 2025).

12

For example, while the BIA might consider whether the Government *can* detain Mr. Guevara for reasons other than his reporting, it will not consider the constitutionally-relevant issue: whether it "not only could, but in fact *would* have reached th[e same] decision had not the constitutionally protected [expression been at issue]." *Mt. Healthy*, 429 U.S. at 285 (emphasis added).

### B. Requiring exhaustion will further irreparably harm Mr. Guevara.

Exhaustion is also heavily disfavored where it "may occasion undue prejudice" to the petitioner, including where he "may suffer irreparable harm if unable to secure immediate judicial consideration" or where the "timeframe for administrative action" is "indefinite." *McCarthy*, 503 U.S. at 146–47. Both circumstances are present here.

As already detailed, Mr. Guevara is suffering irreparable harm every day he remains detained. *See* Mem. of Law in Supp. of Prelim. Inj. Mot. ("PI Br.") at 9–10, 24, ECF No. 2-1. Prior to his detention, Mr. Guevara began newsgathering around 6 A.M. every day, Madrigal Decl. ¶ 12, ECF No. 2-6, following leads provided by his followers, Guevara Decl. ¶ 17, and, among other reporting, filming law enforcement activity occurring in public, *id.* ¶¶ 10, 12, 14–15, 17. But for his detention, he would be engaged in this daily journalistic activity. *Id.* ¶ 36. Instead, he now spends 22 hours a day alone in a tiny cell, and, of course, he cannot film or report on law enforcement activity or any other news. *Id.* ¶¶ 30, 34.

In contrast to nearly every other instance of immigration detention, silencing Mr. Guevara in this way is a *goal* of the detention, not simply an unintended consequence. *See supra* Background, II; Zamora Decl. ¶ 18, ECF No. 2-7. His detention thus constitutes "direct penalization, as opposed to incidental inhibition, of First Amendment rights" and so "constitutes irreparable injury." *Siegel v. LePore*, 234 F.3d 1163, 1178 (11th Cir. 2000) (cleaned up); *see also Khalil*, 780 F. Supp. 3d at 543 (refusing to require exhaustion of petitioner's immigration detention

claim because, with respect to First Amendment harms, "once the proceeding is over, [it] will be too late" (cleaned up)). Mr. Guevera can never recoup the stories he has missed over the 70-plus days that he has been in detention, nor can the many people who follow his reporting.

In addition, the timeframe for any BIA review of the IJ's bond order is indefinite. The BIA is not required to issue an order by any date certain, and its timeline for review has become increasingly delayed over the last year. *See* Tr. at 32:3–6 (Government counsel admitting "timeline has become lengthier" and unable to provide "any specific timeline"). "[T]ime is of the essence and the government points to nothing that would ensure alacrity in the exhaustion process." *Rivera*, 1999 WL 521177, at *2 (footnote omitted).

### C. Requiring exhaustion would not serve the Government's interests.

That Mr. Guevara's interests weigh heavily against exhaustion should suffice to warrant this Court's review. But, even if it did not, the Government's own interests in judicial efficiency and in allowing an agency "to apply its special expertise" and exercise its autonomy weigh against administrative exhaustion here. *See McCarthy*, 503 U.S. at 145–46.

Neither agency autonomy nor judicial efficiency will be served by waiting for the BIA to adjudicate an appeal, because it cannot resolve the claims in this habeas case. As discussed above, the BIA has no jurisdiction, much less competence or special expertise, in the issues presented. *See supra* Argument, II.A. Moreover, there is no factual record to be developed: The Government has already made clear across four separate filings that it is detaining Mr. Guevara because of his filming and reporting. *See supra* Background, I.

That the BIA could affirm the IJ's bond order also does not warrant exhaustion. *Cf. McCarthy*, 503 U.S. at 148 (considering both whether agency has "authority to grant the type of relief requested" *and* whether it is "competent to adjudicate the issue presented"). Courts in this

14

circuit have not required exhaustion in similar circumstances. In *J.G. v. Warden, Irwin Cnty. Det. Ctr.*, the district court declined to require a detainee to exhaust his bond determination before the BIA prior to filing a habeas petition. 501 F. Supp. 3d 1331, 1342, 1349 (M.D. Ga. 2020). Notably, there, one of the habeas claims was not constitutional and the BIA could have resolved it in favor of release. *Id*. at 1349 (claim that IJ violated agency rule). Nevertheless, the court reached the petitioner's due process claim and granted relief on that basis. *Id*. at 1340–41. Here, by contrast, Mr. Guevara brings only constitutional claims, which the BIA lacks competency to adjudicate.

While the BIA *could* find that the IJ's bond order should be affirmed, irrespective of Mr. Guevara's First Amendment rights, that outcome is far from certain and, even if it occurs, waiting for it will be costly, forcing Mr. Guevara—and his audience—to suffer irreparable harm in the meantime. *See supra* Argument, III.B. In addition, other journalists and the public will lack the benefit of a judicial order making clear that detention suppressing speech is constitutionally prohibited. *See* PI Br. at 25 (discussing public interest); Zamora Decl. ¶¶ 20–22 (detailing chill on other reporters). Meanwhile, if the BIA reverses the IJ's bond determination, Mr. Guevara's only available recourse will be precisely what he is doing now: filing a habeas petition before this Court. *See* Calmes Supp. Decl. ¶ 11; *cf*. 8 U.S.C. § 1252(a)(1) (providing for judicial review in the court of appeals only of a "final order of removal"). The only difference will be delay and the attendant irreparable harm.

Thus, exhaustion would significantly harm Mr. Guevara and would not serve the Government's interests. It should not be required here.

## CONCLUSION

For all these reasons and those set forth in Mr. Guevara's opening brief, this Court should issue a preliminary injunction and enjoin the Government from continuing to detain him

Dated: September 3, 2025

Scarlet Kim*
Vera Eidelman*
Tyler Takemoto**
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
scarletk@aclu.org
veidelman@aclu.org
ttakemoto@aclu.org

Michael K.T. Tan*
American Civil Liberties Union Foundation
425 California Street, 7th Floor
San Francisco, CA 94104
(808) 490-3806
m.tan@aclu.org

Giovanni Diaz (GA Bar # 246622)
Jessica Calmes (GA Bar # 202719)
Zachary Gaeta (GA Bar # 507940)
Diaz & Gaeta Law, LLC
2400 Herodian Way SE, Suite 275
Smyrna, GA 30080
(678) 503-2780
(404) 341-9370
diaz@dglawga.com
calmes@dglawga.com
gaeta@dglawga.com

Respectfully submitted,

/s/ *Andres Lopez-Delgado*
Andres Lopez-Delgado (GA Bar # 552876)
Cory Isaacson
American Civil Liberties Union
Foundation of Georgia
P.O. Box 570738
Atlanta, GA 30357
(770) 415-5490
adelgado@acluga.org
cisaacson@acluga.org

Clare R. Norins (GA Bar # 575364)
Ward Evans* (GA Bar # 487147)
First Amendment Clinic
University of Georgia School of Law
P.O. Box 388
Athens, Georgia 30603
(706) 542-1419
cnorins@uga.edu
ward.evans@uga.edu

Donald F. Samuel (GA Bar # 624475)
Garland, Samuel & Loeb, P.C.
3151 Maple Drive
Atlanta, GA 30305
(404) 262-2225
dfs@gsllaw.com

*Admitted *pro hac vice*
**Pro hac vice* admission forthcoming

*Counsel for Petitioner*

# CERTIFICATE OF SERVICE

I hereby certify that I have caused a true and correct copy of the foregoing Supplemental Memorandum of Law in Support of Motion for Preliminary Injunction and all supporting documents to be served on all counsel of record by filing through the Court's CM/ECF system.

Dated: September 3, 2025

Respectfully submitted,

/s/ *Andres Lopez-Delgado*
Andres Lopez-Delgado (GA Bar # 552876)