UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| MARIO ALEXANDER GUEVARA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 5:25-cv-86 |
| ) | |
| WARDEN, FOLKSTON ICE ) | |
| PROCESSING CENTER, et al., ) | |
| ) | |
| Respondents. ) | |

**SUPPLEMENTAL BRIEFING**

On August 27, 2025, the Court held a hearing on Petitioner's Motion for Preliminary Injunction. Doc. 30. The parties were directed to file supplemental briefing on three issues: "(1) exhaustion of administrative remedies issue; (2) jurisdictional bar; and (3) impact of removal proceedings on the issue of detention." *Id*. Respondents submit this brief as their response to that instruction and in continued support of their Response to Petitioner's Motion for Preliminary Injunction, Doc. 24.

**I.  Petitioner has failed to exhaust administrative remedies.**

Exhaustion of administrative remedies prior to seeking relief under habeas corpus is not jurisdictional, but it is required. *Santiago-Lugo v. Warden*, 785 F.3d 467, 475 (11th Cir. 2015). These procedures prevent a petitioner "bypass[ing] the administrative process in hopes that he will find a more sympathetic forum in [federal] Court." *Sequeira-Balmaceda v. Reno*, 79 F. Supp. 2d 1378, 1382 (N.D. Ga. 2000). This Court has routinely noted that exhaustion of administrative remedies is

1

required before pursuing relief under 28 U.S.C. § 2241. *See, e.g.*, *Dupont v. Swaney*, No. 2:24-cv-41, 2024 WL 4558503, at *1 (S.D. Ga. Sept. 9, 2024) (Cheesbro, J.) *report and recommendation adopted*, 2024 WL 4555397 (S.D. Ga. Oct. 23, 2024). Exhaustion allows the agency responsible for detention to develop a factual record, as well as to discover and correct any errors it may have committed. *Id.*; *see also Jean v. Nelson*, 711 F.2d 1455, 1505-06 (11th Cir. 1983) (exhaustion should be required where it may (1) permit an agency to develop a more complete factual record, (2) allow the agency to apply its discretion and expertise, (3) prevent disregard of established agency procedures, and (4) allowing the agency an opportunity to correct errors and thereby enhance judicial efficiency).

Here, Petitioner acknowledges in his Petition that administrative remedies must generally be exhausted prior to obtaining relief in federal court. Doc. 1, ¶ 104. By arguing that his case falls under an exception to exhaustion, he appears to concede that he has not exhausted administrative remedies. *See id.*, ¶¶ 104, 105. His failure to exhaust is sufficient reason to deny his Motion for Preliminary Injunction, since he is unlikely to succeed on the merits of his underlying Petition.

Further, Petitioner's administrative process remains ongoing, which demonstrates that administrative remedies are fully available to him. Neither party in the administrative process has been dilatory or obstructive. The immigration judge held a bond hearing on July 1, 2025. Doc. 2-2 at 28. The judge ruled orally at that hearing. *Id.* The Department of Homeland Security quickly appealed two days later. *Id.* at 129; *see* 8 C.F.R. § 1003.1(b)(7) (permitting either party to appeal bond

decisions). The Board of Immigration Appeals ("BIA") then entered an order staying the bond decision on the next business day. Doc. 2-2 at 129. Both Petitioner's counsel and DHS have filed numerous briefs in the weeks since. *See, e.g.,* Doc. 2-2 at 180. While the timeline for a decision from the BIA cannot be predicted with certainty, there is certainty that the process will end there because no appeal to the Eleventh Circuit is available from the BIA on a bond decision. 8 U.S.C. § 1226(e); *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (observing that § 1226(e) precludes aliens from challenging discretionary decisions of the Attorney General regarding detention or release); *Hyacinthe v. U.S. Atty. Gen.*, 215 F. App'x 856, 862 (11th Cir. 2007) ("[W]e cannot reach Hyacinthe's claims regarding the IJ's denial of bond.") (citing § 1226(e)).

Therefore, the administrative process is not only available and active, but the agency is also developing a factual record that may allow it to discover and correct any errors that may have been committed. *See Dupont*, 2024 WL 4558503, at *1. The administrative process will have one of two outcomes: one, the BIA may affirm the grant of bond by the immigration judge. If this occurs, this habeas petition will become moot once Petitioner's bond is paid and he is released. *See Djadju v. Vega*, 32 F.4th 1102, 1106 (11th Cir. 2022) ("As a general rule, a habeas petition presents a live case or controversy only when a petitioner is in custody.") (quotation marks omitted). Alternatively, the BIA may reverse the grant of bond in an order explaining any errors committed by the immigration judge, and Petitioner will remain detained. Thus, the outcome of the BIA will either be the mooting of this Petition or a more detailed record about the justifications for his detention.

The Petition argues that these administrative remedies are inadequate because the BIA "lacks institutional competence" to determine "the constitutionality of Petitioner's detention." Doc. 1, ¶ 107 (quotation marks omitted). This argument should be disregarded for several reasons. First, strictly speaking, the issue pending before the BIA is whether DHS has the authority to detain Petitioner under § 1226(a). The issue presented to the BIA is whether the immigration judge erred in granting bond to Petitioner based on his conclusion that Petitioner had established that he is not a danger to the community. *See, e.g.*, Doc. 2-2 at 159. Second, Petitioner's argument echoes the futility exception this Court has repeatedly declined to recognize in the context of habeas exhaustion. *See, e.g.*, *Houze v. Swaney*, No. 2:24-cv-83, 2024 WL 4394798, at *2 (S.D. Ga. Sept. 13, 2024) (Cheesbro, J.), *report and recommendation adopted,* 2024 WL 4393507 (S.D. Ga. Oct. 3, 2024). "It is not the role of the court to consider the adequacy or futility of the administrative remedies afforded to the inmate. The court's focus should be on what remedies are available and whether the inmate pursued these remedies prior to filing suit." *Id.* There is no dispute that Petitioner here has available and unexhausted remedies. Third, as this Court noted at the hearing, the issues before the BIA are not limited to those alleged to relate to Petitioner's First Amendment claims. DHS has also raised a claim related to alleged firearm possession. *Id.* at 166. Even if not addressing constitutional claims, Petitioner does not dispute that the BIA is competent to address other, unrelated allegations that also relate to his bond. A final decision by the BIA on those issues

4

would still assist this Court by developing a factual record and correcting any errors, potentially rendering action by this Court unnecessary.

Petitioner has not exhausted his administrative remedies, which remain ongoing. This Court should rule that Petitioner is not likely to succeed on the merits of his § 2241 claim—which is the only claim he has presented—because he has failed to do so.

## II. This Court lacks jurisdiction to consider Petitioner's § 2241 claim.

Respondents argued in their Response to the Motion for Preliminary Injunction that this Court lacked jurisdiction over Petitioner's § 2241 claim pursuant to 8 U.S.C. §§ 1226(e) and § 1252(g). Doc. 24 at 7-10. In the interests of judicial economy Respondents incorporate that same argument here; nevertheless, several points bear emphasizing.

The plain text of 8 U.S.C. § 1252(g) precludes federal district courts from exercising jurisdiction over § 2241 petitions if they "aris[e] from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." *Id.*, § 1252(g). The Eleventh Circuit has described this provision as "unambiguous." *Gupta v. McGahey*, 709 F.3d 1062, 1065 (11th Cir. 2013), *reh'g denied*, 737 F.3d 694 (11th Cir. 2013), *cert. denied*, 573 U.S. 931 (2014). Section 1252(g)'s reference to precluding jurisdiction over the decision of the Attorney General to "commence proceedings" also includes detention pending removal: "Securing an alien while awaiting a removal determination constitutes an action taken to commence proceedings." *Gupta*, 709 F.3d at 1065. The

Eleventh Circuit reiterated the same conclusion three years later. *Alvarez v. U.S. Immigr. & Customs Enf't*, 818 F.3d 1194, 1203 (11th Cir. 2016). Challenges to the discretionary decision to take an individual into custody and detain him while commencing removal proceedings are "immune from [federal court] review." *Id.* (discussing § 1252(g)).

Nor can a detainee dress his claim in constitutional clothing in order to invoke this Court's jurisdiction. *See Patel v. United States Att'y Gen.*, 971 F.3d 1258, 1272 (11th Cir. 2020) (discussing 8 U.S.C. § 1252(a)), *aff'd sub nom. Patel v. Garland*, 596 U.S. 328 (2022). The proper focus of reviewing district courts should be on the specific action being challenged, not ancillary issues unrelated to the detention itself. *Canal A Media Holding, LLC v. United States Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1257–58 (11th Cir. 2020) ("When asking if a claim is barred by § 1252(g), courts must focus on the action being challenged.").

In a case discussing the "execution" prong of § 1252(g), the Eleventh Circuit held that detainees should not be permitted to recharacterize their claims to avoid § 1252(g)'s jurisdictional bar. *Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1273–74 (11th Cir. 2021). In *Camarena*, the Court of Appeals concluded that § 1252(g) precluded the district court from exercising jurisdiction because it concerned the government's "execution" of the petitioners' removal orders. *Id.* at 1274. The Court of Appeals emphasized the broad sweep of § 1252(g), which stripped jurisdiction over "'any' cause or claim arising from the government's decision to

6

execute a removal order." *Id.* Any other holding would permit a habeas petitioner to use "sleight of hand" and evade the jurisdictional bar. *Id.*[1]

Challenges may become ripe if the period of a petitioner's post-removal order detention becomes improperly lengthy. *See, e.g., Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges *to post-removal-period detention*.") (emphasis added). To state a *Zadvydas* claim, an alien "not only *must* show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) (emphasis added). Because the Supreme Court has permitted constitutional claims to be brought under *Zadvydas* after six months of post-removal detention, they are likely not precluded by § 1252(g). *See Rojas v. Field Off. Dir.*, No. 19-11107-E, 2019 WL 3315159, at *1 (11th Cir. Apr. 1, 2019) (citing *Zadvydas* and noting that claims challenging post-removal order detention "might well not be barred by INA provisions such as § 1252(g)" but declining to decide that issue).

---

[1] The *Camarena* opinion also reveals why the Eleventh Circuit's decision in *Madu v. U.S. Attorney General,* 470 F.3d 1362 (11th Cir. 2006), does not apply here. In *Madu*, the Eleventh Circuit held that § 1252(g) did not preclude a constitutional challenge to the underlying basis for that habeas petitioner's removal. *Id.* at 1368. But *Madu* does not mean that all challenges to the execution of removal orders are permitted. *Camarena*, 988 F.3d at 1273 (calling this interpretation of *Madu* "misplaced"). Further, the *Camarena* panel noted that the *Madu* case "spoke to a narrow set of circumstances" in which the petitioner challenged whether any removal order existed at all. *Id.* Here, Petitioner is not challenging whether he is removable—and indeed he previously conceded his removability. Doc. 2-2 at 28.

7

Here, no exceptions to § 1252(g)—implied or otherwise—permit this Court to exercise jurisdiction. Petitioner is in discretionary detention pursuant to his removal proceedings. Doc. 2-2 at 29; Doc. 24-1, ¶ 3. He does not dispute that he is removable. Doc. 2-2 at 28. He does not dispute that Congress has granted to the Attorney General the discretion to detain aliens pending a decision on removability. *See* 8 U.S.C. § 1226(a). Petitioner's detention pending removal falls under the "commence proceedings" prong of § 1252(g). *See Alvarez*, 818 F.3d at 1203. (His detention could also fall under the "execute removal orders" prong of § 1252(g) should the Court conclude that Petitioner's previous removal order remains fully active. *See Camarena*, 988 F.3d 1274.) Therefore, this Court lacks jurisdiction to review it.[2]

Nor should this Court construe Petitioner to have raised a *Zadvydas* claim (which he has not raised). Petitioner's current detention is pursuant to 8 U.S.C. § 1226(a), which permits discretionary detention pending decisions on removability, and not the statute at issue in *Zadvydas*. Doc. 24-1, ¶ 3; *cf.* 8 U.S.C. § 1231(a) (providing authority for post-removal order detention). His current period of detention by ICE has not even exceeded two months. Doc. 24-1, ¶ 11. Respondents do not dispute that the circumstances of some detainees permit *Zadvydas* claims, but those circumstances do not exist here.

---

[2] In addition, Petitioner has already conceded in his briefs before the BIA that it is the appropriate court with jurisdiction over his detention claim. Doc. 2-2 at 132 ("This Board has jurisdiction over this motion as it falls within the Board's jurisdiction over appeals of bond determinations made by Immigration Courts.").

Federal courts are courts of limited jurisdiction. Congress has spoken plainly that detainees may not bring § 2241 challenges of the sort brought here. Therefore, this Court should find that Petitioner is not likely to succeed on the merits of his § 2241 petition and deny his request for injunctive relief.

### III. The administrative closure of Petitioner's appeal did not end his removal proceedings.

At the hearing, this Court asked the parties to explain the impact of the removal proceedings on the issue of detention. Doc. 30. Respondents understand the Court to be asking whether the administrative closure of Petitioner's appeal in 2012, *see* Doc. 24-1, ¶ 7, has any effect on Petitioner's claims in this matter. Respondents submit that it does not.

"Administrative closures and continuances are procedural tools that an IJ or the BIA may use to temporarily suspend removal proceedings." *Alkotof v. U.S. Att'y Gen.*, 106 F.4th 1289, 1299 (11th Cir. 2024); *Matter of B-N-K-*, 29 I. & N. Dec. 96, 97 (BIA 2025) (describing administrative closure as "a docket management tool"). Such a closure *temporarily* removes the case from the docket of the immigration judge or of the BIA. *Alkotof*, 106 F.4th at 1299. But such a closure "is not a form of relief from removal" and "does not provide an alien with any immigration status." *Matter of B-N-K-*, 29 I. & N. Dec. at 97. More broadly, administrative closures are routine docket management tools that do not prejudice the rights of either party to reopen the case. *See, e.g., Atl. Cas. Ins. Co. v. Suchil*, No. 6:14-cv-63, 2015 WL 1951798, at *1 (S.D. Ga. Apr. 28, 2015) (Smith, J.).

9

Here, the administrative closure in Petitioner's removal proceedings is no different. *See* Doc. 2-2 at 5. It was a procedural tool that paused the appeal before the BIA. *Id.* It did not grant Petitioner any legal status in the United States. *See Matter of B-N-K-*, 29 I. & N. Dec. at 97. It was not meant to be indefinite; the BIA gave explicit notice that "either party" could reinstate proceedings merely by submitting a written request. Doc. 2-2 at 5. Respondents have done just that by asking the BIA to recalendar the appeal. Doc. 24-1, ¶ 12. Petitioner has brought no claim related either to the administrative closure or to Respondents' decision to take precisely the reinstatement request contemplated by the BIA in 2012. He also did not raise this issue before the immigration judge, who displayed no concern about the relationship between Petitioner's current detention and the as-yet uncalendared proceedings before the BIA. *See* Doc. 2-2 at 28 n.1 (referencing the administrative closure but no arguments from Petitioner related to it).

Nor does the administrative closure affect Petitioner's removal proceedings. Petitioner has already conceded he is removable. Doc. 24-1, ¶ 4. Because his removal proceedings have not been finalized, he remains detained under the authority of 8 U.S.C. § 1226(a).

## CONCLUSION

Respondents respectfully request that this Court deny Petitioner's Motion for Preliminary Injunction.

Respectfully submitted, this 3rd day of September, 2025,

>MARGARET E. HEAP
>UNITED STATES ATTORNEY
>
>*/s/ O. Woelke Leithart*
>Idaho Bar No. 9257
>Assistant United States Attorney
>U.S. Attorney's Office
>Post Office Box 8970
>Savannah, Georgia 31412
>Telephone: (912) 652-4422
>E-mail: Woelke.Leithart@usdoj.gov