UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| Mario Alexander GUEVARA,<br><br>*Petitioner*,<br><br>v.<br><br>LaDeon FRANCIS, in his official capacity as Director of the Atlanta Field Office, Immigration and Customs Enforcement *et al.*,<br><br>*Respondents*. | Case No. 25–CV–86<br><br>**MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION** |

## INTRODUCTION

Petitioner Mario Guevara seeks immediate release from immigration detention for two reasons. First, the Government has no current authority to detain him. On September 19, 2025, the Board of Immigration Appeals ("BIA") recalendared Mr. Guevara's removal proceedings, which the Government administratively closed in 2012, and affirmed a June 2012 order by the Immigration Judge ("IJ") granting him voluntary departure. With this now-operative voluntary departure order, Mr. Guevara has 60 days to leave the country of his own accord. Mr. Guevara does not have a final order of removal and will not have one unless and until he fails to depart the country voluntarily. The Immigration and Nationality Act ("INA") does not give the Government authority to detain Mr. Guevara in these circumstances—indeed, doing so would frustrate the very purpose of his voluntary departure order—and the Government lacks any other lawful basis for detaining him.

Second, Mr. Guevara seeks immediate release for the separate reason that the Government's continued detention of him, despite a July 1 bond order by an IJ, arises from the

1

Government's extraordinary effort to gag his future speech and reporting, and to retaliate against him for his past speech and reporting. On September 19, on the same day that the BIA recalendared Mr. Guevara's removal proceedings and affirmed the IJ's 2012 voluntary departure order, it also dismissed the Government's appeal of the July 1 bond order as moot—in effect, keeping him in detention. This decision renders the Court's intervention all the more urgent. Notwithstanding that Mr. Guevara was granted voluntary departure—which gives him 60 days to voluntarily leave the United States—the Government has offered no assurances that it will not put him on a plane back to El Salvador at any moment. Mr. Guevara is only at risk of such imminent deportation because he is currently detained. Accordingly, his continuing unlawful detention is now likely to trigger further grave irreparable injury, including depriving him of the ability to prepare to leave the country that has been his home for over twenty years and to say goodbye to his loved ones and a community that cherishes him. If he remains in detention, he will also have no further opportunity to carry out reporting within the United States, including on U.S. law enforcement activities occurring in public, exacerbating the First Amendment injury he has raised before this Court.

Moreover, because there are no further administrative remedies for Mr. Guevara to exhaust, only relief from this Court can remedy Mr. Guevara's unlawful detention. And because Mr. Guevara has been granted voluntary departure—and has no final order of removal—the INA's jurisdiction-stripping provisions do not bar this Court's review.

Each of the interim relief factors continues to weigh overwhelmingly in Mr. Guevara's favor. He is likely to succeed on the merits of his claims. Without relief, Mr. Guevara is suffering multiple irreparable harms including the loss of his freedom; the inability to continue his journalism; separation from his family and community; inability to care for his medically compromised son; and the additional harms outlined above. Finally, the equities and public interest

weigh heavily in Mr. Guevara's favor including because they exert a chilling effect on other journalists covering the actions of public officials.

For all these reasons and those described in Mr. Guevara's prior briefing, this Court should issue an order immediately releasing Mr. Guevara. It should further exercise its authority to preserve its jurisdiction under the All Writs Act, ordering that Mr. Guevara not be removed from the United States pending adjudication on this action, or in the alternative, on the pending emergency motions before this Court.

## BACKGROUND

### I. PROCEDURAL HISTORY OF MR. GUEVARA'S IMMIGRATION CASE

Mr. Guevara lawfully entered the United States in 2004. Guevara Decl. ¶ 2, ECF No. 2-4. He affirmatively applied for relief from removal in 2007. *Id*. ¶ 4. In June 2012, the IJ denied Mr. Guevara's application but granted him voluntary departure, following which he appealed to the BIA. Ambroise Decl. ¶¶ 6–7, ECF No. 24-1. In December 2012, the BIA granted a joint motion by Mr. Guevara and the Government to administratively close his case, Kim Decl. Ex. 1, ECF No. 2-2 ("Ex. 1"), which suspended the voluntary departure order. Until this summer, the Government had not sought to recalendar his case. Guevara Decl. ¶ 4.

On June 18, 2025, ICE took Mr. Guevara into custody following his arrest while documenting a protest. Calmes Decl. ¶¶ 3, 5, ECF No. 2-3. On June 27, DHS filed a motion to recalendar Mr. Guevara's administratively closed 2012 BIA appeal. Calmes Suppl. Decl. ¶¶ 3–5, ECF No. 36-1. On July 9, Mr. Guevara filed a non-opposition to recalendaring and a motion to remand to the IJ so that he could apply for adjustment of status, *id*. ¶ 6, given that he has a pending I-130 petition filed by his U.S. citizen son and is prima facie eligible to adjust status upon approval,

3

*id*. ¶ 10.

On June 30, 2025, Mr. Guevara filed for bond. *See* Kim Decl. Ex. 6, at 1 ("Ex. 6"). On July 1, the IJ held a hearing and granted bond, Kim Decl. Ex. 5, memorialized in a Written Decision and Order on July 11, Ex. 6. On July 3, the Government appealed the bond decision, Kim Decl. Ex. 9, and sought an emergency stay, Kim Decl. Ex. 10, which the BIA granted on July 7, Kim Decl. Ex. 11.

On September 19, 2025, the BIA dismissed the Government's appeal of the bond decision as moot and vacated its stay. Calmes Second Suppl. Decl. Ex. 20 ("Ex. 20"). In the decision, the BIA indicated that it had separately recalendared the case, denied Mr. Guevara's motion to remand, and "dismissed [Mr. Guevara's] appeal of an Immigration Judge's decision ordering [him] removed in removal proceedings."[1] *Id*. at 3–4. It further stated that "[t]he Immigration Judge's decision is now final" and that "[t]he authority of an Immigration Judge to set bond conditions ceases at the entry of a final administrative order." *Id*. (citing 8 C.F.R. § 1236.1(d)(1)).

As described above, the IJ's June 2012 decision did not order Mr. Guevara removed but granted him voluntary departure. *See* Ambroise Decl. ¶¶ 6–7. There is therefore no final order of removal against Mr. Guevara. Calmes Second Suppl. Decl. ¶ 7.[2]

## II. PROCEDURAL HISTORY OF MR. GUEVARA'S HABEAS CASE

On August 20, 2025, Mr. Guevara filed a petition for writ of habeas corpus and complaint. ECF No. 1. On August 21, he filed a motion for preliminary injunction seeking his release from detention while this habeas action proceeds. ECF No. 2. On August 27, the Court held a hearing

---

[1] Mr. Guevara has not yet received a copy of these separate decisions from the BIA.

[2] In 2012, the IJ entered an alternate order of removal against Mr. Guevara should he fail to depart voluntarily. However, that removal order will not become *final* unless and until he fails to leave the country within the allotted time period. 8 C.F.R. § 1241.1(f).

4

on the motion, and on September 3, the parties submitted supplemental briefing. ECF No. 36.

On September 19, 2025, Mr. Guevara filed a motion for an emergency hearing, ECF No. 45, which this Court granted. At the hearing, the Court ordered Mr. Guevara to submit the instant motion by 5:00 p.m. on September 23 and the Government to submit its response within four business days after Mr. Guevara's filing.

## ARGUMENT

### I.   MR. GUEVARA HAS EXHAUSTED HIS ADMINISTRATIVE REMEDIES.

While exhaustion was neither necessary nor required when Mr. Guevara filed this action, *see* Suppl. Mem. of Law in Supp. of Mot. for Prelim. Inj. ("Guevara Suppl. Br.") 12–15, ECF No. 36, it has now occurred: The BIA has dismissed the Government's appeal of the IJ's bond order, and it is keeping him in detention. Mr. Guevara's only recourse for resolving his present claims—(1) that the Government has no authority to detain him now that he has been granted voluntary departure and (2) that his continued detention in order to silence and retaliate against his journalism is unconstitutional—is this habeas action. This Court's review is therefore not only proper but necessary.

### II.  THE INA DOES NOT STRIP THIS COURT'S JURISDICTION TO REVIEW MR. GUEVARA'S DETENTION CLAIMS.

For the reasons already detailed, 8 U.S.C. § 1226(e) does not bar review. Guevara Suppl. Br. 6–8. Indeed, the Government's Supplemental Brief did not argue that it does. *See* Gov't Suppl. Br. 5–8, ECF No. 37.

Nor does 8 U.S.C. § 1252(g) bar review because it "applies only to three discrete actions": "to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders'"—none of which are applicable here. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (citing 8 U.S.C. § 1252(g)); *Alvarez v. U.S. Immigr. & Customs Enf't*, 818 F.3d 1194, 1202 (11th Cir.

5

2016) (section 1252(g) "applies only to three discrete actions," not the "variety of other actions that may be taken before, during, and after removal proceedings"); *see also* Guevara Suppl. Br. 8–11. Mr. Guevara's removal proceedings are complete, *see* Ex. 20 at 3 ("The Immigration Judge's decision is now final."), and there is no final order of removal against him, Calmes Second Suppl. Decl. ¶ 7. Thus, his detention cannot be in the service of "executing" a removal order, much less adjudicating a case or commencing proceedings.

As Mr. Guevara has previously detailed, section 1252(g) does not bar review for the separate reason that the Government's efforts to keep him in detention were "'motivated' not by the 'intent' to 'execute . . . removal' but 'to prolong [the petitioner's] detention.'" Guevara Suppl. Br. 9-11 (quoting *Alvarez*, 818 F.3d at 1204–05 (citing *Reno*, 525 U.S. at 482)). Across four separate filings to the BIA challenging the IJ's bond order, the Government stated that it is detaining Mr. Guevara *not* to execute removal, but because his filming and reporting on law enforcement activity is a danger to the community. *Id*. at 9. Indeed, at the time ICE took him into its custody, Mr. Guevara's removal proceedings were in the same posture they had been in for 13 years prior—administratively closed, Ex. 1; Guevara Decl. ¶ 4—and they continued to be closed when he filed this action, Guevara Suppl. Br. 9–10. Much like his detention now cannot be understood to be in the service of executing a removal order, his detention when he filed could not either.

Nor does it matter that the BIA subsequently recalendared (and then immediately decided) his removal proceedings. "Under § 1252(g), the fact that removal proceedings were ultimately initiated is not enough to divest this Court of jurisdiction" since it cannot alter the fact that the Government's "alleged misconduct" did not "arise from the decision to commence or execute

6

removal orders[.]" *Gonzalez v. FedEx Ground Package Sys., Inc.*, 12-CV-80125, 2013 WL 12080223, at *10 (S.D. Fla. Aug. 1, 2013); *see also* Guevara Suppl. Br. 10–11.

### III.    IMMEDIATE INTERIM RELIEF IS WARRANTED.

To obtain a temporary restraining order or a preliminary injunction, a movant must show "(1) [he] has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the [order] issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *FF Cosms. FL, Inc. v. City of Miami Beach*, 866 F.3d 1290, 1298 (11th Cir. 2017) (quoting *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)); *see also Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005) (per curiam) (same standard for TRO). Where the First Amendment is involved, likelihood of success on the merits is "the most important . . . criterion." *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1127–28 (11th Cir. 2022).

#### A.    MR. GUEVARA IS LIKELY TO SUCCEED ON THE MERITS.

##### 1.    BECAUSE MR. GUEVARA HAS BEEN GRANTED VOLUNTARY DEPARTURE, THE GOVERNMENT LACKS AUTHORITY TO DETAIN HIM UNDER THE INA.

The IJ's June 2012 order grants Mr. Guevara voluntary departure, and it is now operative. Ambroise Decl. Ex. A, at 17, ECF No. 24-1. The Government lacks authority under the INA to continue to detain Mr. Guevara now that he has an operative voluntary departure order. The Court should therefore order his immediate release based on this new development in Mr. Guevara's immigration case.

Voluntary departure is "a discretionary form of relief that allows certain favored aliens . . . to leave the country willingly" at their own expense within a prescribed period of time to avoid a final order of removal. *Dada v. Mukasey*, 554 U.S. 1, 8 (2008); 8 U.S.C. § 1229c(a)(1), (b). 8

U.S.C. § 1229c, which governs voluntary departure, contains no provision authorizing detention. Nor are the other detention provisions of the INA applicable here. 8 U.S.C. § 1226(a), which governs detention "pending a decision on whether [an] alien is to be removed from the United States," is not applicable because Mr. Guevara's removal proceedings are now complete.

Nor is 8 U.S.C. § 1231, which governs the detention of "aliens ordered removed," applicable because there is no final order of removal against Mr. Guevara and there will be no such order unless he fails to depart the country voluntarily. As the Eleventh Circuit has explained, "section 1231(a) authorizes the government to detain an alien '[d]uring' and 'beyond' but not before the removal period"—that is, the 90-day period where the Government is obligated to execute a person's removal order. *Farah v. U.S. Att'y Gen.*, 12 F.4th 1312, 1332 (11th Cir. 2021) *overruled in part on other grounds*, *Santos-Zacaria v. Garland*, 598 U.S. 411 (2023); *see also* 8 U.S.C. § 1231(a)(2), (6) (providing for detention only "[d]uring the [90-day] removal period" and "beyond the removal period"). The removal period begins only on "[t]he date the order of removal becomes *administratively final*." 8 U.S.C. § 1231(a)(1)(B)(i) (emphasis added). Here, because Mr. Guevara does not have a final removal order, and will not have a final order unless and until he fails to depart voluntarily, his removal period has not begun, 8 C.F.R. 1241.1(f), and he cannot be detained under § 1231. And this makes sense, as the purpose of detention under § 1231 is to effectuate the person's involuntary deportation—not to detain people given permission to depart the country voluntarily.

The Supreme Court has explicitly distinguished between voluntary departure and removal, particularly as these discrete schemes relate to the Government's detention authority. As the Court has explained, "[a]s a rule, individuals lawfully determined to be deportable . . . are not entitled to leave on their own terms but instead face detention and forcible removal." *Monsalvo v. Bondi*, 145

8

S.Ct. 1232, 1236 (2025) (citing *Dada*, 554 U.S. at 11). However, "[w]hen the government extends" the "option" of voluntary departure, "it effectively makes detention and removal contingent: Officials *may detain* and remove the individual *only if he remains in the country after his voluntary-departure period has expired*." *Id*. (emphasis added). The Court highlighted that this arrangement benefits both the Government and the individual: "For the government, an individual's voluntary departure saves the cost and effort associated with *detention* and removal. For the individual, it . . . allows him to choose how and when he leaves the country." *Id*. (emphasis added) (citing *Dada*, 554 U.S. at 11 (voluntary departure spares Government expense of "detaining the alien pending deportation" and also benefits the individual who "avoids extended detention pending completion of travel arrangements")); *see also Dada*, 554 U.S. at 23 (Scalia, J., dissenting) ("[voluntary departure] enables the alien to avoid detention pending involuntary deportation").

Despite the lack of a statutory basis for detention, the BIA has held that an IJ may order detention as a condition of voluntary departure pursuant to regulations in individual cases. *Matter of M-A-S-*, 24 I. & N. Dec. 762, 766 (2009) (citing 8 C.F.R. § 1240.26(c)(3)). *Matter of M-A-S-* did not address whether there was a statutory basis for detention. But even assuming the INA somehow authorized the IJ to order detention in connection with Mr. Guevara's voluntary departure order, the IJ did *not* do so here. Instead, the IJ granted Mr. Guevara voluntary departure contingent on a single condition—"the posting of a bond of $500 within five business days," Ambroise Decl. Ex. A, at 17—which he has already paid, Calmes Second Suppl. Decl. ¶ 6. Critically, the IJ did *not* order voluntary departure "under safeguards," which is the language used when an IJ determines that an individual should remain in custody until their voluntary departure. *Matter of M-A-S-*, 24 I. & N. Dec. at 766 ("[T]he term 'voluntary departure with safeguards' is commonly used to characterize the requirement that an alien remain in custody until he or she

departs from the United States."). Here, the IJ's order granted voluntary departure *without safeguards* and therefore did not order Mr. Guevara's detention pending his voluntary departure. Moreover, the requirement of a bond further supports the reading that the IJ did not intend for Mr. Guevara to be detained, since there would be no need for a bond if Mr. Guevara were to remain in detention until his departure. *Id*. at 767 ("[W]here continued detention is ordered, it makes no sense to require a bond, because the purpose of the bond—to assure that the respondent will appear for departure—is already fully served by the continued detention.").[3]

### 2. MR. GUEVARA'S DETENTION CONTINUES TO BE UNLAWFUL FOR THE SEPARATE REASON THAT IT IS RETALIATORY AND INTENDED TO SILENCE HIM IN VIOLATION OF THE FIRST AND FIFTH AMENDMENTS.

As Mr. Guevara has already detailed, he is likely to succeed on the merits of his First Amendment claims that his continuing detention constitutes both a prior restraint and unconstitutional retaliation. Mem. of Law in Supp. of Prelim. Inj. Mot. ("PI Br.") 11–22, ECF No. 2–1. The First Amendment protects livestreaming, recording, and publishing video of law enforcement officers engaged in their duties in public. *Id*. at 11–14. Nevertheless, the Government has deemed Mr. Guevara's journalism to be a danger to the community and is detaining him *because* of his expressive activity, and to prevent and punish his reporting. *Id*. at 15, 19; Guevara

---

[3] DHS regulations provide that, where an individual requests voluntary departure *in lieu of being subject to removal proceedings*, "[t]he Service may attach to the granting of voluntary departure any conditions it deems necessary to ensure the alien's timely departure from the United States, including the posting of a bond, continued detention pending departure, and removal under safeguards." 8 C.F.R. § 240.25(b). This regulation does not apply to Mr. Guevara because he did not seek voluntary departure in lieu of removal proceedings but rather sought voluntary departure after proceedings were initiated. *See In re Arguelles-Campos*, 22 I. & N. Dec. 811, 815 (1999) (distinguishing between an individual applying for "voluntary departure with the Service" prior to removal proceedings and an individual whose "removal proceedings have been initiated," who applies for "voluntary departure with the Immigration Judge").

Suppl. Br. 2–5. As such, it is both a prior restraint and retaliatory, and the Government cannot justify the detention under the standard that governs either First Amendment claim. PI Br. 14–22.[4]

### B.   MR. GUEVARA IS SUFFERING IRREPARABLE HARM AND THE EQUITIES AND PUBLIC INTEREST WEIGH HEAVILY IN HIS FAVOR.

Mr. Guevara continues to suffer irreparable harm every day he remains detained for the reasons already detailed in prior briefing. *see* PI Br. at 9–10, 24; Guevara Suppl. Br. at 13–15. Indeed, now that Mr. Guevara has been granted voluntary departure, the consequences of his continuing unlawful detention are all the more grave and irreparable.

Because Mr. Guevara was granted voluntary departure, he should have 60 days to prepare to leave the United States, including making travel arrangements, spending as much time as possible with his family and community, putting his affairs in order—and continuing his reporting and supporting his news outlet, MG News. However, because he is currently detained, he is at risk of being placed on a plane and deported to El Salvador at any moment. Calmes Second Suppl. Decl. ¶ 9. Mr. Guevara has asked the Government to provide assurances that it will honor the voluntary departure order and not seek to deport him during the 60-day window, but it has thus far provided no response to this request. Kim Suppl. Decl. ¶¶ 3–5.

Moreover, the equities and public interest weigh heavily in Mr. Guevara's favor. *See* PI Br. 25. Mr. Guevara and the public both have a strong interest in his release, which will vindicate his constitutional rights and decrease the chill other journalists are experiencing, while the Government has no interest in continuing his unlawful detention. *Id*.

---

[4] The Government's detention of Mr. Guevara to suppress and punish his speech also violates the Fifth Amendment because it is an illegitimate basis for depriving him of his liberty. PI Br. 22–23.

## IV. THE COURT SHOULD ENJOIN MR. GUEVARA'S REMOVAL PENDING ADJUDICATION OF THIS MOTION UNDER THE ALL WRITS ACT.

The All Writs Act ("AWA") provides that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The AWA "is a codification of the federal courts' traditional, inherent power to protect the jurisdiction they already have, derived from some other source." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1099 (11th Cir. 2004) (citing *Procup v. Strickland*, 792 F.2d 1069, 1074 (11th Cir. 1986) ("Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions.")). "In allowing courts to protect their 'respective jurisdictions,' the Act allows them to safeguard not only ongoing proceedings, but potential future proceedings, as well as already-issued orders and judgments." *Id.* (footnotes omitted).

Whereas a traditional preliminary injunction requires a party to state a claim and show injury, an injunction based on the AWA requires only that a party identify a threat to the integrity of an ongoing or prospective court proceeding. *Id.* at 1097 (a court may enjoin almost any conduct "which, left unchecked, would have . . . the practical effect of diminishing the court's power to bring the litigation to a natural conclusion" (quoting *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978)). Thus, to issue an injunction pursuant to the AWA, this Court need not find that there is a likelihood of success on the merits of the underlying claims. *See Arctic Zero, Inc. v. Aspen Hills, Inc.*, No. 17–cv–459, 2018 WL 2018115, at *5 (S.D. Cal. May 1, 2018) (distinguishing AWA injunction from traditional preliminary injunction). Rather, it is sufficient for the Court to find that Mr. Guevara has identified a threat to the integrity of this ongoing proceeding.

The possibility of Mr. Guevara's imminent removal from the country is precisely such a threat. Mr. Guevara's deportation to El Salvador could occur at any moment, as evidenced by three facts. First, an individual with a voluntary departure order who is in immigration detention can be removed at any moment, notwithstanding the 60-day period allotted to Mr. Guevara by the IJ's 2012 voluntary departure order. Calmes Second Suppl. Decl. ¶ 9. Second, the Government has not provided any assurances that it will honor Mr. Guevara's voluntary departure order and not remove him within the 60-day period allotted by that order. Kim Suppl. Decl. ¶¶ 3–5. Third, the Government has recently shown its willingness to quickly transfer or attempt to quickly transfer individuals out of the country, even when not authorized by law. *See, e.g., A.A.R.P. v. Trump*, 605 U.S. 91, 92–93 (2025) (Government "served notices of . . . removal" to plaintiffs, "told [them] that they would be removed 'tonight or tomorrow,'" and "t[ook] steps . . . toward removing" them even though, as Supreme Court held, they had a right to challenge their removal through a habeas action, leading Court to grant temporary injunctive relief against removal "to preserve [the Court's] jurisdiction while the question [presented in the habeas petition] is adjudicated"); *Dep't of Homeland Security v. D.V.D.,* 145 S. Ct. 2153, 2154–55 (2025) (Sotomayor, J., dissenting) (Government deported Guatemalan man to Mexico after he was granted a withholding of removal to Guatemala, even though he also articulated fear of removal to Mexico, without giving him an opportunity to seek withholding of removal to Mexico; soon after, Mexico deported him to Guatemala); *id.* at 2156 (Government "arrested four putative class members covered by [district court's] TRO" against removal, "promptly transferred [them] to Guantanamo Bay," and shortly thereafter "placed all four . . . on a Department of Defense flight to El Salvador"); *id.* (13 class members "narrowly averted . . . deportations" to Libya after district court clarified that deportations were enjoined on the same day that plaintiffs' counsel sought relief); *id.* at 2157 ("Government

13

lawyers confirmed that several class members were indeed en route to South Sudan after having received less than 24 hours' notice of their impending deportations"); *Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025) (Government improperly deported man to prison in El Salvador even though he "was subject to a withholding order forbidding his removal to [El] Salvador" and even though Government acknowledged "that the removal to El Salvador was therefore illegal"); Letter, *Melgar-Salmeron v. Bondi*, No. 23-7792 (2d Cir. May 8, 2025), ECF No. 32 (letter from Government "informing [Second Circuit] that the petitioner was removed from the United States on 05/07/2025," the same day that Second Circuit had granted motion for stay of removal); *L.G.M.L. v. Noem*, No. 25-cv-2942, 2025 WL 2671690, at *3, *21 (D.D.C. Sept. 18, 2025) (court issued TRO and PI enjoining Government from removing 76 Guatemalan children, who were taken from refugee shelters late at night and placed on a plane bound for Guatemala); *D.A. v. Noem*, No. 25–cv–3135, 2025 WL 2646888, at *2–3 (D.D.C. Sept. 15, 2025) (Government "transported Plaintiffs to Ghana with no notice or opportunity to challenge that removal, under what appears to be a hasty and unwritten agreement with Ghana, which has indicated its intention to return Plaintiffs to their home countries where Defendants agree they will almost certainly be persecuted"); Order Granting Mot. for TRO, *Kettlewell v. Noem*, No. 25-cv-491 (D. Ariz. Aug. 31, 2025), ECF No. 8 (court issued second TRO in one day "enjoining the removal of the Plaintiff Children in this matter" after it "c[a]me to the Court's attention that some children may have been in the process of being removed"). If Mr. Guevara is placed on a plane to El Salvador, the Court's ability to hear and decide the emergency motions presently pending before this Court will immediately dissipate.

"[T]he powers conferred by the All Writs Act . . . are utilized in extraordinary circumstances" like these, "where equitable measures are required to facilitate adjudication . . . or

14

peripheral aspects of habeas adjudication." *Byrd v. Hollingsworth*, No. 14–cv–6473, 2014 WL 6634932, at *2 (D.N.J. Nov. 21, 2014), *aff'd sub nom. Byrd v. Warden Fort Dix FCI*, 611 F. App'x 62 (3d Cir. 2015) (citing *Boumediene v. Bush*, 553 U.S. 723, 774 (2008), in turn citing *Harris v. Nelson*, 394 U.S. 286, 299–300 (1969)); *see, e.g., Michael v. INS*, 48 F.3d 657, 664 (2d Cir. 1995) (exercising AWA authority to preserve appellate jurisdiction over habeas petition concerning potential deportation). Indeed, courts have routinely granted stays of removal *pendente lite* to habeas petitioners and other litigants when the Government's efforts to deport them threaten to undermine the court's ability to hear and decide the case and effectuate the relief sought. *See, e.g.*, *Ghamelian v. Baker*, No. 25–cv–2106, 2025 WL 2074155, at *1 (D. Md. July 23, 2025) (noting court had previously entered order "administratively staying Petitioner's removal from the United States to permit this Court's adjudication of the Petition"); *Arostegui-Maldonado v. Baltazar*, No. 25–cv–2205, 2025 WL 2280357, at *16 (D. Colo. Aug. 8, 2025) (staying petitioner's removal and enjoining transfer out of district pursuant to AWA during pendency of habeas petition); *Ragbir v. United States*, No. 17–cv–1256, 2018 WL 1446407 (D.N.J. Mar. 23, 2018) (granting stay of removal *pendente lite* in coram nobis proceeding challenging conviction that was basis for petitioner's removal order); *cf. Ozturk v. Hyde*, 136 F.4th 382, 394–95 (2d Cir. 2025) (upholding district court's jurisdiction under AWA and the "equitable and flexible nature of habeas relief" to order petitioner's transfer). Indeed, the entry of such orders is a "quintessential judicial act[]." *United States v. Russell*, No. 25–cv–02029, 2025 WL 2448955, at *3 (D. Md. Aug. 26, 2025) (dismissing federal executive's challenge to District of Maryland standing order granting temporary stays of removal in connection with new immigration habeas cases).

Courts likewise retain comparable, inherent equitable authority to enjoin transfers pending a habeas petition, *see* 28 U.S.C. § 2243 (habeas courts authorized to order relief "as law and justice

15

require"), and courts regularly exercise that authority. *See, e.g.*, *Perez Parra v. Catro*, 765 F. Supp. 3d 1241, 1243 (D.N.M. 2025) (granting TRO preventing transfer of detained immigrants to U.S. military base at Guantánamo Bay, Cuba) ("Considering the uncertainty surrounding jurisdiction, the Court determines it is necessary to enjoin the transfer of Petitioners to Guantanamo Bay. At this time, the Court cannot say that without this injunction it would not be jurisdictionally deprived to preside over the original writ of habeas corpus should petitioners be transferred. Thus, an injunction is necessary to achieve the ends of justice entrusted to this Court."); *see also, e.g.*, Order, *Westley v. Harper*, No. 25-cv-00229 (E.D. La. Feb. 1, 2025), ECF No. 7; *Dorce v. Wolf*, 506 F. Supp. 3d 142 (D. Mass. Dec. 10, 2020); *Garcia v. Wolf*, No. 20–cv–821, 2020 WL 4668189 (E.D. Va. Aug. 11, 2020); Order, *Campbell v. U.S. Immigr. & Customs Enf't*, No. 20–cv–22999 (S.D. Fla. July 26, 2020), ECF No. 13; Order, *Sillah v. Barr*, No. 19-cv-1747 (S.D.N.Y. Feb. 25, 2019), ECF No. 6.

An order enjoining Mr. Guevara's removal pending adjudication of this motion would be an appropriate exercise of the Court's authority under the All Writs Act. It may be a necessary one, given the very real possibility that, otherwise, Mr. Guevara may be placed on a plane to El Salvador before this Court has had a chance to fully consider the issues raised in the pending emergency motions, much less this case. Moreover, such an order would be narrowly circumscribed to preserve this Court's jurisdiction to adjudicate Mr. Guevara's unlawful detention claims without interfering with the Government's otherwise lawful detention and removal powers. Mr. Guevara seeks an opportunity for the Court to adjudicate his claim that, because he has been granted voluntary departure, he must be released from detention and given the opportunity to voluntarily depart within 60 days. Nevertheless, *because* he is in detention, he remains at risk of removal to El Salvador before the conclusion of the 60-day period. Calmes Second Suppl. Decl. ¶

9. Moreover, Mr. Guevara also argues that because the underlying reason for his detention is unconstitutional—and that unconstitutional detention has created the risk of his imminent removal—the Court should also preserve its jurisdiction to adjudicate these constitutional claims. By contrast, Mr. Guevara does not challenge the Government's authority to detain and remove him should he fail to voluntarily depart after 60 days.

## CONCLUSION

For all these reasons, this Court should issue an order that Mr. Guevara not be removed from the United States pending adjudication of this action or, in the alternative, the pending emergency motions, and an order immediately releasing Mr. Guevara while this habeas action proceeds.

Dated: September 22, 2025

Respectfully submitted,

/s/ Scarlet Kim

| | |
|---|---|
| Andres Lopez-Delgado (GA Bar # 552876)<br>Cory Isaacson (GA Bar # 983797)<br>American Civil Liberties Union Foundation of Georgia<br>P.O. Box 570738,<br>Atlanta, GA 30357<br>(770) 415-5490<br>adelgado@acluga.org<br>cisaacson@acluga.org<br><br>Michael K.T. Tan*<br>American Civil Liberties Union Foundation<br>425 California Street, 7th Floor<br>San Francisco, CA 94104<br>(808) 490-3806<br>m.tan@aclu.org | Scarlet Kim*<br>Vera Eidelman*<br>Tyler Takemoto*<br>American Civil Liberties Union Foundation<br>125 Broad Street, 18th Floor<br>New York, NY 10004<br>(212) 549-2500<br>scarletk@aclu.org<br>veidelman@aclu.org<br>ttakemoto@aclu.org<br><br>Clare R. Norins (GA Bar # 575364)<br>Ward Evans[+] (GA Bar # 487147)<br>First Amendment Clinic<br>University of Georgia School of Law<br>P.O. Box 388<br>Athens, Georgia 30603<br>(706) 542-1419<br>cnorins@uga.edu<br>ward.evans@uga.edu |

| | |
|---|---|
| Giovanni Diaz (GA Bar # 246622)<br>Jessica Calmes (GA Bar # 202719)<br>Zachary Gaeta (GA Bar # 507940)<br>Diaz & Gaeta Law, LLC<br>2400 Herodian Way SE, Suite 275<br>Smyrna, GA 30080<br>(678) 503-2780<br>(404) 341-9370<br>diaz@dglawga.com<br>calmes@dglawga.com<br>gaeta@dglawga.com | Donald F. Samuel (GA Bar # 624475)<br>Garland, Samuel & Loeb, P.C.<br>3151 Maple Drive<br>Atlanta, GA 30305<br>(404) 262-2225<br>dfs@gsllaw.com<br><br>*Admitted *pro hac vice*<br>+ Admission pending<br><br>*Counsel for Petitioner* |

**CERTIFICATE OF SERVICE**

I hereby certify that I have caused a true and correct copy of the foregoing Memorandum of Law in Support of Emergency Motion and all supporting documents to be served on all counsel of record by filing same through the Court's CM/ECF system.

Dated: September 22, 2025   Respectfully submitted,

/s/ *Scarlet Kim*
Scarlet Kim