UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| MARIO ALEXANDER GUEVARA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 5:25-cv-86 |
| ) | |
| WARDEN, FOLKSTON ICE ) | |
| PROCESSING CENTER, et al., ) | |
| ) | |
| Respondents. ) | |

**RESPONSE TO PETITIONER'S
SECOND AND THIRD MOTIONS FOR PRELIMINARY INJUNCTION**

Before this Court are Petitioner Mario Guevara's Second and Third Motions seeking injunctive relief. Respondents previously argued that the Court should deny his first such motion, since he had not established that he was likely to succeed on the merits of his claims. Doc. 24. Given recent events in Petitioner's immigration proceedings, his new motions are even less likely to succeed. Therefore, for the reasons set forth below, this Court should deny Petitioner's Motions for preliminary relief.[1]

**BACKGROUND**

**I.      Proceedings in Immigration Court**

Guevara is a citizen of El Salvador. Doc. 1, ¶ 18. He entered the United States in 2004. *Id.*, ¶ 18. In 2012, during immigration proceedings, Guevara conceded that

---

[1] Guevara did not file a brief or supporting argument with his Second Motion, *see* Doc. 45, choosing instead to file another, Third Motion, Doc. 47. Respondents intend their Response to apply to both pending Motions for preliminary relief.

1

he was removable from the United States. Doc. 2-2 at 28 n.1. The immigration judge denied Guevara's application for relief from removal, and he appealed that decision. Doc. 1, ¶ 20. While his appeal was pending, his immigration case was administratively closed. *Id.*, ¶ 20; Doc. 2-2 at 5. The Board of Immigration Appeals ("BIA") order administratively closing the case also stated that the proceedings could be reinstated by written request. *Id.*

On June 18, 2025, Immigration and Customs Enforcement ("ICE") took Guevara into custody. Doc. 1, ¶ 44. An immigration judge granted Guevara bond after a bond redetermination hearing, Doc. 2-2 at 28, and the Department of Homeland Security ("DHS") appealed that decision to the BIA, who stayed the bond order, Doc. 2-2 at 129.

On September 19, 2025, the BIA entered two orders.[2] The first concerned the recalendaring of Guevara's removal proceedings. Doc. 49 at 6–13 ("BIA Removal Order"). The BIA reinstated Guevara's removal proceedings, dismissed his appeal to the BIA, and denied his motion to remand his removal proceedings back to the immigration judge. *Id.* at 13. The BIA also entered a final order of removal ordering Guevara removed from the United States. *Id.*

The BIA Removal Order also discussed whether Guevara should be granted voluntary departure from the United States. Doc. 49 at 13. In 2012, the immigration

---

[2] Not having the benefit of reviewing the orders when he filed his Third Motion, Guevara mistakenly states that the BIA entered "four orders" in his Third Motion. *See* Docs. 47 at 1; 47-1 at 8 n.1. These four actions were in fact accomplished in two separate orders. Doc. 47-2 at 7–8, Doc. 49 at 6–13.

2

judge had granted Guevara's application for voluntary departure, but this grant was contingent on his payment of a $500.00 bond within five days. Doc. 24-1 at 20. In the alternative, the immigration judge ordered Guevara removed to El Salvador. *Id.* The BIA found that Guevara had "not presented *any evidence*" that he had ever posted the $500.00 bond. Doc. 49 at 13 (emphasis added). Therefore, the BIA found it lacked authority to enter an order permitting voluntary departure. *Id.*

The BIA's other order entered on September 19, 2025, concerned DHS's appeal from the immigration judge's bond decision. Doc. 47-2 at 7-8 ("BIA Bond Order"). The BIA dismissed the appeal from the bond decision because the BIA Removal Order had rendered it moot. *Id.* at 7. Specifically, the BIA Bond Order recognized that the immigration judge's decision ordering Guevara's removal was "now final." *Id.* Therefore, "neither an Immigration Judge nor this Board has the authority to set bond conditions because a final administrative order has been entered in the respondent's removal case." *Id.* Guevara concedes that he is now subject to a final order of removal. Doc. 49 at 1.

On September 24, 2025, Guevara filed an Application for a Stay of Deportation or Removal with ICE. Respondents' Exhibit 1, Declaration of Michael Morris ("Morris Dec."), Attachment 1. In that application, Petitioner again conceded that the BIA had issued an order of removal in his immigration case. *Id.* at 14.

On September 25, 2025, Guevara filed a petition for review with the Eleventh Circuit. Respondents' Exhibit 2 (Emergency Stay of Removal), 2. On September 26, 2025, he filed an emergency stay of removal during the pendency of that review. *Id.*

3

That same day, he filed a Motion to Reopen and Reinstate His Voluntary Departure Order with the BIA. *See* Respondents' Exhibit 3.

Guevara is detained at the ICE Processing Center in Folkston, Georgia. Morris Dec., ¶ 3. Because he now has a final order of removal, he is now detained pursuant to the authority of Immigration and Nationality Act ("INA") § 241(a)(2)(A), which is codified at 8 U.S.C. § 1231(a)(2)(A). *Id*. That statute requires detention of aliens "[d]uring the removal period." 8 U.S.C. § 1231(a)(2)(A). Thus, ICE's current detention authority differs from its previous detention authority—simply due to the change in circumstances after the final order was entered. *See* Doc. 24-1, ¶ 3 (establishing Guevara's detention as falling under INA § 236(a)(1)).

## II.  Proceedings in District Court

On August 21, 2025, Petitioner filed an "Emergency Motion" for injunctive relief. Doc. 2 (First Motion). The magistrate judge held a hearing on the First Motion on August 27, 2025. Doc. 30. It remains pending.

On September 19, 2025, Petitioner filed a second "Emergency Motion" for injunctive relief. Doc. 45 (Second Motion). The Second Motion contained no brief or argument but sought only release. *Id*. During a telephonic status conference held that same day, the Court allowed Petitioner to file supporting documentation and arguments and instructed Respondents to Petitioner's briefing. Doc. 53. The Second Motion otherwise remains pending.

On September 22, 2025, Petitioner filed a third "Emergency Motion" for injunctive relief. Doc. 47 (Third Motion). That Motion contained briefing and exhibits.

4

It also remains pending. On September 23, 2025, Petitioner filed a "Status Report" in which he made additional argument and provided the Court a copy of the BIA Removal Order. Doc. 49.

## PETITIONER'S ALLEGATIONS

Petitioner's habeas corpus petition was filed pursuant to 28 U.S.C. § 2241. Doc. 1, ¶ 15. The "sole function" of habeas is to seek release; "it cannot be used properly for any other purpose." *Pierre v. United States*, 525 F.2d 933, 936 (5th Cir. 1976). The Petition presents two claims: First, Petitioner alleges that his detention violates his protected speech rights and press activity under the First Amendment. Doc. 1, ¶¶ 110–113. Second, he alleges that his detention violates his right to due process under the Fifth Amendment. *Id.*, ¶¶ 115–119. He asserts that these constitutional violations justify his immediate release on bond. *Id.* at 29.

In his Third Motion for injunctive relief, Petitioner presents a new claim for relief. He alleges that, that "as a result of the BIA's orders," he should be immediately released. Doc. 47 at 2. Petitioner argues first that his release is justified because "the Government currently has no authority to detain him." *Id.* Second, he argues that his removal is potentially imminent. *Id.* He also renews by incorporation the arguments in his First Motion that his detention violates his constitutional rights. *Id.*

## STANDARD OF REVIEW FOR PRELIMINARY INJUNCTIONS

Although Petitioner has titled his Third Motion as one seeking either a temporary restraining order ("TRO") or a preliminary injunction, *see* Docs. 45, 47, only the latter is proper in these circumstances. *See* Fed. R. Civ. P. 65(a) (discussing

preliminary injunctions). As this Court has noted, "[l]awyers and judges sometimes misuse the term 'TRO.'" *Wachovia Ins. Servs., Inc. v. Paddison*, No. 4:05-cv-83, 2006 WL 8435308, at *2 (S.D. Ga. Apr. 6, 2006) (Edenfield, J.). But when notice is given, Rule 65(a) applies, not Rule 65(b). *Id.*; *see also Power Equip. Maint., Inc. v. AIRCO Power Servs., Inc.*, 953 F. Supp. 2d 1290, 1299 (S.D. Ga. 2013) (Moore, J.) (treating motion for TRO as motion for preliminary injunction when notice was given to defendants). Therefore, this Court should construe the Third Motion to be seeking a preliminary injunction, not a TRO.

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Because it is an extraordinary and drastic remedy, "its grant is the exception rather than the rule." *United States v. Lambert*, 695 F.2d 536, 539 (11th Cir. 1983). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *see also Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1284 (11th Cir. 1990) (noting that the chief function of a preliminary injunction is "to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated.").

The moving party bears the burden to establish the need for a preliminary injunction. To grant such "extraordinary relief," the court must find that the movant has established four essential elements: "(1) a likelihood of success on the merits of the overall case; (2) irreparable injury; (3) the threatened injury outweighs the harm

the preliminary injunction would cause the other litigants; and (4) the preliminary injunction would not be averse to the public interest." *Benavides v. Gartland*, No. 5:20-cv-46, 2020 WL 3839938, at *4 (S.D. Ga. July 8, 2020) (Wood, J.). A preliminary injunction should not be granted "unless the movant clearly established the burden of persuasion as to all four elements." *Horton v. City of Augustine, Fla.*, 272 F.3d 1318, 1326 (11th Cir. 2001) (quotation marks omitted). However, "where the government is the party opposing the preliminary injunction, its interest and harm merge with the public interest." *Swain v. Junior*, 958 F.3d 1081, 1091 (11th Cir. 2020).

When a party seeks to change the status quo through an injunction, as is the case here, the injunction is a mandatory injunction. *See, e.g., Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484 (1996) (outlining difference between mandatory and "prohibitory" injunctions). Mandatory injunctions are "particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party." *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976); *see also Fox v. City of W. Palm Beach*, 383 F.2d 189, 194 (5th Cir. 1967) ("There is no question but that mandatory injunctions are to be sparingly issued and upon a strong showing of necessity and upon equitable grounds which are clearly apparent."); *Wachovia*, 2006 WL 8435308, at *2 (noting that mandatory injunctions are subject to heightened scrutiny).

Here, Petitioner appears to be seeking both a permanent and a preliminary injunction because he seeks either release or that his removal be enjoined. Doc. 47 at 1. Release would be a change in the status quo, since Petitioner is currently detained. Therefore, the Court should give Petitioner's request for release heightened scrutiny

7

and require him to meet that burden.

## ARGUMENT

Petitioner has failed to establish any entitlement to preliminary relief. This is even more true because the Third Motion presents a different circumstance than that facing the Court in the First Motion. First, the authority for Petitioner's immigration detention by ICE has changed; he is now detained pursuant to 8 U.S.C. § 1231(a). His ability to challenge detention under § 1231(a) is significantly reduced. Absent circumstances not present here, this Court lacks authority to order the release of aliens subject to mandatory detention under § 1231(a). Second, Petitioner presents a new request to this Court: he now asks this Court to intervene in the immigration proceedings by issuing a stay of his removal. Docs. 47-1 at 17; 49 at 2. This relief—which is not cognizable in habeas corpus—was not requested in the petition.

## I. Petitioner cannot raise new claims via a motion for injunctive relief.

The petition filed on August 20, 2025, asked this Court to "Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner immediately upon payment of the $7,500 bond set by the Immigration Judge." Doc. 1 at 29. Petitioner now seeks new relief in addition to release: he asks this Court to enjoin his removal. Doc. 47 at 1. Such a request is improper.

A party who seeks injunctive relief "must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Colvin v. Caruso*, 605 F.3d 282, 300 (6th Cir. 2010); *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994). A plaintiff who has not raised a claim cannot receive

8

preliminary relief on that claim. *Daker v. Owens*, No. 6:14-cv-47, 2021 WL 981293, at *2 (S.D. Ga. Mar. 16, 2021) (Baker, J.). Such relief should be of the same character as that which could potentially be granted at the conclusion of the suit. *Kaimowitz v. Orlando, Fla.*, 122 F.3d 41, 43 (11th Cir.), *opinion amended on reh'g,* 131 F.3d 950 (11th Cir. 1997). Therefore, "[a] district court should not issue an injunction when the injunction in question is not of the same character, and deals with a matter lying wholly outside the issues in the suit." *Id.*

Here, Petitioner's Third Motion asks this Court to enjoin his removal, Doc. 47 at 1, but this relief was not presented in his Petition. Instead, the relief sought in the Petition was essentially limited to release. Doc. 1 at 29 (also seeking attorneys' fees and declaratory relief). Until the Third Motion, Petitioner had not challenged his removal. *See* Doc. 2-2 at 28 n.1 (conceding his removability). As argued herein, Petitioner is barred from bringing such a challenge in this Court. *See* 8 U.S.C. § 1252(b)(9). Since there is no relationship between the relief sought (challenge to removal) and allegations of the Petition (challenge to detention), this Court should deny his Third Motion on that basis.

## II. Petitioner is not likely to succeed on the merits of his habeas corpus claim, which is the only basis for relief in his Petition.

Petitioner challenges his detention during removal proceedings under habeas corpus, 28 U.S.C. § 2241. Doc. 1, ¶ 1, 15. He is not likely to succeed on this challenge for several reasons. First, this Court lacks jurisdiction to entertain challenges to the execution of his removal under 8 U.S.C. § 1252(b)(9), (g). Second, Petitioner's challenge to his detention under § 1231(a) has not been exhausted. Third, Petitioner's

9

complaints about the BIA's decision can be made only to the Eleventh Circuit, not to this Court. Fourth, the only available relief in habeas corpus is relief from custody, but Petitioner's custody is mandatory, and he has not raised a claim of unconstitutionally prolonged detention. Finally, even with the benefit of additional time, Petitioner has failed to identify any non-speculative basis for his allegation that his detention violates his constitutional rights.

*First*, as Respondents have argued previously, Doc. 24 at 8–10; 37 at 5–8, the plain text of 8 U.S.C. § 1252(g) precludes federal district courts from exercising jurisdiction over § 2241 petitions if they "aris[e] from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." *Id.*, § 1252(g). The Eleventh Circuit has described this provision as "unambiguous." *Gupta v. McGahey*, 709 F.3d 1062, 1065 (11th Cir. 2013), *reh'g denied*, 737 F.3d 694 (11th Cir. 2013), *cert. denied*, 573 U.S. 931 (2014). "When asking if a claim is barred by § 1252(g), courts must focus on the action being challenged." *Canal A Media Holding, LLC v. U.S. Citizenship & Imm. Servs.*, 964 F.3d 1250, 1257–58 (11th Cir. 2020). The plain language of § 1252(g) precludes habeas jurisdiction over challenges to post-removal detention, as the Eleventh Circuit has agreed: Challenging removal orders and seeking to half removal "fall[s] squarely within § 1252(g)'s jurisdictional bar" because it constitutes "execution of . . . removal orders." *Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1272 (11th Cir. 2021). By requesting release and a stay of his removal, Petitioner plainly seeks to challenge "the decision or action by the Attorney General

10

to . . . execute [his] removal order[.]" 8 U.S.C. § 1252(g). Therefore, this Court lacks jurisdiction over this § 2241 petition.

Petitioner argues that, because he has asserted that his detention is due to his reporting activity and not due to the execution of his removal, his claims should not be barred by § 1252(g) pursuant to *Alvarez U.S. Immigr. & Customs Enf't*, 818 F.3d 1194, 1204 (11th Cir. 2016). Doc. 47-1 at 5-6. In *Alvarez*, the Eleventh Circuit found that, because the petitioner had alleged that the ICE defendants were "motivated by the singular intent to prolong his detention, not to execute his removal," his claims on that issue did not fall within the scope of § 1252(g). *Id.* Petitioner's *Alvarez* argument should be disregarded. His argument was based on incomplete information, since it was based on his assumption that "there is no final order of removal against him." *See* Doc. 47-1 at 6. But Petitioner later received—and submitted to this Court—that very order and then updated his position. *See* Doc. 49 at 1 ("Mr. Guevara is therefore subject to a final order of removal"). There is therefore no dispute that his detention is subject to his final order of removal, pursuant to 8 U.S.C. § 1231(a)(2)(A) (making detention pursuant to a final order mandatory). *See* Morris Dec. ¶ 3. The very purpose of this detention is to execute removal, *see generally* 8 U.S.C. § 1231, which brings it under the bar on habeas jurisdiction outlined in § 1252(g). Further, as Respondents have argued, Petitioner has failed to support his allegation that his immigration detention is due to his reporting.

Similarly, 8 U.S.C. § 1252(b)(9) precludes this Court's jurisdiction over the claims Petitioner raises in his Third Motion. This provision removes habeas

11

jurisdiction over challenges "arising from any action or proceeding brought to remove an alien." *Id.* It explicitly applies to § 2241 petitions. When a habeas petitioner challenges removal proceedings, § 1252(b)(9) applies to bar his claim. *See, e.g.*, *Tejeda v. Warden, FCI Jesup*, No. 2:25-cv-11, 2025 WL 2609733, at *1 (S.D. Ga. Aug. 19, 2025) (Cheesbro, J.) ("Tejeda's challenge necessarily would require the Court to evaluate his claim that the final order of removal is invalid, something this Court is precluded from doing."), *report and recommendation adopted*, 2025 WL 2607964 (S.D. Ga. Sept. 9, 2025). District courts are barred from reviewing removal proceedings regardless of how the alien characterizes his claim. *Mata v. Sec'y of Dep't of Homeland Sec.*, 426 F. App'x 698, 700 (11th Cir. 2011) (affirming district court's dismissal of challenge to removal order brought pursuant to the federal question and mandamus statutes, Administrative Procedure Act, and the Declaratory Judgment Act).

In this Third Motion, Petitioner has explicitly challenged his final order of removal. Docs. 47-2 at 2 (arguing that the BIA's decision is incorrect); 49 at 1 (arguing that the BIA's decision was erroneous). Such challenges cannot be brought under 28 U.S.C. § 2241: "district courts lack habeas jurisdiction to entertain challenges to final orders of removal." *Themeus v. U.S. Dep't of Just.*, 643 F. App'x 830, 832 (11th Cir. 2016). This Court "lacks jurisdiction" to enjoin Petitioner's removal on the same basis. *See Thompson v. Johns*, No. 5:20-cv-4, 2020 WL 5507821, at *2 (S.D. Ga. Aug. 18, 2020) (Cheesbro, J.), *report and recommendation adopted*, 2020 WL 5414568 (S.D. Ga. Sept. 9, 2020)

***Second***, Petitioner has not exhausted, as he is required to do. *See Santiago-Lugo v. Warden*, 785 F.3d 467, 475 (11th Cir. 2015). To the extent that he believes a delay of his removal is warranted, administrative procedures to achieve this are available, such as moving for reconsideration with the BIA or applying for relief from removal with ICE/ERO. In fact, Petitioner is already pursuing these administrative remedies. *See* Morris Dec., Attachment 1; Exhibit 3 (Motion to Reopen). To the extent that Petitioner believes the BIA erred, he has an avenue to exhaust this claim as well: filing an appeal with the Eleventh Circuit Court of Appeals. *See, e.g., Thompson*, 2020 WL 5507821, at *2 (concluding habeas petitioner should have filed with the Eleventh Circuit and recommending dismissal). He is also pursuing that avenue. Exhibit 2 (Motion for Emergency Stay). Because Petitioner does not appear to have completed either administrative approach, Respondents submit that his available remedies have not been exhausted.

***Third***, and relatedly, Petitioner cannot challenge the BIA's decision in this Court but only with the Eleventh Circuit. The BIA entered a final order of removal. Doc. 49 at 1, 13. Under 8 U.S.C. § 1252(a)(5), the "exclusive means" to challenge a final order of removal the appropriate court of appeals. *Alexandre v. U.S. Atty. Gen.*, 452 F.3d 1204, 1206 (11th Cir. 2006). This path was intended as an adequate "alternative" to habeas corpus. *Id.* Thus, "an order of removal may be reviewed only by a court of appeals after the filing of a petition for review." *Mata*, 426 F. App'x at 699–700. Petitioner concedes that he has a final order of removal. *See* Doc. 49 at 1. He has already initiated review at the Eleventh Circuit. Exhibit 2 (Motion for

13

Emergency Stay). Because he cannot challenge a final order in district court, he is not likely to succeed on the merits of a habeas petition challenging it here.[3]

***Fourth***, Petitioner is not likely to succeed on the merits of his habeas petition because his detention is mandatory under federal law. He has a final order of removal. *See* BIA Removal Order, Doc. 49 at 6–13. Therefore, he is currently detained pursuant to 8 U.S.C. § 1231(a). Morris Dec., ¶ 3. That statute *requires* the Attorney General to detain aliens who have final orders of removal. 8 U.S.C. § 1231(a); *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022) ("After the entry of a final order of removal against a noncitizen, the Government generally ***must*** secure the noncitizen's removal during a 90-day '"removal period."'") (quoting 8 U.S.C. § 1231(a)(1)(A)) (emphasis added). Before learning that a final removal order had been entered, Petitioner argued that § 1231(a) authorized ICE to detain aliens during the removal period. Doc. 47-1 at 8. Thus, absent a showing that his § 1231(a) detention has become unconstitutionally prolonged,[4] Petitioner is not likely to succeed in achieving the only relief available to him under habeas corpus (release).

---

[3] The Petition also does not challenge the final order of removal, which makes injunctive relief on this issue inappropriate in this Court. *See* Section II, *supra*.

[4] The petition does not seek any relief pursuant to the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001). But it would be inappropriate here. In *Zadvydas*, the Supreme concluded that six-months' detention after an order of removal was presumptively reasonable. *Zadvydas*, 533 U.S. at 701; *Jennings v. Rodriguez*, 583 U.S. 281, 300 (2018) (discussing *Zadvydas*). Thus, to state a *Zadvydas* claim, an alien "not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Petitioner's current immigration detention has not exceeded six months, and there is a significant likelihood of his

***Fifth***, Petitioner alleges that his detention still violates his constitutional rights, highlighting his First Amendment rights. Doc. 47-1 at 10–11. He largely incorporates his previous briefing on this issue. *Id.* Respondents previously argued that Petitioner had failed to provide evidentiary support to establish that Petitioner was detained because of any First Amendment activity. He continues to present similar unsupported claims here. *See, e.g., id.* at 11 n.4 (claiming without support that "[t]he Government" has detained Petitioner "to suppress and punish his speech"). Respondents therefore ask that this Court incorporate those previous arguments. Doc. 24 at 10–13.

But Petitioner's Third Motion highlights the gap between his arguments and the evidence before the Court. Despite being on notice of Respondents' arguments that he lacked factual support for his claims, Petitioner's Third Motion fails to present any evidentiary support for his claim that his immigration detention is due to his reporting. In contrast, Respondents have presented evidence of the statutory basis for Petitioner's immigration detention, Doc. 24-1, ¶ 3; Morris Dec., ¶ 3, demonstrating it is not based on expressive activity. This Court should disregard Petitioner's unsupported allegations about the purpose of his detention.

Petitioner has failed to establish a likelihood of success on the merits of his habeas petition, which is his burden to establish. Therefore, this Court should deny his Third Motion for Preliminary Injunction.

---

removal in the reasonably foreseeable future, *see* Morris Dec., ¶ 7. Therefore, even if he had argued raised a *Zadvydas* claim in his petition, it would fail.

### III. Petitioner has not established irreparable injury.

Respondents submit that this Court can—and should—end the inquiry by ruling in Respondents' favor on the first element of showing entitlement to a preliminary injunction. But even if the Court examines the remaining elements, Petitioner's Third Motion should still be denied.

Irreparable injury must be specific: "The injury must be neither remote nor speculative, but actual and imminent." *Ne. Fla. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) (internal quotation marks and citation omitted). Merely showing a "possibility" of irreparable harm is insufficient. *Winter*, 555 U.S. at 22. "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.*

Here, Petitioner presents one new argument in support of finding irreparable harm, stating that he has been granted voluntary departure and that he should be released to arrange for his own removal. Doc. 47-1 at 11. This argument should be disregarded because it conflicts with the factual record. The evidence shows that Petitioner was *not* granted voluntary departure. Instead, the voluntary departure offered by the immigration judge "was contingent upon the posting of a voluntary departure bond" and was not reinstated by the BIA. BIA Removal Order, Doc. 49 at 13. The BIA found no evidence that Petitioner had ever paid this bond, since

Petitioner failed to present "any evidence" that he had done so. *Id.* Even if the BIA did err, Petitioner's exclusive relief lies with the Eleventh Circuit, which he has already initiated. *See* Exhibit 2 (Motion for Emergency Stay); *Alexandre*, 452 F.3d at 1206. (As argued above, this Court lacks jurisdiction over this claim. *See* Section II, *supra.*) Therefore, Petitioner's argument that he has been granted voluntary departure should be disregarded.

Petitioner also incorporates his previous arguments on irreparable harm. Doc. 47-1 at 11. Respondents ask this Court to do the same with their arguments on this issue. Doc. 24 at 15–17.

Petitioner has failed to establish that he would suffer irreparable harm absent injunctive relief, and therefore this Court should deny his Third Motion for Preliminary Injunction.

### IV. Petitioner has failed to show that the public interest weighs in favor of granting an injunction.

Petitioner does not present any new evidence or argument in support of his claim that the public interest weighs in favor of his release but incorporates his First Motion for Preliminary Injunction. Doc. 47-1 at 11. Because Petitioner has offered no new reasons or argument to justify finding that the public interest weighs in favor of granting his release, Respondents also incorporate their previous arguments. *See* Doc. 24 at 17–18.

### V. Petitioner cannot use the All Writs Act to challenge his removal here.

Among the relief sought in Petitioner's Third Motion is a request that this Court enjoin his removal and issue an order enjoining his removal from the United

States. *See* Doc. 47-1 at 12. This Court lacks the authority to issue such an order. *Thompson*, 2020 WL 5507821, at *2; *Cheng Ke Chen v. Holder*, 783 F. Supp. 2d 1183, 1187 (N.D. Ala. 2011) ("Clearly, this court lacks the authority to enjoin Chen's removal from the country.").

Petitioner's reference to the All Writs Act makes no difference for two reasons. First, Petitioner has not asserted a claim under the All Writs Act or even alleged that this Court has jurisdiction to grant him relief under that statute. *See* Doc. 1, ¶ 16. Second, even if Petitioner had stated such a claim in his petition, he cannot bring an independent claim based on the All Writs Act because it is not an independent source of jurisdiction. *Clinton v. Goldsmith*, 526 U.S. 529, 534–35 (1999). "Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." *Pennsylvania Bureau of Correction v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985) (prohibiting ad hoc writs "whenever compliance with statutory procedures appears inconvenient or less appropriate"). Petitioner has not yet established that this Court has jurisdiction over his challenge, and he must do so separately from the All Writs Act. Therefore, this Court should decline to invoke the All Writs Act in this circumstance.

The only claim before the Court is a habeas claim, but enjoining removal is not proper habeas relief. *See Pierre*, 525 F.2d at 935–36. Enjoining Petitioner's removal would not reduce the length of Petitioner's detention (in fact, it would potentially prolong it). Nor would enjoining his removal permit his release, since he would still be detained under the mandatory provisions of 8 U.S.C. § 1231(a). Petitioner has been

ordered removed, removal is likely to occur in the reasonably foreseeable future, and no impediments exist for international transport. *See* Morris Dec., ¶ 7. Petitioner has not pointed to any authority by which this Court could require Respondents to continue detaining Petitioner in these circumstances.

Therefore, this Court should deny Petitioner's request to enjoin his removal.

### VI.   If the Court issues an injunction, it should require Petitioner to give security pursuant to Rule 65(c).

Rule 65(c) of the Federal Rules of Civil Procedure states that a court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Should the Court grant an injunction to Petitioner, Respondents respectfully request, pursuant to executive policy, that this Court require Petitioner to provide an appropriate security amount to ensure that any damages sustained by the Respondents are paid. *See Presidential Memorandum, Ensuring the Enforcement of Federal Rule of Civil Procedure 65(c)*, 2025 WL 762840 (March 11, 2025). Respondents leave the amount of such security to the discretion of the Court. *See BellSouth Telecommunications, Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005) (amount of security required by Rule 65(c) is a matter within the discretion of the trial court).

## CONCLUSION

This Court should deny Petitioner's Second and Third Motions for Preliminary Injunction.

Respectfully submitted, this 26th day of September, 2025,

        MARGARET E. HEAP
        UNITED STATES ATTORNEY

        */s/ O. Woelke Leithart*
        Idaho Bar No. 9257
        Assistant United States Attorney
        U.S. Attorney's Office
        Post Office Box 8970
        Savannah, Georgia 31412
        Telephone: (912) 652-4422
        E-mail: Woelke.Leithart@usdoj.gov